No.  _____

---

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

---

*In re James D. Dondero et al.*,
*Petitioners*.

---

On Petition For Writ Of Mandamus To The
United States District Court For The Northern District Of Texas

(Bankruptcy Case No. 19-34054-sgj11)

---

PETITION FOR WRIT OF MANDAMUS

---

Michael J. Lang
CRAWFORD WISHNEW & LANG, PLLC
1700 Pacific Ave., Suite 2390
Dallas, Texas 75201
(214) 817-4500 telephone

ATTORNEYS FOR PETITIONERS

**NOTICE OF INTERESTED PARTIES**

The Interested Parties to this Petition for Writ of Mandamus are as follows:

**Debtor: Highland Capital Management, L.P.**

Attorneys:
Jeffrey N. Pomerantz
jpomerantz@pszjlaw.com
Ira D. Kharasch
ikharasch@pszjlaw.com
John A. Morris
jmorris@pszjlaw.com
Gregory V. Demo
gdemo@pszjlaw.com
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

-and-

Melissa S. Hayward
MHayward@HaywardFirm.com
Zachery Z. Annable
ZAnnable@HaywardFirm.com
HAYWARD PLLC
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

# TABLE OF CONTENTS

CONTENTS

NOTICE OF INTERESTED PARTIES ...................................................................................ii

TABLE OF CONTENTS...................................................................................................iii

TABLE OF AUTHORITIES..............................................................................................iv

RELIEF SOUGHT..........................................................................................................vii

ISSUE PRESENTED......................................................................................................viii

INTRODUCTION .............................................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

    A.   Procedural History ......................................................................................... 2

    B.   Judge Jernigan Acknowledges She Formed Negative Opinions About Mr. Dondero During the Acis Bankruptcy............................................................................................................ 3

    C.   Judge Jernigan Publishes Her First Novel Reflecting Her Bias....................................... 5

    D.   Judge Jernigan's Animus Continues Throughout The Highland Bankruptcy................................... 5

        1.   The Judge Repeatedly Threatened Petitioners With Sanctions And Accused Them Of Acting in "Bad Faith." ....................................................................................................................... 5

        2.   Judge Jernigan Labeled Mr. Dondero As A "Vexatious" Litigant, Without Any Evidence To Support That Label. ........................................................................................................... 8

        3.   The Judge Recommended Debtor File Certain Claims To Avoid The Reference From Being Withdrawn.......................................................................................................................9

        4.   The Judge's Actions Are Prejudicial. ......................................................................... 10

    E.   Judge Jernigan Authors And Promotes Another Book Mirroring Her Perception Of Highland And Mr. Dondero.......................................................................................................................... 10

    F.   The Bankruptcy Court's Issues A Flawed Recusal Order ............................................ 11

REASONS THE WRIT SHOULD ISSUE ................................................................................ 12

    A.   The Bankruptcy Court Abused Its Discretion Denying Recusal Under Section 455..................... 12

    B.   The Recusal Order Fails To Negate Bias Or The Appearance Of Bias .......................... 15

        1.   Judge Jernigan Abused Her Discretion In Denying Petitioners' Renewed Motion Pursuant To 28 U.S.C. § 455 As Untimely. ......................................................................................... 15

        2.   Judge Jernigan Abused Her Discretion In Relying On Subjective Denials Of Actual Bias. ...... 17

        3.   Judge Jernigan Abused Her Discretion In Failing To Address Each Basis For Recusal. .......... 17

        4.   The Attempted Explanations To The Selected Bases Reinforce The Need To Recuse. ............ 18

CERTIFICATE OF SERVICE.................................................................... Error! Bookmark not defined.

TABLE OF AUTHORITIES

**CASES**

*Andrade v. Chojnacki,*
 338 F.3d (5th Cir. 2003) ................................................................................. 12, 24

*Burke v. Regolado,*
 *935* F.3d 960 (10th Cir. 2019) ...................................................................... 12, 17

*Caperton v. A.T. Massey Coal Co.,*
 556 U.S. 868 (2009) ............................................................................................. 13

*Charitable DAF Fund, L.P. v. Highland Capital Mgmt., L.P.,*
 Case No. 21-cv-00842 (N.D. Tex. Apr. 12, 2021), ............................................... 7

*Davies v. C.I.R.,*
 68 F.3d 1129 (9th Cir. 1995) ....................................................................... 15, 16

*Davis v. Board of School Comm'rs of Mobile Cnty.,*
 517 F.2d 1044, (5th Cir. 1975) ........................................................................... 16

*Delesdernier v. Porterie,*
 666 F.2d 116 (5th Cir. 1982) .............................................................................. 16

*Dondero v. Alvarez & Marsal CFR Mgmt. LLC (In re Highland Capital Mgmt.),*
 Case No. 21-03051 (Bankr. N.D. Tex. Jan. 4, 2022) ............................................ 8

*Dondero v. Hon. Stacey G. Jernigan (In re Higland Captial Mgmt),*
 Civil Action 3:21-CV-0879-K (Bankr N.D. Tex. Feb. 9, 2022) .............................. 2

*E. & J. Gallo Winery v. Gallo Cattle Co.,*
 967 F.2d 1280 (9th Cir. 1992) ............................................................................ 15

*Highland Capital Mgmt., L.P. v. Highland Capital Mgmt. Fund Advisors, et al. (In re Highland Capital Mgmt),*
 Adv. Proc. 21-03000-sgj (Bankr. N.D. Tex Jan. 6, 2021) .................................... 6

*Highland Capital Mgmt., L.P. v. Highland Capital Mgmt. Fund Advisors, L.P. (In re Highland Capital Mgmt),*
 Case No. 21-03004-sgj (Bankr. N.D. Tex Jan. 22, 2021) ................................... 10

*Highland Capital Mgmt., L.P. v. Highland Capital Mgmt. Servs., Inc.(In re Highland Capital Mgmt),*
 Case No. 21-3006-sgj11 (Bankr. N.D. Tex Feb. 18, 2020) ................................... 9

*Hill v. Schilling,*
 495 F. App'x 480, (5th Cir. 2012) ...................................................................... 16

*In re Barrier,*
 776 F.2d 1298 (5th Cir. 1985) ............................................................................ 11

*In re Cameron Int'l Corp.,*
 393 F. App'x 133, (5th Cir. 2010) ...................................................................... 11

*In re Chevron U.S.A., Inc.,*
 121 F.3d 163, (5th Cir. 1997) ....................................................................... 13, 15

*In re Dondero,*
 Case No. DC-21-09534 (95th Dist. Ct. 2021)....................................................... 8

*In re Highland Capital Mgmt., L.P.,*
 48 F.4th 419 (5th Cir. 2022) ............................................................................... 20

*In re Kansas Pub. Employees Retirement Sys.,*
 85 F.3d at 1358 (8th Cir. 1996)........................................................................... 24

*In re Lieb,*
 915 F.2d 180 (5th Cir. 1990) ........................................................................ 11, 12

*In re Sch. Asbestos Litig.*,
    977 F.2d 764, (3d Cir. 1992)...................................................................................12
*In re Sisneros*,
    283 F. App'x 11, (3d Cir. 2008) .............................................................................12
*In re U.S.*,
    572 F.3d 301, (7th Cir. 2009) ................................................................................13
*Johnson v. Mississippi*,
    403 U.S. 212, (1971)...............................................................................................13
*Johnson v. Sawyer*,
    120 F.3d 1307 (5th Cir. 1997) ...............................................................................14
*Liljeberg v. Health Servs. Acquisition Corp.*,
    486 U.S. 847 (1988)............................................................................12, 17, 24
*Liteky v. United States*,
    510 U.S. 540, (1994)...............................................................................................13
*Marshall v. Jerrico, Inc.*,
    446 U.S. 238, (1980)........................................................................................12, 13
*Miller v. Sam Houston State Univ.*,
    986 F.3d 880, (5th Cir. 2021) ................................................................................13
*Nichols v. Alley*,
    71 F.3d 347, (10th Cir. 1995) ................................................................................12
*Offutt v. United States*,
    348 U.S. 11, (1954),................................................................................................13
*Parrish v. Board of Comm'rs*,
    524 F.2d 98, (5th Cir. 1975) ..................................................................................15
*Patterson v. Mobil Oil Corp.*,
    335 F.3d 476, (5th Cir. 2003) ................................................................................14
*Republic of Panama v. Am. Tobacco Co.*,
    217 F.3d 343, (5th Cir. 2000) ................................................................................18
*Sentis Group, Inc. v. Shell Oil Co.*,
    559 F.3d 888, (8th Cir. 2009) ................................................................................13
*U.S. v. Kennedy*,
    682 F.3d 244, (3d Cir. 2012)..................................................................................13
*U.S. v. Microsoft Corp.*,
    56 F.3d 1448, (D.C. Cir. 1995) .......................................................................14, 15
U.S. v. Torkington,
    874 F.2d 1441, (11th Cir.1989) .............................................................................15
*United States v. Sanford*,
    157 F.3d 987, (5th Cir. 1998) ................................................................................16

## OTHER AUTHORITIES

H. Rep. No. 1453, 93rd Cong., 2d Sess. 1 (1974)......................................................12

## RULES

Tex. R. Civ. P. 202 .........................................................................................................8

## CODES

28 U.S.C. § 455 ........................................................................................................................... 6, 12

28 U.S.C. § 455(a) ...................................................................................................................... 12

29 U.S.C. § 455 ............................................................................................................................. 3

## RELIEF SOUGHT

An Order directing the presiding bankruptcy judge, Stacey G. Jernigan (the "Bankruptcy Judge") to recuse herself from presiding over the Highland Capital Management, L.P. bankruptcy proceeding and any adversary proceeding related to any bankruptcy proceeding that involves Petitioners.

## ISSUE PRESENTED

Whether 28 U.S.C. § 455(a) requires recusal of the Bankruptcy Judge because: (1) a "personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;" *or* (2) her "impartiality might ***reasonably be questioned***."

## INTRODUCTION

Petitioners James Dondero, Highland Capital Management Fund Advisors, L.P., The Dugaboy Investment Trust, Get Good Trust, and NexPoint Real Estate Partners, LLC f/k/a HCRE Partners, LLC (collectively, "Petitioners") seek a writ of mandamus because mandamus is the only avenue through which Petitioners can obtain legal relief from the incessant, animus and partiality displayed by the presiding bankruptcy judge against Petitioners in the proceedings stemming from the chapter 11 bankruptcy of debtor Highland Capital Management, L.P. ("HCMLP"). Petitioners have sought the recusal of Judge Stacey G. Jernigan ("Judge Jernigan") for a significant period of time, while continuing to suffer harm because of the Court's partiality. As set forth in greater detail herein, recusal is necessary because the Bankruptcy Court has repeatedly:

- singled out Petitioners and their attorneys for unfair treatment;

- admonished Petitioners and their attorneys for invoking proper legal process to protect their interests;

- refused to credit evidence (even undisputed evidence) presented by Petitioners; and

- departed from normal procedure, in ways that uniquely harmed the legal position or rights of the Petitioners and, more particularly, HCMLP's former Chief Executive Officer, James D. Dondero ("Mr. Dondero").

The disenfranchising effect of these actions cannot be overstated. Perhaps the most revealing evidence of bias is the judge's recent publication of two novels, both of which roundly criticize the very industry in which HCMLP was engaged prior to bankruptcy and which also pit the protagonist, a Dallas bankruptcy judge, against a Dallas hedge fund manager closely resembling Mr. Dondero, who is caricatured as an evildoer. Judge Jernigan authored these novels while presiding over the bankruptcies of HCMLP and two other firms affiliated with Mr. Dondero, Acis Capital Management, L.P. and Acis Capital Management GP, LLC (together, "Acis"), and then promoted her novels through her professional network. This is not how neutral arbiters of

facts conduct themselves, and it does not engender public confidence in the impartiality of the Bankruptcy Court. Petitioners easily meet the statutory, mandatory standards governing recusal. This Court should grant the Petition.

**FACTUAL BACKGROUND**

**A.    Procedural History**

After a series of interactions with Judge Jernigan began to evidence a pattern of animus and bias, Petitioners sought to recuse the Judge on March 18, 2021.[1]  The Court denied that motion less than a week later.[2] Petitioners appealed the order denying recusal to the District Court, but on February 9, 2022, the District Court denied the appeal for lack of jurisdiction, concluding the Bankruptcy Court's order was interlocutory and therefore non-appealable.[3]

Thereafter, Judge Jernigan's actions further highlighted her continuing bias. As a result, Petitioners filed an Amended Motion for Final Appealable Order and Supplement to Motion to Recuse ("Motion to Supplement") seeking to: (1) remove the "reservation language" in the Bankruptcy Court's original order denying recusal, and (2) supplement the record on the original recusal motion with additional evidence of bias.[4] At an August 31, 2022 hearing, Petitioners informed the Court that HCMLP was *unopposed* to the relief requested in the Motion to Supplement. Nonetheless, Judge Jernigan accused Mr. Dondero and his counsel of "carpet-bombing us with paper and causing us to expend resources" and chastised his counsel.[5]

The Court denied Petitioners' Motion to Supplement as procedurally improper,[6] but invited Petitioners to either (1) file a "simple motion" (without attaching additional evidence) seeking

---

[1] Bankr. Dkt. 2061 [App. 39].
[2] Bankr. Dkt. 2083.
[3] *See Dondero v. Hon. Stacey G. Jernigan*, Civ. Action No. 3-21-CV-0879-K, Dkt. 39 at 1-2 (pointing out that, in denying recusal, the Bankruptcy Court "reserve[d] the right to amend or supplement" its ruling).
[4] Bankr. Dkt. 3470.
[5] Aug. 31, 2022 Hr'g Tr. at 20:13-25 [App. 206].
[6] Bankr. Dkt. 3479 at 3.

2

removal of the "reservation of rights" language, or (2) file a new motion to recuse based on new evidence or grounds for recusal.[7] Only the second option guaranteed Petitioners a complete record on appeal. Therefore, on September 27, 2022, Petitioners filed a Renewed Motion to Recuse, attaching the entire record supporting recusal.[8] After HCMLP claimed that certain allegations were protected by attorney-client privilege, Petitioners filed an Amended Renewed Motion to Recuse removing those allegations on October 17, 2022.[9] Thereafter, Petitioners learned that Judge Jernigan had published two novels effecting the Amended Renewed Motion and, on Friday, March 3, 2023, Petitioners filed a supplemental memorandum of law explaining why those novels also necessitated recusal.[10] On Monday, March 6, 2023, the Bankruptcy Court issued a Memorandum Opinion and Order Denying "Amended Renewed Motion to Recuse" Pursuant to 29 U.S.C. § 455 ("Recusal Order").[11] It is that Recusal Order that prompted this Petition for Writ of Mandamus.

**B.**    **Judge Jernigan Acknowledges She Formed Negative Opinions About Mr. Dondero During the Acis Bankruptcy**

Mr. Dondero's first encounter with Judge Jernigan came in the context of the chapter 11 bankruptcy of Acis ("Acis Bankruptcy").[12]  In a Bench Ruling confirming the Acis joint plan, the Bankruptcy Court concluded that: various entities were marching to the orders of Mr. Dondero; testimony given by individuals affiliated with Mr. Dondero was not credible; "the Highlands" (*i.e.*, Dondero-affiliated entities) were merely acting in "lockstep"; and the Highlands' party-in-interest status was "questionable."

---

[7] *Id.*
[8] Bankr. Dkts. 3541, 3542.
[9] Bankr. Dkts. 3570, 3571.
[10] Bankr. Dkt. 3673.
[11] Bankr. Dkt. 3676 [App. 2].
[12] Amended Renewed Motion at 4-6 [App. 2807-2809].

In her Recusal Order, Judge Jernigan states that she "cannot recall" any "specific rulings regarding Mr. Dondero" from the Acis Bankruptcy.[13] Yet Judge Jernigan's decisions and comments in the HCMLP bankruptcy frequently referenced Mr. Dondero's role in the Acis , including as a justification for imposing conditions on Mr. Dondero at the outset of the bankruptcy proceedings.[14]

For example, in January of 2021, just following the Highland Bankruptcy's transfer from Delaware the Bankruptcy Court, ***before Mr. Dondero had ever testified in the Highland Bankruptcy***, Judge Jernigan acknowledged that her opinions of Mr. Dondero from the Acis Bankruptcy were inextricably planted in her mind:

(1)    stated "***[she] can't extract what [she] learned during the Acis case, it's in my brain***";

(2)    expressed negative opinions about Mr. Dondero (although he had not yet filed any motion or objection in her court);

(3)    opined that Mr. Dondero had a *propensity* to engage in bad acts (based on Judge Jernigan's perceptions formed during the Acis Bankruptcy); and

(4)    relied on opinion she formed from the Acis Bankruptcy to *sua sponte* insist that language be included in her order approving a settlement between the Debtor and the UCC allowing the Court to hold Mr. Dondero in contempt for violating the terms of that settlement.[15]

The Acis Bankruptcy continued to feature prominently enough in Judge Jernigan's mind that it served as an important backdrop to her Order Confirming the Fifth Amended Plan of Highland Capital Management, L.P. (As Modified) ("Confirmation Order").[16]

---

[13] Recusal Order at 15 [App. 16].
[14] Amended Renewed Motion at 6 [App. 2809].
[15] *Id.*; *See* HCMLP Bankr. Dkt. 2062, Ex. 2, Jan. 9, 2020 Hr'g Tr. at 52:10-25 [App. 2846]; 78:23-79:16 [App. 2849-50]; *see also* HCMLP Bankr. Dkt. 2062, Ex. 3, Feb. 19, 2020 Hr'g Tr. at 174:22-175:1 [App. 480:22-485].
[16] *Id.* at 11-12 [App. 2814-15]; Confirmation Order, Bankr. Dkt. 1943, ¶¶ 8, 13-15; 17-18.

### C.     Judge Jernigan Publishes Her First Novel Reflecting Her Bias

Judge Jernigan's first novel, *He Watches All My Paths*, was published on January 16, 2019, just weeks before confirmation of the Acis plan of reorganization. The novel is remarkable in two respects: (1) it begins a two-novel saga involving a Dallas bankruptcy judge that mirrors Judge Jernigan's experience on the bench, and (2) it contains harsh commentary about financial services industry stakeholders (despite their presence in cases before her). In particular, the novel describes the "[h]igh flying hedge fund managers" as individuals that "suck up money like an i-robot vacuum," seem to "make money no matter what," and show "outrageous amounts of hubris" as part of their "bro culture."[17]  It strongly suggests a judge harboring bias against those operating in the hedge fund industry——an industry in which HCMLP has actively operated.

### D.     Judge Jernigan's Animus Continues Throughout The Highland Bankruptcy

The Amended Renewed Motion detailed the many ways in which Judge Jernigan has targeted Petitioners and their lawyers throughout the HCMLP Bankruptcy. The following are examples of some of the Judge's actions and comments that mandate recusal.

#### 1.     The Judge Repeatedly Threatened Petitioners With Sanctions And Accused Them Of Acting in "Bad Faith."

Judge Jernigan has repeatedly threatened Petitioners and their lawyers, questioned their motives, and accused them of acting in bad faith by raising legitimate legal arguments or defending their rights. For example:

- In June 2020, Judge Jernigan questioned whether lawyers for CLO Holdco—a wholly owned subsidiary of a charitable Donor Advised Fund (the "DAF"), established by Mr. Dondero—were acting in good faith by seeking the release of funds that belonged to CLO Holdco from the Bankruptcy Court's registry.[18]

- On December 16, 2020, the Judge chastised Highland Capital Management Fund Advisors, L.P. ("HCMFA") and NexPoint Advisors, L.P. ("NexPoint")—two

---

[17] Judge Stacey G. Jernigan, *He Watches All My Paths* (Jan. 16, 2019), at 131.
[18] *See* Amended Renewed Motion at 8 [App. 2811] & Ex. D [App. 2867].

entities affiliated with Mr. Dondero—for filing a legitimate motion, with a statutory basis, to preserve the status quo pending confirmation of HCMLP's Fifth Amended Plan of Reorganization ("Plan").[19] Judge Jernigan surmised that Mr. Dondero was behind the motion, that it was filed for an improper purpose, and that it was "almost Rule 11 frivolous."[20]

- In January 2021, the Debtor accused HCMFA and NexPoint of interfering with its management of certain collateralized loan obligation ("CLO") portfolios.[21] While the Debtor ultimately admitted that no interference actually occurred,[22] rather than address the Debtor's baseless accusations, the Bankruptcy Court **focused on Mr. Dondero** and inexplicitly threatened to hold him in contempt.[23] At this time, the Bankruptcy Court knew that Mr. Dondero had no continuing role with HCMLP and no ability to interfere with management of the CLO portfolios. Nevertheless, without evidence, the Bankruptcy Court concluded that Mr. Dondero had caused independent outside counsel for the movants to undertake the actions on his behalf.[24]

- In February 2021, the **Debtor** filed another baseless motion. After a seven-hour evidentiary hearing, Judge Jernigan deemed that the issue Debtor raised was moot (as opposed to baseless), yet accused **Mr. Dondero** of driving up legal fees,[25] and then went beyond the pleadings and the relief requested by the Debtor **to issue findings adverse to Mr. Dondero**.[26]

- In the Confirmation Order, after two trusts affiliated with Mr. Dondero—The Dugaboy Investment Trust and Get Good Trust—objected to HCMLP's Plan, Judge Jernigan again questioned the good faith of Mr. Dondero. While the Judge stated no basis for her "belief," she labeled Mr. Dondero and the trusts

---

[19] *See id.* at 9-10 [App. 2812-13] & Ex. J [App. 2931]; *see also* Brief in Support of Motion to Recuse Pursuant to 28 U.S.C. § 455 ("Original Recusal Motion"), Bankr. Dkt. 2061, at 8-16 [App. 50-58].

[20] *See* Amended Renewed Motion at 9-10 [App. 2812-13].

[21] *See id.* & Ex. K [App. 2937] and Ex. L [App. 2946].

[22] *See* HCMLP Bankr. Dkt. 2062, Ex. 7, Jan. 26, 2021 Hr'g Tr. at 103:21-23 [App. 709], 173:16-19 [App. 779], 174:1-3 [App. 780], 174:8-175:5 [App. 780-81], 178:14-24 [App. 784], & 180:12-17 [App. 786] [App. 0630, 0700-02, 0705, 0707]. HCMLP's failures in this regard are detailed in Movants' Original Recusal Motion, Bankr. Dkt. No. 2016, at 13-16 [App. 55-58]. Notably, Debtor itself had numerous authorized traders, whose job was to settle Debtor's trades.

[23] *See id.* at  at 24-App. 858 at 5 [App. 857-58].

[24] *See id.* at 251:19-253:4 [App. 0778-80]; *see also Highland Capital Mgmt. L.P. v. Highland Capital Mgmt. Fund Advisors, et al.*, Adv. Proc. 21-3000-sgj, Dkt. 1 (listing defendants). At the hearing, Davor Rukavina, as counsel to these entities, explained that the entities have independent boards who were his clients. *See* HCMLP Bankr. Dkt. 2062, Ex. 7, Jan. 26, 2021 Hr'g Tr. at 251:19-253:4 [App. 857-858]; *see also id.* at 5:8-10 611] (announcing the entities represented at the hearing). Conversely, Mr. Dondero had independent counsel at the hearing. *Id.* at 5:14-16 [App. 611].

[25] *See* HCMLP Bankr. Dkt. 2062, Ex. 21, Feb. 23, 2021 Hr'g Tr. at 232:3-234:19 [App. 2128-29].

[26] *See id.*, Ex. 20, Feb. 24, 2021 Order on Mandatory Injunction at 3-5 [App. 1894-1896]; *See also, e.g.*, HCMLP Bankr. Dkt. 2660 at 30; HCMLP Bankr. Dkt. 2062, Ex. 21, Feb. 23, 2021 Hr'g Tr. at 232:7-234:19 [App. 2128-30] ("But it just feels like sickening games. And again, if this keeps on, if this keeps on, one day, one day, there may be an enormous attorney fee-shifting order."); *id.*, Ex. 7, Jan. 26, 2021 Hr'g Tr. at 251:24-252:5 [App. 857-58] (threatening to sanction Mr. Dondero for actions undertaken by independent entities advised by their own outside counsel).

6

"disruptors"[27] and concluded that the entities objecting to the Plan were "controlled by" Mr. Dondero.[28]

- In August 2021, the Bankruptcy Court sanctioned **Mr. Dondero** in connection with a motion that the independent counsel **of two entities—the DAF and CLO Holdco—**filed. After the Bankruptcy Court denied the DAF and CLO Holdco's request for *permission* to add James P. Seery (the Debtor's CEO and Chief Restructuring Officer) as a defendant in a state-court lawsuit,[29] the Debtor separately sought sanctions against DAF and CLO Holdco and their counsel, as well as on Mr. Dondero (who was not even a party to the state-court lawsuit).[30] Judge Jernigan deemed the lawsuit "wholly frivolous," concluded that Mr. Dondero was behind it,[31] and ordered Mr. Dondero to pay a $239,655 for his supposed contempt—nearly $70,000 *more* than the attorneys' fees invoices submitted by the movant.[32] The Bankruptcy Court added another $100,000 to be paid by Mr. Dondero (or any other individual or entity) if he appealed the sanctions award.[33]

Throughout the HCMLP Bankruptcy, Judge Jernigan has repeatedly: (1) ignored undisputed testimony and evidence; (2) held Mr. Dondero responsible for the actions of other persons and entities; (3) questioned the motives of Mr. Dondero and the other Petitioners; (4) accused Mr. Dondero and the other Petitioners "bad faith"; and (5) reached conclusions hostile to Mr. Dondero without evidence or contrary to uncontested evidence.

Conversely—notwithstanding the questionable legal arguments made by other parties to the case and dubious motions by the Debtor, the UCC, and its constituents—the Judge has never criticized or threatened any other party with sanctions. Instead, other parties have been given wide latitude to take positions that, if alleged by Mr. Dondero or Petitioners, would have resulted in threats of sanctions or be deemed vexatious. For example, Mr. Dondero sought to file a state court

---

[27] HCMLP Bankr. Dkt. 1943, ¶ 17; *see also id.*, ¶ 19.

[28] HCMLP Bankr. Dkt. 2062, Ex. 9, Feb. 8, 2021 Hr'g Tr. at 20:13-15 [App. 1088]. Notably, not even HCMLP accused Mr. Dondero and his trusts of lodging bad faith objections to the Plan. Moreover, although the U.S. Trustee lodged some of the same objections, Judge Jernigan did not question her "good faith basis" for doing so. *See* Confirmation Order, Bankr. Dkt. 1943, ¶ 20; Bankr. Dkt. 1671.

[29] *Charitable DAF Fund, L.P. v. Highland Capital Mgmt., L.P.*, Case No. 21-cv-00842 (N.D. Tex.), Dkt. 6.

[30] HCMLP Bankr. Dkt. 2247.

[31] HCMLP Bankr. Dkt. 2660 at 21, 26.

[32] *Id.* at 28-30.

[33] *Id.* at 30. Not even the Debtor attempted to defend this portion of the Court's sanction award.

petition under TEX. R. CIV. P. 202 to investigate potential claims against certain non-debtor funds.[34] Ignoring clear case law that such actions are not removable, the funds (seeking to capitalize on the known predilection against Mr. Dondero) improperly removed the state court proceeding to Bankruptcy Court. Judge Jernigan reluctantly remanded the case while openly criticizing it on the merits and chastising Mr. Dondero for seeking information: "[W]hile remand appears to be the correct result under the law, it is done here *with grave misgivings* … Dondero's standing in filing the Rule 202 Proceeding would appear to be highly questionable and *his motives highly suspect*."[35] However, the Judge did not sanction anyone for the frivolous removal.

### 2. Judge Jernigan Labeled Mr. Dondero As A "Vexatious" Litigant, Without Any Evidence To Support That Label.

Judge Jernigan has repeatedly referred to Mr. Dondero as a "vexatious" litigant, notwithstanding that no such allegation or legal finding has ever been made. For example:

- Speaking about a lawsuit that Judge Jernigan knew nothing about and had not even read: "If Mr. Dondero doesn't think that is so *transparently vexatious litigation*, yeah, I'm going out there and saying that. *I haven't seen it [the complaint she was condemning as vexatious], but, come on*."[36]

- Offering her *sua sponte* view: "[A]lthough *I have not been asked* to declare Mr. Dondero and his affiliated entities as vexatious litigants *per se*, it is certainly not beyond the pale to find that his long history with regard to major creditors in this case has strayed into that possible realm, and thus this court is justified in approving this provision."[37]

- Chastising CLO Holdco Ltd. and The Charitable DAF Fund, LP's counsel for filing a motion based on her view of Mr. Dondero: "I have commented before that we seem to have vexatious litigation behavior with regard to Mr. Dondero and his many controlled entities."[38]

---

[34] *See In re Dondero*, Case No. DC-21-09534 (95th Dist. Ct.).
[35] *See Dondero v. Alvarez & Marsal CFR Mgmt., LLC*, Case No. 21-03051, Dkt. 22 at 5-6, 20-21 (emphasis added).
[36] HCMLP Bankr. Dkt. 3571-1, Ex. G, Sept. 23, 2020 Hr'g Tr. at 51:13-16 [App. 2910] (emphasis added).
[37] *Id.*, Ex. M, Feb. 8, 2021 Hr'g Tr. at 46:20-25 [App. 2977] (emphasis added).
[38] *Id.*, Ex. S, June 25, 2021 Hr'g Tr. at 109:20-22 [App. 3019].

This "vexatious" refrain has been so ubiquitous that parties opposed to Mr. Dondero and the Petitioners regularly invoke this "finding" as a basis to reject Petitioners' arguments outright—even when there was no evidence from which the Bankruptcy Court could adjudge credibility.[39]

Importantly, no court has previously found that any of the Petitioners are vexatious litigants. Yet Judge Jernigan included the term in her Confirmation Order, to justify discrediting Mr. Dondero's testimony, dismissing the objections raised by him (and Petitioners) to the Plan confirmation, and requiring Petitioners to channel any future motions or litigation through her.[40]

### 3.    The Judge Recommended Debtor File Certain Claims To Avoid The Reference From Being Withdrawn.

On June 10, 2021, certain Petitioners moved to withdraw the reference in an adversary proceeding. Judge Jernigan *sue sponte* recommended the Debtor file fraudulent transfer claims against Mr. Dondero (suggesting that those claims might affect the reference from being withdrawn).[41] HCMLP thereafter amended its complaint per the Judge's suggestion.[42] Plainly, a Court should not urge one party to assert claims against another. More troubling, Judge Jernigan's recommendation appeared geared toward allowing it to keep the lawsuit against Petitioners, denying them a jury trial, and requiring a trial to the bench.

---

[39] *See, e.g.*, HCMLP Bankr. Dkt. 3595 (HCMLP's Response to Movants' Renewed Motion to Recuse), ¶¶ 2, 67 [App. 3085 and 3110] (describing Mr. Dondero as "quintessentially vexatious" and invoking "the never-ending, meritless, vindictive, and vexatious litigation strategy that Mr. Dondero stubbornly clings to regardless of the burdens imposed on the judicial system…" as a reason to deny recusal); HCMLP Bankr. Dkt. 1828 (Debtor's Omnibus Reply to Objections to Confirmation of Plan), ¶ 22 (arguing that "[e]xculpation is particularly appropriate in this case to stem the tide of frivolous and vexatious litigation against the Exculpated Parties which Dondero and his Related Entities are seeking so desperately to continue to pursue").

[40] *See* HCMLP Bankr. Dkt. 1943, ¶ 80 (positing that "[t]he Gatekeeper Provision is also consistent with the notion of a prefiling injunction to deter vexatious litigants…").

[41] *See* HCMLP Bankr. Dkt. 2445, June 10, 2021 Hr'g Tr. at 81:5-83:12 [App. 3585-3587].

[42] *See Highland Capital Mgmt., L.P. v. Highland Capital Mgmt. Servs., Inc.*, Case No. 21-3006-sgj11, Dkt. 68.

4.      **The Judge's Actions Are Prejudicial.**

Judge Jernigan's statements and actions against Mr. Dondero, his entities, and his perceived affiliates have substantially prejudiced Petitioners and others. This has manifested in two critical ways.

**First**, the Judge's bias has caused her to make decisions that are detrimental to creditors and stakeholders of the bankruptcy proceedings more generally. For example, HCMLP was not required to file Rule 2015.3 reports of financial information in bankruptcy. As a result, the true value of the bankruptcy estate has been obscured, undercutting Petitioners' ability to engage in meaningful settlement discussions that should have resolved the estate long ago. A recently filed adversary proceeding alleges that the bankruptcy estate has always been solvent. If true, then the bankruptcy estate could pay all creditors in full and dispense with the bankruptcy, rather than use estate assets to enrich a limited number of HCMLP's insiders and professionals.[43]

**Second**, Judge Jernigan's bias has had a chilling effect on Petitioners and their counsel. No litigant should be fearful of acting to protect their rights or believe that justice is impossible because of the predilections of a judge. But that is the situation here.[44] Such malice directed to a party's good faith efforts to protect their interests is just what recusal is designed to prevent.

**E.     Judge Jernigan Authors And Promotes Another Book Mirroring Her Perception Of Highland And Mr. Dondero.**

Compounding matters, Petitioners recently learned that Judge Jernigan wrote a second novel, *Hedging Death*—while presiding over the HCMLP bankruptcy. That novel was released in

---

[43] *See* HCMLP Bankr. Dkt. 3662.

[44] Debtor sought to have Movant and NexPoint sanctioned and held in contempt for making a proffer of evidence to preserve the record for appeal in two adversary proceedings seeking to recover on certain notes. *See Highland Capital Mgmt., L.P. v. Highland Capital Mgmt. Fund Advisors, L.P.*, Case No. 21-03004-sgj, Dkt. 130 at 10-14. Although it was the Debtor's motions that were out of line (given that a making a proffer was the only means of preserving the record), and while Judge Jernigan denied the Debtor's motions, she still chastised Movant and NexPoint for preserving their rights, calling the Debtor's motion "a close call." *Id.*, Dkt. 161, Apr. 20, 2022 Hr'g Tr. at 51:14-21.

March 2022, less than a year after HCMLP's Plan became effective and while the HCMLP bankruptcy proceedings were ongoing. *Hedging Death* involves the same bankruptcy judge protagonist and, as shown below, draws unquestionable parallels to Mr. Dondero and his businesses.[45] Petitioners have also recently discovered that Judge Jernigan promoted her novels on social media, a personal website, at live book signing events, and solicited other members of the judiciary to write reviews.[46]

## F.     The Bankruptcy Court's Issues A Flawed Recusal Order

On March 6, 2023, Judge Jernigan denied the Petitioners' Amended Renewed Motion to Recuse because she: (1) subjectively believes she is not biased; (2) deemed the Motion untimely; and (3) believes that the few examples she addressed do not demonstrate bias (though the Court failed to address most of Petitioners' allegations).[47] Judge Jernigan also noted that criticism of counsel (which was not even a grounds that Petitioners asserted) did not justify recusal.[48]

### STANDARD OF REVIEW

In the Fifth Circuit, mandamus relief is available to obtain appellate review of bankruptcy orders, including questions of recusal, that are otherwise non-appealable.[49] Courts entertain such petitions before a final judgment has been entered, because "[i]nterlocutory review of disqualification issues on petitions for mandamus is both necessary and appropriate to ensure that

---

[45] *See* Judge Stacey G. Jernigan, *Hedging Death* (Mar. 22, 2019) ("*Hedging Death*"), back cover.

[46] *See, e.g.,* https://sjnovels.com/hedging-death; https://twitter.com/SJNovels (tagging "@IWIRC" and "#bankruptcyattorney" and attaching a book review from a former bankruptcy judge).

[47] *See* HMCLP Bankr. Dkt. 3676 [App. 2-37]; *see also* HCMLP Bankr. Dkt. 3570 & 3571 (Renewed Motion) [App. 2799-2828]. The Petitioners had previously filed a motion to recuse on March 18, 2021, *see* HCMLP Bankr. Dkt. 2060, 2061, & 2062 [App. 39], that was denied by the Bankruptcy Court for similar reasons on March 23, 2021, *see* HCMLP Bankr. Dkt. 2083 ("First Recusal Order").

[48] HMCLP Bankr. Dkt. 3676 at 17 [App. 18-19].

[49] *In re Lieb*, 915 F.2d 180, 186 (5th Cir. 1990) (citing *In re Barrier*, 776 F.2d 1298 (5th Cir. 1985) (per curiam)); *In re Cameron Int'l Corp.*, 393 F. App'x 133, 134-35 (5th Cir. 2010).

judges do not adjudicate cases that they have no statutory power to hear."[50] The writ, however, requires exceptional circumstances, and the party seeking the writ has the burden of proving a clear and indisputable right to it.[51] While a writ of mandamus is only available where a litigant has no other adequate means of obtaining the desired relief, courts recognize that this standard is met— and a writ of mandamus disqualifying a judge is required—if petitioner demonstrates bias or even if the judge's "impartiality might reasonably be questioned."[52]

REASONS THE WRIT SHOULD ISSUE

**A.     The Bankruptcy Court Abused Its Discretion Denying Recusal Under Section 455**

Under 28 U.S.C. § 455, recusal is *required* whenever: (1) a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;" **_or_** (2) the judge's "impartiality might **_reasonably be questioned_**."[53] Notably, the judge's subjective belief of her impartiality is irrelevant and proof of actual bias is unnecessary.[54] As Congress explained when enacting section 455, litigants "ought not have to face a judge where there is a reasonable question of impartiality."[55]

This neutrality requirement helps guarantee that no person will be deprived of his interests without a proceeding in front of an impartial arbiter.[56] "[F]undamental to the judiciary is the public's confidence in the impartiality of [its] judges and the proceedings over which they

---

[50] *In re Sisneros*, 283 F. App'x 11, 12 (3d Cir. 2008) (citing *In re Sch. Asbestos Litig.*, 977 F.2d 764, 778 (3d Cir. 1992)).

[51] *In re Lieb*, 915 F.2d at 186.

[52] *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995) (holding that because petitioner demonstrated that a reasonable person could not help but harbor doubts about the impartiality of the judgment, petitioner had no adequate alternative means to obtain the relief he seeks).

[53] 28 U.S.C. § 455(a) (emphasis added); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 850 (1988); *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003).

[54] *See Burke v. Regalado*, 935 F.3d 960, 1054 (10th Cir. 2019) (citations omitted); *Liljeberg*, 486 U.S. at 805.

[55] H. Rep. No. 1453, 93rd Cong., 2d Sess. 1 (1974), reprinted in 1974 U.S. Code Cong. & Admin. News 6351, 6355.

[56] *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980) (internal citations omitted).

12

preside"[57] because "justice must satisfy the *appearance* of justice."[58] The Fifth Circuit has held, therefore, that "*[i]f the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal*."[59]

Moreover, because the Due Process Clause entitles every litigant to a full and fair opportunity to make their case in an impartial forum—regardless of their history with that forum—the source of the judge's bias is not outcome determinative.[60] The Supreme Court has recognized that predispositions developed during the course of current or prior proceedings will support recusal under section 455(a) "*if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible*."[61]

Applying these standards, federal courts have held that recusal (or reassignment to a new judge) is appropriate under several circumstances applicable in this case, including where, among other things:

(1)    the judge made antagonistic statements to plaintiffs and manifested an "apparent distrust" of plaintiffs "early in the litigation;"[62]

(2)    the judge questioned one party's decision to pursue a course of action and made comments that were critical of the party's position;[63]

(3)    the judge openly questioned the integrity of one party's counsel, suggested he was proceeding in "bad faith," and called certain decisions made by him "suspicious;"[64]

---

[57] *Id.*

[58] *Id.* (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)).

[59] *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997).

[60] *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980); *see also Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 877 (2009) ("It is axiomatic that a fair trial in a fair tribunal is a basic requirement of due process."); *Johnson v. Mississippi*, 403 U.S. 212, 216 (1971) (per curiam) ("Trial before 'an unbiased judge' is essential to due process."); *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 893 (5th Cir. 2021) (citations omitted).

[61] *Liteky v. United States*, 510 U.S. 540, 554-555 (1994).

[62] *Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888, 904-05 (8th Cir. 2009) (reassigning case to a new judge on remand).

[63] *In re U.S.*, 572 F.3d 301, 311-12 (7th Cir. 2009) (on mandamus, reversing district judge's order denying motion to recuse and ordering that "all orders entered by the Judge after the motion for recusal was filed . . . be vacated").

[64] *U.S. v. Kennedy*, 682 F.3d 244, 258-260 (3d Cir. 2012) (ordering reassignment of the case to a different judge on remand).

(4)     there was "immediate, continuing, and ever-increasing tension" between the judge and one party's counsel, the judge questioned in open court "the conduct of the lawyers" for one party, and the judge questioned one party's "good faith;"[65] and

(5)     the judge's comments "evidenced his distrust of [one party's] lawyers and his generally poor view of [one party's] practices."[66]

Further, in the context of these standards, it is well-accepted that "[a] judge may not write about or discuss a pending or impending case, or disclose nonpublic information, *even in a work of fiction.*"[67] Indeed, the Code of Conduct for United States Judges requires judges to abide by various canons in the execution of their judicial duties.[68] Of particular relevance here, Canon 2 requires a judge to avoid impropriety and the *appearance of impropriety* in all activities.[69] Canon 4 prescribes that a judge may engage in extrajudicial activities only if those activities are consistent with the obligations of judicial office.[70] In this regard, a judge should (1) avoid using information regarding the judicial office in advertising materials, (2) avoid conducting a book signing or discussion directed to attorneys or other members of the legal community, and (3) refrain from engaging in promotional activities relating to any private publication.[71]

The Bankruptcy Court has engaged in *all* of these prohibited practices in this case, each of which should mandate recusal.[72] Judge Jernigan's personal bias and animus toward Mr. Dondero

---

[65] *Johnson v. Sawyer*, 120 F.3d 1307, 1334-1337 (5th Cir. 1997) (ordering reassignment of the case to a different judge on remand and explaining that "the loss of efficiency and economy pales in comparison" to "the necessity to preserve the appearance of impartiality, fairness, and justice").

[66] *U.S. v. Microsoft Corp.*, 56 F.3d 1448, 1465 (D.C. Cir. 1995) (where a reasonable observer could question whether the presiding judge "would have difficulty putting his previous views and findings aside" on remand, case should be assigned to a different judge).

[67] *See* American Bar Ass'n Model Code of Judicial Conduct, Rules 2.10, 3.5 (emphasis added).

[68] Code of Conduct for United States Judges, *available at* https://www.uscourts.gov/sites/default/files/code_of_conduct_for_united_states_judges_effective_march_12_2019.pdf.

[69] *Id.* The commentary to Canon 2A explains that the canon "applies to both professional and personal conduct."

[70] *Id.*

[71] *See, e.g.*, Guide to Judiciary Policy, Vol. 2, Part B, § 220, Nos. 55, 112. 114, *available at* https://www.uscourts.gov/sites/default/files/vol02b-ch02.pdf.

[72] *Johnson v. Sawyer*, 120 F.3d at 1334.

and his perceived affiliates (including Petitioners) far exceeds what is permissible in any court proceeding. The evidence is more than sufficient to establish that Judge Jernigan harbors an actual and enduring bias and animus that is "personal rather than judicial in nature."[73]

Alternatively, even if Judge Jernigan does not harbor actual bias—and all signs demonstrate that she does—the evidence establishes that any reasonable observer would "harbor doubts concerning [her] impartiality"[74] and question whether she "'would have difficulty putting [her] previous views and findings aside.'"[75] Allowing Judge Jernigan to continue to preside over any proceeding involving Petitioners would undermine public confidence in the judiciary. Under these circumstances, recusal is mandatory.

**B.      The Recusal Order Fails To Negate Bias Or The Appearance Of Bias**

The Recusal Order fails to refute the grounds mandating recusal. Moreover, the lengths the Judge goes to retain control over proceedings involving Mr. Dondero and Petitioners further evidences why recusal is necessary.

**1.      Judge Jernigan Abused Her Discretion In Denying Petitioners' Renewed Motion Pursuant To 28 U.S.C. § 455 As Untimely.**

The timeliness of a recusal motion is determined from the point in time that a judge's bias (or her appearance of bias) has manifested in the case (*i.e.*, after the grounds for recusal, beyond speculation, are actually known).[76] A judge, suspected of bias, cannot sit on that bias and then—after a certain amount of time passes—take action confirming the bias (or appearance thereof) and then claim it is too late to recuse and force a party to be judged by a partial jurist.

---

[73] *Parrish v. Board of Comm'rs*, 524 F.2d 98, 100 (5th Cir. 1975).
[74] *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 483-84 (5th Cir. 2003) (quoting *In re Chevron U.S.A., Inc.*, 121 F.3d at 165).
[75] *Microsoft Corp.*, 56 F.3d at 1465 (quoting *U.S. v. Torkington,* 874 F.2d 1441, 1447 (11th Cir.1989)).
[76] *Davies v. C.I.R.*, 68 F.3d 1129, 1130-31 (9th Cir. 1995) (citing *E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1295 (9th Cir. 1992)).

Notably, the Fifth Circuit has expressly declined to adopt a "*per se* untimeliness" rule.[77] The Fifth Circuit has explained that "the **closest thing** to per se untimeliness" occurs "when a party already knows the facts purportedly showing an appearance of impropriety but waits until after an adverse decision has been made by the judge before raising the issue of recusal."[78]

While courts—including *Delesdernier v. Porterie*, which the Bankruptcy Court cites—have denied recusal motions as untimely, those cases generally involve situations in which the complaining party obtained definitive knowledge that the judge had a disqualifying circumstance **and** either: (1) delayed raising the issue until a strategically advantageous time; or (2) raised the issue for the first time after a final judgment.[79]

Here, Petitioners sought to recuse Judge Jernigan based on an evolving *pattern of conduct* taken by Judge Jernigan that, when viewed as a whole, reveals both the appearance of bias and actual animus towards Petitioners.[80] That bias and animus represents a **continuing and ongoing harm** that can only be remedied if a non-biased factfinder presides over the myriad proceedings still before the Bankruptcy Court, including adversary proceedings.

Importantly, that bias and animus did not actually manifest itself until late 2020 and early 2021. It is the manifestation (or appearance) of bias that is the relevant demarcation line as it relates to timeliness of a recusal motion, and Petitioners indisputably filed their Original Recusal Motion

---

[77] *United States v. Sanford*, 157 F.3d 987, 988 (5th Cir. 1998).

[78] *Hill v. Schilling*, 495 F. App'x 480, 483 (5th Cir. 2012) (emphasis added).

[79] *See, e.g., Sanford*, 157 F.3d at 989 (Denying motion to recuse as untimely because basis for recusal was known and defendant did not move to recuse the district court and raised issue for first time on appeal); *Hill*, 495 F. App'x at 483 (Denying motion to recuse as untimely because the movant knew that the trial judge's spouse held an economic interest in one of the parties, but did not move to recuse the judge until after adverse judgment at trial); *Davies*, 68 F.3d at 1130-31 (holding motion to recuse was untimely because the movants knew the judge represented the IRS and did not object after a judgment was entered against them); *Delesdernier v. Porterie*, 666 F.2d 116 (5th Cir. 1982) (holding that "the motion raised for the first time on appeal, and after two full trials on the merits," is untimely).

[80] *See Davis v. Board of School Comm'rs of Mobile Cnty.*, 517 F.2d 1044, 1051 (5th Cir. 1975) (grounds for recusal exist "where such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party").

a reasonable time thereafter (*i.e.*, March 18, 2021). As a result, there is no timing issue. Neither

the 15 months that passed after the HCMLP Bankruptcy was transferred nor the timing of the

various recusal motions (or the Bankruptcy Court's suspicions regarding the Petitioners'

motivation for the filings) are relevant.[81] Moreover, Petitioners just recently learned of Judge

Jernigan's two novels and the overt bias revealed in the publication, contents, and marketing of

those books.[82] Any motion based on the novels is untimely.

### 2.    Judge Jernigan Abused Her Discretion In Relying On Its Subjective Denials Of Actual Bias.

While referencing the proper objective standard, Judge Jernigan denied the renewed

recusal motion by applying a subjective standard: "[t]he Presiding Judge does not believe she

harbors, or has shown, any personal bias or prejudice against the Petitioners. She does not believe

she has displayed deep-seated favoritism or antagonism."[83] As explained, a judge's subjective

belief of her bias is irrelevant[84] and it is not necessary that the judge actually has a bias (or actually

knows of grounds requiring recusal).[85] The Bankruptcy Court abused its discretion to the extent it

denied Petitioners' renewed recusal motion based upon her own subjective beliefs regarding her

bias.[86]

### 3.    Judge Jernigan Abused Her Discretion In Failing And Refusing To Address Each Basis For Recusal.

Judge Jernigan abused her discretion in denying the renewed recusal motion without

---

[81] Petitioners moved to recuse the Bankruptcy Court from adversary proceedings and future issues involving Petitioners; not from hearing any contempt issue. Petitioners never sought to have any order or hearing abated until after the motions were ruled upon and appealed.

[82] *See Kirschner v. Dondero*, Adv. Proc. No. 21-03076-sgj, Dkt. 310-1, ¶ 5.

[83] HCMLP Bankr. Dkt. 3676 at 17 [App. 18-19].

[84] *Burke v. Regalado*, 935 F.3d 960, 1054 (10th Cir. 2019) (citations omitted).

[85] *Liljeberg*, 486 U.S. at 805.

[86] While Judge Jernigan claims to have merely addressed motions as they were presented," shown proper respect for Petitioner's and counsel, and to subjectively believed that Petitioners' goals is to preserve their economic proprietary rights, there is no support or citation for these comments or subjective thoughts. The record shows the opposite.

addressing each factual basis alleged. The review of a Section 455 recusal request is "'extremely fact intensive and fact bound,' thus a close recitation of the factual basis for the [party's] recusal motion is necessary."[87]

Here, Judge Jernigan selectively addressed only a few of the identified bases for recusal. That is improper. The Judge avoided addressing most of the allegations in the Amended recusal motion purportedly because the filings contain thousands of pages. However, the "thousands" of pages are largely appendices, including full transcripts. The recusal motions are not "thousands" of pages and contain specific arguments with specific pin citations to relevant portions of the appendices. The length of an appendix does not permit Judge Jernigan to cherry-pick the grounds for recusal that she wants to try to explain away, while avoiding grounds that she cannot. Avoiding most of the grounds for recusal further demonstrates the Judge's predisposition to rule against Petitioner without objective analysis.

**4.    The Attempted Explanations To The Selected Bases Reinforce The Need To Recuse.**

*a.  The Judge Attempts To Distance Herself From Opinions She Admittedly Formed During The Acis Bankruptcy.*

Judge Jernigan contends that she: (1) does not recall any specific ruling from the Acis Bankruptcy relating to Mr. Dondero; (2) only recalls Mr. Dondero testifying once in court during the Acis Bankruptcy; and (3) has vague recollection that deposition testimony may have been presented another time.[88]

As explained, however, the record refutes this denial. ***Before Mr. Dondero had ever testified in the HCMLP Bankruptcy***, Judge Jernigan conceded that her opinions of Mr. Dondero

---

[87] *Republic of Panama v. Am. Tobacco Co.*, 217 F.3d 343, 346 (5th Cir. 2000).
[88] HCMLP Bankr. Dkt. 3676 at 14-17 [APP. 15-18].

from the Acis Bankruptcy were inextricably planted in her mind[89] and openly questioned Mr. Dondero's credibility prefacing a statement she made in a hearing by stating, ***"[i]f you can trust Mr. Dondero…."***[90] The Recusal Order does not even attempt to explain away the numerous prior statements. Instead, the Judge acted as if no such statements were ever made. This further demonstrates why recusal is necessary.

### b. Judge Jernigan's Questioning About Possible PPP Loans At The July 2020 Exclusivity Hearing Further Demonstrates Her Bias.

The Recusal Order characterizes inquiries made during a July 2020 hearing regarding Paycheck Protection Program ("PPP") loans that "Mr. Dondero or affiliates" received as simple curiosity and insists that her questions do not matter because no action was taken against Mr. Dondero or his affiliated entities.[91]  These justifications are both inaccurate and irrelevant.

***First***, this was not curiosity. After seeing an article that referenced "Mr. Dondero or Highland affiliates" received PPP loans, Judge Jernigan (1) insinuated that Mr. Dondero had engaged in improper activity; (2) stated that "you can probably imagine the different things going through my brain;" and (3) *sua sponte* directed HCMLP's counsel to investigate and report who was behind the alleged loans, even if such loans were made to a non-debtor entity affiliated with Mr. Dondero.[92]

***Second***, the *point* is not whether action was taken but that the Judge read an article in her personal time, assumed from that article (rather than evidence presented in her court) that Mr.

---

[89] *See* HCMLP Bankr. Dkt. 3571-1, Ex. B, Jan. 9, 2020 Hr'g Tr. at 52:10-25, 78:23-79:16, & 80:3-6 [App. 2846, 2849-2850, 2851]; *see also* HCMLP Bankr. Dkt. 2062, Ex. 3, Feb. 19, 2020 Hr'g Tr. at 174:22-175:1 [App. 0481-0482].

[90] HCMLP Bankr. Dkt. 2062, Ex. 3, Feb. 19, 2020 Hr'g Tr. at 174:22-175:1 [App. 0481-0482].

[91] Bankr. Dkt. 3676 at 28 [App. 29].

[92] Amended Renewed Motion at 8-9 [App. 2811-2812]; HCMLP Bankr. Dkt. 3571-1, Ex. E, July 8, 2020 Hr'g Tr. at 43:13-44:1 [App. 2890-2891].

Dondero had engaged in nefarious conduct, demanded information regarding that conduct, and, broadcast her distrust of Mr. Dondero. That appearance of partiality requires recusal.

### c.   The Bankruptcy Court's Use Of Terms "Litigious" or "Vexatious."

The Bankruptcy Court denies ever "find[ing] or conclud[ing] that Petitioners are 'vexatious litigants'" and claims it merely "determined that Mr. Dondero's litigation history supported the inclusion of a gatekeeper provision in the Plan."[93] However, the Fifth Circuit concluded that the Bankruptcy Court found Petitioners to be vexatious and struck a part of the gatekeeper provision in the Plan because it improperly attempted to enjoin and impose sanctions on Petitioners without following the procedures to designate them vexatious litigations.[94]

Notably, there was no litigation history cited to support any such ruling. While the Recusal Order now lists numerous bases for its finding, the only basis the Bankruptcy Court gave to support its finding at the time consisted solely of pre-petition lawsuits against the Debtor.[95] Petitioners were not parties to these lawsuits and HCMLP maintained that there were meritorious defenses to the claims.[96] The Recusal Order tellingly omits any discussion of this important distinction.

### d.   The Bankruptcy Court's Orders Requiring Mr. Dondero's (And His Sister's) Attendance At Bankruptcy Court Hearings.

***First***, to try and discredit Petitioners (and their counsel), Judge Jernigan claims that Petitioner's recusal motions make "disturbing" allegations that she ordered Nancy Dondero to "appear at all hearings 'regardless of whether [her] presence [was] needed.'" However, her order requires Nancy Dondero to "appear in [1] ***all*** future hearings in this Bankruptcy Case, as well as [2] all Adversary proceedings where either the Trusts are ***a party or take a position***, unless

---

[93] *Id.* at 32 (citing HCMLP Bankr. Dkt. 1943, ¶¶ 80-81).
[94] *In re Highland Capital Mgmt., L.P.*, 48 F.4th 419, 438 n. 19 (5th Cir. 2022).
[95] HCMLP Bankr. Dkt. 2062, Ex. 9, Feb. 9, 2021 Hr'g Tr. at 46:20-25 [App. 1114]; *See also* HCMLP Bankr. Dkt. 3676 at 28, n.24 [App. 20]; HCMLP Bankr. Dkts. 891;  895; 928 and 1384 at 31.
[96] *See* App. 2779-2791, HCMLP Bankr. Dkt. 2062, at Ex. 28; *see also id.*, App. 2792-2793, Ex. 29.

otherwise ordered by the court."[97] The Judge's willingness to criticize Petitioners' counsel and skew her own order to maintain control of this case only further evidence supports recusal.

**Second**, the order relating to Mr. Dondero—which requires his attendance regardless of whether he is taking a position—departed from the Bankruptcy Court's usual approach.[98]

### e. Hearing On Debtor's Application To Employ Foley Gardere As Special Counsel On February 19, 2020.

HCMLP filed an Application to Employ Foley Gardere as Special Counsel (the "Application to Employ") to pursue appeals relating to the Acis Bankruptcy on behalf of Neutra Ltd., a company owned by Mr. Dondero that succeeded to the ownership of Acis. Retired Bankruptcy Judge Russell Nelms, one of the three independent directors appointed to HCMLP's new board, testified that the board used its business judgment to approve the Application to Employ. The evidence demonstrated that a successful appeal would: (1) defeat a $75 million claim against HCMLP; and (2) result in Neutra owning Acis and HCMLP being reinstated as the advisor to Neutra, which would generate fees and economic benefit for HCMLP.[99] Nevertheless, the Bankruptcy Court concluded that HCMLP failed to prove the estate would benefit[100] and asserted that Mr. Dondero somehow used his "powers of persuasion" to unduly influence the ***Independent Board's*** business judgment.[101] Notably, at no other point during the HCMLP Bankruptcy did Judge Jernigan find any Debtor-related testimony unconvincing, except on one occasion when she

---

[97] See HCMLP Bankr. Dkt. 2458 at 3 ("**ORDERED** that the Dugaboy Investment Trust and the Get Good Trust must have a trustee appear in all future hearings in this Bankruptcy Case, as well as all adversary proceedings where either of the Trusts are a party or take a position, unless otherwise ordered by the court.").
[98] HCMLP Bankr. Dkt. 3571-1, May 20, 2021 Hr'g Tr. at 20:19-21:14 [App. 2991-2998].
[99] HCMLP Bankr. Dkt. 2062, Feb. 19, 2020 Hr'g Tr. at 39:6-12, 45:8-16, 69:23-73:11 [App. 0346, 0352, 0376-0380].
[100] HCMLP Bankr. Dkt. 3676 at 26 [App. 27].
[101] HCMLP Bankr. Dkt. 3571-1, Ex. C, Feb. 19, 2020 Hr'g Tr. at 177:7-178:3 [App. 2863-2864]. In the same hearing, the Court also suggested that Mr. Dondero could not be "trusted" to "keep his word." *Id.* at 174:11-175:13 [App. 2860-2861].

expressed hostility to the possibility that HCMLP's position might benefit a Mr. Dondero affiliate.[102]

### f.  The Presiding Judge's Novels.

The novels reveal (or, at lease, create a reasonable perception) that she holds negative views about hedge fund managers like Mr. Dondero and the industry in which he operates. In the Recusal Order, Judge Jernigan acknowledges she learned about the CLO industry and the CLO products that are featured in her novels during the Acis Bankruptcy.[103] One can reasonably presume that Judge Jernigan, like many authors, also conducted *outside research* on the industry and its players, of which Mr. Dondero and HCMLP were pioneers.

Judge Jernigan denies that any characters or entities in her novels were "inspired by or modeled after the [Petitioners]," disclaims any resemblance her novels have "to actual events, locales, or persons, living or dead, [a]s entirely coincidental," and focuses on aspects of her stories that differ from reality.[104] However, the Bankruptcy Court avoids discussing the important similarities between her novel, *Hedging Death*, and Petitioners. By way of example:

| *Hedging Death* | Mr. Dondero, HCMLP, and Acis |
|---|---|
| The novel involves a Dallas-based hedge fund, *Ranger* Capital, which is described as a "multi-billion-dollar conglomerate, which manage[s] not just hedge funds, but private equity funds, CDOs, CLOs, REITS, life settlement, and all manner of compicated financial products."[105] | HCMLP: (1) was formerly named *Ranger* Asset Management; (2) is a Dallas-based hedge fund; (3) was, at one point, worth more than a billion dollars; and (3) manages exactly the same unusual mix of investments.[106] HCMLP launched one of the first ever CLOs |

---

[102] When applying the reasonable business judgment standard to Mr. Seery and Debtor management, by contrast, the Bankruptcy Court has said it is a very low standard requiring judicial deference. *See* HCMLP, Ex. W, August 4, 2021 Hr'g. Tr. at 77:4-78:20 [App. 3075-3076].

[103] HCMLP Bankr. Dkt. 3676 at 15 [App. 16].

[104] HCMLP Bankr. Dkt. 3676 at 33-36 [App. 34-37].

[105] *See Hedging Death* at 10-11, 73, 99, 244.

[106] Notably, there are no other enterprises in Dallas that manage this mixture of product types. Moreover, this mixture includes products not normally found at the same firm because they (1) require divergent skill sets and teams to manage, (2) usually have significantly different time horizons for asset realization (which require a diverse base of investors with different timing needs), and (3) have limited overlap in which managed funds can take investments, such as CLOs and CDOs (which only can invest in debt), private equity (which is equity only), and REITs (which are real-estate only). Highland's unique history created this diversity of product types. The Highland mixture of products

| | and was the world's largest CLO manager for years. |
|---|---|
| Ranger Capital's manager is described as a reckless investment manager and "nasty" litigant.[107] | Judge Jernigan has used the exact same language to describe Mr. Dondero in the Bankruptcy Proceedings. |
| Ranger Capital experiences economic distress largely due to extensive investor litigation stemming from bad investments.[108] | Judge Jernigan admits that her characterization of Mr. Dondero as litigious "was a view formed against the backdrop of having heard about more than a decade of litigation," and describes HCMLP as having a "historical inclination toward litigation."[109] |
| The novel describes "byzantine" international tax structures and off-shore transactions as pretexts for hiding illegal activity and money laundering.[110] | HCMLP and Mr. Dondero use international tax structures and off-shore transactions (customary in the finance industry), and Judge Jernigan has repeatedly expressed her suspicion of them (calling them "byzantine").[111] |
| The novel describes the life settlement industry as "creepy."[112] | The Bankruptcy Court knows that HCMLP and Mr. Dondero invested in the life settlement industry. |

These are just a few parallels, but the only one that Judge Jernigan even attempts to address is the name of Ranger Capital. The Judge claims that: she has never "*heard*" that HCMLP ever did business under the name of "Ranger"; the name "Ranger" "was never mentioned in the bankruptcy case"; Ranger "is not in the Highland disclosure statement"; Ranger is absent from "the numerous organizational charts that were presented to her *in the last three years*."[113] However, this information is publicly disclosed: (1) on NexPoint's (one of the Petitioners') website; [114] and (2) in a 2018 filing in the Acis Bankruptcy (but not presented in the last *three*

---

likely exists only at a sprawling firm that invests in almost all asset types, or but not at any other founder-managed mid-size firm.

[107] *See Hedging Death* at 16, 74, 98-99, 114, 127.

[108] *Id.* at 16, 114, 127.

[109] HCMLP Bankr. Dkt. 3676 at 28-30 [App. 29-31].

[110] *See, e.g., Hedging Death* at 75, 127-128, 179 ("Graham had kept all this information secret with his byzantine web of offshore companies.").

[111] *See, e.g.,* HCMLP Bankr. Dkt. 3571-1, Ex. D, June 30, 2020 Hr'g Tr. at 86:16-87:15 [App. 2882-2883].

[112] *Hedging Death* at 71.

[113] HCMLP Bankr. Dkt. 3676 at 34 [App. 35].

[114] www.nexpointassetmgmt.com/our-history/

*years*).[115] Notably, Judge Jernigan does not deny that Ranger Capital is based upon HCMLP, offers no alternative "inspiration" for the "Ranger" name, and fails to deny that the unscrupulous depiction of hedge fund managers expressed in the first novel, *He Watches All My Paths*, reflect her own views.

Any reasonable person reading Judge Jernigan's novel *Hedging Death* would logically conclude: (1) the novel appears patterned, at least in part, after HCMLP and Mr. Dondero; and (2) the Judge holds bias and prejudice, at the very least highly negative opinions, about hedge-fund managers and private equity industry, generally (if not about Mr. Dondero and his businesses specifically). Indeed, several recent press articles have drawn parallels between Judge Jernigan's story in *Hedging Death* and Mr. Dondero/HCMLP.[116] At the very least, these parallels would cause and have caused reasonable people—and should cause this Court—to reasonably question Judge Jernigan's impartiality, warranting an order of mandamus requiring the Judge's recusal.[117]

### PRAYER

For these reasons, recusal is mandatory.[118] Petitioners respectfully request that the Court grant this Mandamus.

---

[115] *See* Dkt. 85-2 in Case No. 18-03078 at Ex. P to the Trustees Motion for Partial Summary Judgment [ App.3368] – a history of HCM in the 2018 ADV ("1990 James Dondero and Mark Okada (the "Founders") formed a joint venture with Protective Life Insurance Corporation ("Protective Life"), specializing in senior secured loans … 1997 The Founders purchased Protective Life's stake, and later that year established Ranger Asset Management, L.P., an independent investment adviser registered with the SEC. 1998 Ranger Asset Management, L.P. changed its name to Highland Capital Management, L.P."). Petitioners request the Court take judicial notice of this filing.
[116] *See  Bankruptcy Litigant: Recuse Novelis Judge*; February 1, 2023 [App. 3170-3173]; *see also* App. Financial Times [3174-3177], "Highland court saga tests fact vs fiction," … (author voices his own suspicions about whether the novel is based on the real-life proceedings currently playing out in Judge Jernigan's courtroom).
[117] *In re Kansas Pub. Employees Retirement Sys.*, 85 F.3d at 1358.
[118] *Liljeberg*, 486 U.S. at 850; *Andrade*, 338 F.3d at 454.

Dated: April 5, 2023

Respectfully submitted,

CRAWFORD, WISHNEW & LANG PLLC

By: */s/ Michael J. Lang*      
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500

**ATTORNEYS FOR PETITIONERS**

25