PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Intervenor Highland Capital Management, L.P.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| In re: | § | |
| | § | |
| JAMES DONDERO, *et al.*, | § | |
| | § | |
| Appellants, | § | |
| v. | § | |
| | § | Case No. 3:21-cv-00879-K |
| HON. STACEY G. C. JERNIGAN., | § | |
| | § | |
| Appellee. | § | |
| | § | |

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.



**DEBTOR'S REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO INTERVENE IN APPEAL OF RECUSAL ORDER**

Highland Capital Management, L.P., the debtor and debtor-in-possession (the "Debtor") in the above-captioned chapter 11 case ("Bankruptcy Case"), by and through its undersigned counsel, hereby files this reply (the "Reply") in further support of its *Motion for Leave to Intervene in Appeal of Recusal Order* [Docket No. 2] (the "Motion").[2] In support of its Reply, the Debtor respectfully states as follows:

## I. PRELIMINARY STATEMENT

1. Through the Motion, the Debtor seeks to intervene in the Appeal of the Recusal Order in order to supplement the record and file a responsive brief. The bases for the Motion are straight-forward and cannot be credibly contested: (i) the Debtor has a substantial interest in the outcome of the Appeal, and (ii) the current parties to the Appeal do not adequately represent those interests.

2. Indeed, the Debtor expected the Motion to be unopposed based on prior e-mail communications with Appellants' counsel. *See* **Morris Reply Dec. Ex. 1**[3] (in response to the Debtor's query as to whether the Appellants would oppose the Debtor's motion to intervene, Appellant's counsel stated, among other things, "I know who you represent and I don't have an issue. You can put me down as unopposed.").[4]

3. Surprisingly, Appellants went back on their word and opposed the Debtor's Motion, [Docket No. 5] (the "Opposition"), on various grounds, none of which have merit.

---

[2] Capitalized terms not defined shall take the meaning ascribed thereto in the Debtor's Motion.

[3] Refers to the *Reply Declaration of John. A. Morris in Support of Motion to Intervene in Appeal of Recusal Order* (the "Morris Reply Dec."), being filed concurrently with this Reply.

[4] Appellants contend that they were "unopposed" to the Debtor "***seeking intervention.***" (Opposition ¶ 17) (emphasis in original). This makes no sense as the Debtor never needed Appellants consent to file the Motion. The e-mails speak for themselves and the Debtor encourages the Court to review them to the extent it deems necessary or appropriate.

4. There can be no credible dispute that: (a) the Debtor has a substantial interest in the outcome of the Appeal; (b) the Debtor will suffer considerable and adverse consequences if the Appeal is granted; and (c) there is no party to the appeal who can or will adequately protect the Debtor's interests.

5. For the reasons stated in its Motion and further below, the Debtor has satisfied its requirements for intervention in the Appeal.

## II. <u>ARGUMENT</u>

### A. <u>The Debtor Has a Significant Interest in the Outcome of the Appeal</u>

6. In their Opposition, Appellants vaguely argue that the Debtor would not face substantial adverse consequences if the Recusal Order is overturned. (*See* Opposition ¶¶ 20-23). In support of this argument, Appellants principally contend that: (i) the Bankruptcy Court's institutional knowledge of this Case does not affect pending and future proceedings; (ii) the Debtor did not respond to the Motion to Recuse; and (iii) the Appeal will not go unopposed absent the Debtor's intervention. Each of these arguments is without merit.

#### 1. <u>The Debtor Would Face Substantial Adverse Consequences if the Recusal Order Is Reversed</u>

7. Appellants argue that "none of the Bankruptcy Court's institutional knowledge affects the trial of the pending and future" proceedings, and that such proceedings should "stand alone" on a "case-by-new-case basis." (Opposition ¶ 20). This argument is not credible.

8. Judge Jernigan has presided over this complex Case for more than eighteen (18) months. During that time, she has gained substantial insight into the Debtor's prepetition litigation history and post-petition business operations, business relationships, and efforts at reorganizing. Ten adversary proceedings are pending with trials scheduled during the next six

months (almost all of which are against one or more of the Appellants or entities owned and/or controlled by Mr. Dondero, including five (5) where the Debtor seeks to recover tens of millions of dollars from Mr. Dondero and his affiliates under a series of demand notes). Other substantial motions are pending, including one motion for contempt against Mr. Dondero that is *sub judice*, and another against Mr. Dondero and certain related entities that will be heard on June 8, 2021. These facts are beyond dispute.

9. Under the circumstances, the abrupt removal of Judge Jernigan at this late stage would severely prejudice the Debtor and its estate (i) through the loss of institutional knowledge, and (ii) by delaying the proceedings for an indeterminate period of time. These consequences are foreseeable and would necessarily impair the Debtor's ability to implement its plan of reorganization and make distributions to creditors—some of whom have been waiting a decade to get paid.[5]

10. Appellants' remaining contentions on the issue of harm are either frivolous or irrelevant. For example, Appellants argue that they "are entitled to a full and fair opportunity to make their case in a fair and impartial forum." (Opposition ¶21). But this argument goes to the merits of the Appeal, not the Debtor's right to intervene.[6] The Debtor asks the Court to consider this simple question: would litigants suffer any adverse consequences if a case was suddenly

[5] In further support of their argument that the Debtor would not suffer substantial harm if the Recusal Order is reversed, Appellants reference the "core issues" on appeal and the general legal standard for the recusal of a judge pursuant to 28 U.S.C. § 455. (*See* Opposition ¶¶21-22). The issues on appeal and the legal standard for recusal, however, have no bearing on the Debtor's interest in the outcome of the Recusal Motion and its right to intervene in the Appeal to protect those interests.

[6] Appellants' argument that the Debtor's counsel previously agreed at a transfer hearing that the Case should not be transferred from the Delaware Court to the Bankruptcy Court because of its alleged "negative views," (Opposition ¶3), also goes to the merits of the Appeal, and is not relevant for purposes of this Motion. Nevertheless, it warrants a response. During this hearing, which took place nearly fourteen months ago, Mr. Dondero controlled the Debtor and directed its counsel to oppose the transfer of venue on those bases. However, the Delaware Court rejected this argument, the Case was transferred to the Bankruptcy Court, and Mr. Dondero was removed from his position with the Debtor. Mr. Dondero waited 14 months to file his Motion to Recuse.

transferred to this Court that: (a) was pending before another judge for a year and a half, (b) where there were over 2,300 docket entries, including numerous and substantial orders that have continuing impacts on the litigants, and (c) where more than a dozen substantial motions were pending and were scheduled to be heard within six months? The answer is obvious. But for a Debtor who is attempting to monetize its assets and make distributions to creditors, the consequences would be even more devastating.

**2. The Debtor's Alleged "Inaction" Regarding the Motion to Recuse Has No Bearing on Its Interests in the Appeal**

11. Appellants attempt to establish that the Debtor has no stake in the outcome of the Appeal because the Debtor "made no attempt to oppose the Motion to Recuse or to represent [the] Debtor's interest in the Bankruptcy Court" when the Bankruptcy Court purportedly "indicated the likely reality" that it would reject the Motion to Recuse. (Opposition ¶ 24). Appellants misrepresents the facts, falsely suggesting that the Debtor made a voluntary and unilateral decision to avoid becoming involved in the Recusal Motion. The facts are simple and uncontroverted:

- On March 18, 2021, Appellants filed the Recusal Motion;
- During a hearing on March 19, 2021, the Court informed the Appellants, the Debtor, and all other parties in interest participating in that hearing that she would advise them whether a hearing or "responsive pleadings" were necessary in order "to give other parties in interest the opportunity to weigh in on that,"[7]
- The Bankruptcy Court never scheduled a hearing or requested "responsive pleadings" from any party in interest; and

[7] *See* **Morris Reply Dec. Ex. 2 at 78:3-12**.

- On March 23, 2021, long before the time had run to file opposition papers, the Court issued the Recusal Order.[8]

12. Based on these undisputed facts, the Debtor was not asked to participate in a hearing or file a responsive pleading, and its right to do so had not expired when the Court issued the Recusal Order. Thus, there is no factual basis for Appellants' contention that the Debtor made a deliberate decision not to engage and somehow waived its right to object.

13. Appellants' arguments that the Debtor "never filed a notice of appeal" and "did not file or intervene to designate the record" also miss the point. Indeed, the Debtor did not file a notice of appeal because the Debtor is not the appellant, nor does it seek to, or intend to, appeal the Recusal Order. Moreover, the Debtor seeks to supplement the record as part of this Motion.

14. In light of the foregoing, Appellants' characterization of the "Debtor's intentional inaction" is simply inaccurate.[9]

**3. <u>Absent the Debtor's Intervention, the Appeal Will Be Unopposed</u>**

15. Appellants also challenge the Debtor's contention that absent its intervention, the Appeal will go unopposed. (Opposition ¶ 24). In so arguing, Appellants again reiterate the general legal issues on Appeal. (*See id.*). For the reasons discussed *supra*, the legal standard for recusal, and the Appellants "burden" on the merits of the Appeal, are irrelevant to the issue of whether the Appeal will go unopposed, or to the Debtor's right to intervene in the

[8] The Debtor had 21 days from the date the Recusal Motion was filed to file a responsive and brief. *See Local Bankruptcy Rule of the United States Bankruptcy Court for the Northern District of Texas* (the "<u>Local Rules</u>") 7007-1.

[9] For these same reasons, Appellants' contention that the Debtor "used" the Motion as a "back-door attempt to make arguments that Debtor knowingly and intentionally refused to make in response to the Motion to Recuse" is without merit. (Opposition ¶ 18).

Appeal.[10] Appellants simply fail to offer any legal or factual basis to support their argument that, absent the Debtor's intervention, the Appeal will, in fact, go unopposed. As discussed in its Motion, if the Debtor does not intervene in the Appeal, no party currently named in the Appeal is likely to advocate on behalf of the Debtor's interests.

16. Appellants otherwise fail to offer any legal or factual basis in support of their contention that the Debtor does not have a substantial interest in the outcome of the Appeal.

**B. <u>Participating as Amicus Curiae Would Be Inadequate to Protect the Debtor's Interests</u>**

17. Finally, Appellants argue that the Debtor's participation in the Appeal as an *amicus curiae* would sufficiently protect the Debtor's interests. However, as noted in its Motion, in order to meaningfully oppose the Appeal and vigorously advocate on behalf of its interests, the Debtor intends to raise issues not currently raised by Appellants and supplement and defend the record accordingly. Because the Debtor can only do so as a named party to the Appeal, participating as an *amicus curiae* is inadequate to protect the Debtor's interests.

18. The cases cited by Appellants in support of their claim that the Debtor's participation as an *amicus curiae* would be sufficient are misguided. For instance, in *McHenry v. Comm'r*, 677 F.3d 214 (4th Cir. 2012), the Court affirmed the denial of a party's motion to intervene in a proceeding under Fed. R. Civ. P. 24(a) because of the "limited" nature of the issue at hand, and the "broader and much different nature of the interest that [proposed intervener] sought to vindicate." *Id.* at 226. In finding that the proposed intervener had not demonstrated that the outcome of the appeal would "impede" their ability to "protect their interests," the Court noted

[10] Separately, Appellants' argument that if the Motion is granted, the Debtor will be "stepping into the shoes" of the Bankruptcy Court is also misguided. (*Id.* ¶ 27). What should be obvious and what would usually go without saying must be emphasized here: a bankruptcy court judge and a debtor have completely different roles, interests, rights, and obligations.

that "any view it has on the" narrow issues on appeal "can easily be expressed in an amicus brief" or "in some other forum more suited to such policy arguments." *Id.* at 227.

19. Here, by contrast, and as discussed *supra*, the Debtor's interests will be significantly implicated by the outcome of the Appeal. The core issue on Appeal, namely, whether Judge Jernigan should be recused, is the very issue which the Debtor seeks to oppose to protect those interests. In *Ruthardt v. United States*, 303 F.3d 375 (1st Cir. 2002), the Court affirmed a denial of certain parties' motion to intervene where, although they had "an interest in the matter in controversy and a practical threat to that interest," they also had a representative adequately representing those interests. *Id.* at 386. Notwithstanding this finding, however, the Court exercised its discretion to allow those same parties to intervene in the case "[g]iven the magnitude of the stakes." *Id.* Here, participating as an *amicus curiae* would be inadequate to protect the Debtor's interests because there is no party to the Appeal currently representing those interests. Given the magnitude of the Debtor's stake in the outcome of the Appeal, intervention is warranted.[11]

20. Based on the foregoing, the Debtor respectfully requests that this Court grant leave for the Debtor to intervene in the instant Appeal, that it be given a reasonable opportunity to supplement the record, and that it otherwise be treated as an "Appellee" for all purposes, as if originally named as such in the Notice of Appeal.

[11] The remaining cases cited by Appellants are similarly inapplicable. In *Mumford Cove Ass'n v. Town of Groton*, 786 F.2d 530, 535 (2d Cir.1986), the Court affirmed a denial of intervention where, among other things, the proposed interveners "no longer have a 'protective interest' requiring intervention because their time to challenge" the issue at hand "has long since expired." *Id.* at 534. The Court in *Bush v. Viterna*, 740 F.2d 350 (5th Cir. 1984), affirmed a denial of intervention where the proposed interveners' rights were adequately represented by an existing defendant, and "the same positions and defenses will be presented in this suit, whether or not intervention is allowed." *Id.* at 357. Finally, in *Brewer v. Republic Steel Corp.*, 513 F.2d 1222 (6th Cir. 1975), the Court found that *amicus curiae* was sufficient where the proposed intervener did not have the "direct, substantial interest" in the litigation and where the party claimed to have "general expertise" in the subject of the litigation and hoped to avoid "duplication of pretrial preparation" or inconsistent results with "parallel state proceedings." *Id.* at 1225.

## CONCLUSION

**WHEREFORE**, the Debtor respectfully requests that the Court (i) grant the Motion; (ii) give the Debtor a reasonable opportunity to supplement the record; (iii) otherwise treat the Debtor as an "Appellee" for all purposes, as if originally named as such in the Notice of Appeal; and (iv) grant the Debtor such other and further relief as it deems just and proper.

Dated: May 21, 2021

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
  ikharasch@pszjlaw.com
  jmorris@pszjlaw.com
  gdemo@pszjlaw.com
  hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 21, 2021, a true and correct copy of the foregoing Reply was served electronically upon all parties registered to receive electronic notice in this case via the Court's CM/ECF system.

*/s/ Zachery Z. Annable*
Zachery Z. Annable