CASE NO. 3:21-CV-00879-K

**IN THE UNITED STATES DISTICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

HIGHLAND CAPITAL MANAGEMENT, L.P.,

(Debtor)

JAMES DONDERO, HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.,
NEXPOINT ADVISORS, L.P.,  THE DUGABOY INVESTMENT TRUST, THE GET GOOD
TRUST, AND NEXPOINT REAL ESTATE PARTNERS, LLC,

(Appellants)

v.

HON. STACEY G.C. JERNIGAN AND HIGHLAND CAPITAL MANAGEMENT, L.P.

(Appellees)

On appeal from the United States Bankruptcy Court for the
Northern District of Texas, Dallas Division

**<u>APPELLANTS' BRIEF</u>**

Respectfully submitted by:
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
CRAWFORD, WISHNEW & LANG PLLC
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500
***Counsel for Appellants***

1934054210629000000000000003

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 8012 of the FEDERAL RULES OF BANKRUPTCY PROCEDURE, and without waiver of any defenses and/or objections that they may have, Appellants James Dondero ("Mr. Dondero"), Highland Capital Management Fund Advisors, L.P., NexPoint Advisors, L.P.,[1] The Dugaboy Investment Trust, The Get Good Trust (collectively, The Dugaboy Investment Trust and The Get Good Trust are, at times, the "Trusts"), and NexPoint Real Estate Partners, LLC ("Appellants") state as follows:

(a) No publicly-held company owns 10% or more of Highland Capital Management Fund Advisors, L.P., nor does it have a parent corporation;

(b) No publicly-held company owns 10% or more of NexPoint Advisors, L.P., nor does it have a parent corporation;

(c) No publicly-held company owns 10% or more of The Dugaboy Investment Trust, nor does it have a parent corporation;

(d) No publicly-held company owns 10% or more of The Get Good Trust, nor does it have a parent corporation; and

(e) No publicly-held company owns 10% or more of the NexPoint Real Estate Partners, LLC, nor does it have a parent corporation.

---

[1] At times herein, Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P. are collectively referred to as the "Advisors."

APP.3733

# TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT** ........................................................................ ii

**TABLE OF CONTENTS** ............................................................................................... iii

**TABLE OF AUTHORITIES** .......................................................................................... iv

**JURISDICTIONAL STATEMENT** ................................................................................ 1

**STATEMENT REGARDING ORAL ARGUMENT** .......................................................... 1

**ISSUES PRESENTED** ................................................................................................... 1

**I.     STATEMENT OF FACTS AND PROCEEDINGS BELOW** ........................................ 2

   **A.   Debtor has acknowledged the Bankruptcy Court's predisposition.** .............................. 2

   **B.   The Bankruptcy Court has acknowledged it holds permanent negative views of Mr. Dondero.** ............................................................................................................. 3

   **C.   Various events in the Highland Bankruptcy demonstrate that the Bankruptcy Court holds a perceptible, interfering bias against Mr. Dondero.** ...................................... 4

   **D.   Recusal is necessary for the pending and future Adversary Proceedings.** ................. 14

**II.    SUMMARY OF THE ARGUMENT** ............................................................................ 14

**III.   ARGUMENTS & AUTHORITY** ................................................................................. 17

   **A.   Appellants' Motion was timely.** ............................................................................ 17

   **B.   The Bankruptcy erred in denying the Motion on the merits.** ...................................... 19

   **C.   Recusal was and remains proper** .......................................................................... 26

**IV.   CONCLUSION AND PRAYER** ................................................................................ 26

**CERTIFICATE OF COMPLIANCE** .............................................................................. 27

**CERTIFICATE OF SERVICE** ..................................................................................... 27

APP.3734

# TABLE OF AUTHORITIES

**Cases**

*Andrade v. Chojnacki*,
  338 F.3d 448, 454 (5th Cir. 2003) ........................................ 21

*Bell v. Johnson*,
  404 F.3d 997, 1004 (6th Cir. 2005) ...................................... 24

*Bloom v. Illinois*,
  391 U.S. 194, 205 (1968) .................................................... 22

*Burke v. Regalado*,
  935 F.3d 960, 1054 (10th Cir. 2019) (citations omitted) .................. 16, 20

*Caperton v. A.T. Massey Coal Co.*,
  556 U.S. 868, 877 (2009) .................................................... 22

*Davies v. C.I.R.*,
  68 F.3d 1129, 1130-31 (9th Cir. 1995) .............................. 17, 18

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
  967 F.2d 1280, 1295 (9th Cir.1992) ...................................... 18

*Ferrera-Parra v. United Airlines, Inc.*,
  No. 4:19-CV-1053, 2021 WL 1795702, at *3 (S.D. Tex. Mar. 30, 2021) .......... 16, 20

*Haskett v. Orange Energy Corp.*,
  161 F. Supp. 3d 471, 473 (S.D. Tex. 2015) .......................... 16, 20

*In re Chevron U.S.A., Inc.*,
  121 F.3d 163, 165 (5th Cir. 1997) ...................................... 22

*In re Drexel Burnham Lambert Inc.*,
  861 F.2d 1307, 1313 (2d Cir. 1988) .................................... 21

*In re Kansas Pub. Employees Retirement Sys.*,
  85 F.3d 1353, 1358 (8th Cir.1996) .................................... 16, 20

*Johnson v. Mississippi*,
  403 U.S. 212, 216 (1971) (per curiam) ................................ 22

*Liljeberg v. Health Servs. Acquisition Corp.*,
  486 U.S. 847, 860 n. 8 (1988) ...................................... 16, 20, 21

APP.3735

*Liteky v. United States*,
   510 U.S. 540, 551 (1994) ............................................................ 24, 26

*Marshall v. Jerrico, Inc.*,
   446 U.S. 238, 242 (1980) ............................................................ 21, 22

*Miller v. Sam Houston State University*,
   986 F.3d 880, 893 (5th Cir. 2021) ............................................. 16, 24

*Republic of Panama v. Am. Tobacco Co.*,
   217 F.3d 343, 346 (5th Cir. 2000) ................................................... 21

*United States v. Bremers*,
   195 F.3d 221, 226 (5th Cir. 1999) ................................................... 21

*United States v. Jordan*,
   49 F.3d 152, 155 (5th Cir. 1995) ..................................................... 24

*United States v. Sanford*,
   157 F.3d 987, 989 (5th Cir. 1998) ................................................... 17

*Wilkerson v. Univ. of N. Texas By & Through Bd. of Regents*,
   878 F.3d 147, 161 (5th Cir. 2017) ..................................................... 8

**STATUTES**

11 U.S.C. §§ 105 ........................................................................... 6

11 U.S.C. §§ 363 ........................................................................... 6

11 U.S.C. §§ 1107 ......................................................................... 6

28 U.S.C. § 144 ........................................................................... 17

28 U.S.C. § 455 ............................................................................. 2

28 U.S.C. §§ 158 ........................................................................... 1

28 U.S.C. §§ 1334 ......................................................................... 1

**OTHER AUTHORITIES**

H. Rep. No. 1453, 93d Cong., 2d Sess. 1 (1974), reprinted in 1974 U.S. Code Cong.
   & Admin. News 6351, 6355 ..................................................... 21, 22

Investment Advisers Act of 1940 ................................................... 5

APP.3736

Investment Company Act of 1940 ............................................................................ 5

Section 105 of the Bankruptcy Code ....................................................................... 25

section 363(c)(1) or 1108 of the Bankruptcy Code ................................................. 6

**RULES**

FED. R. BANKR. P. 2015.3(a) ................................................................................. 25

FED. R. BANKR. P. 5004 .......................................................................................... 2

FED. R. BANKR. P. 8001 .......................................................................................... 1

APP.3737

## JURISDICTIONAL STATEMENT

Appellants file this Appellants' Brief regarding their April 1, 2021 appeal[2] from a final order entered by Judge Jernigan in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (hereinafter referred to as the "Bankruptcy Court") on March 23, 2021.[3]

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 158 & 1334 and Rules 8001 et. seq. of the FEDERAL RULES OF BANKRUPTCY PROCEDURE.

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument, which they believe will aid the Court in deciding this matter.

## ISSUES PRESENTED

1.    Whether the Bankruptcy Court abused its discretion in denying Appellants' Motion to Recuse Pursuant to 28 U.S.C. § 455 as untimely.[4]

2.    Whether the Bankruptcy Court abused its discretion in denying Appellants' Motion to Recuse Pursuant to 28 U.S.C. § 455 on the merits.

---

[2] R. 1, Appellants' Notice of Appeal (amended on April 6, 2021, R. 16).
[3] R. 31, the Order.
[4] R. 2338, the Motion to Recuse; R. 2342, the Brief in Support; and R. 2379, the Appendix in Support.

APP.3738

Appellants[5] file this Brief in Support of their Appeal of the Bankruptcy Court's Order (the "Order") Denying Appellants' Motion to Recuse Pursuant to 28 U.S.C. § 455 (the "Motion")[6] and would, in support thereof, respectfully show the Court as follows:

## I.    STATEMENT OF FACTS AND PROCEEDINGS BELOW

### A.  Debtor has acknowledged the Bankruptcy Court's predisposition.

1.    On October 16, 2019, Debtor Highland Capital Management, L.P. ("Highland" or "Debtor") filed bankruptcy in Delaware (the "Highland Bankruptcy") to get a "fresh start."[7] Highland's creditors, including Acis (a debtor in a previous bankruptcy case before the Bankruptcy Court that involved Mr. Dondero (the "Acis Bankruptcy")), moved to transfer this case to the Northern District of Texas seeking to have it assigned to the Bankruptcy Court. In the hearing, Debtor's current counsel, Jeff Pomerantz, expressly acknowledged that the "fresh start" was needed because the Bankruptcy Court had pre-existing, negative views of Debtor's management, including Mr. Dondero:

> … the committee and Acis are really being disingenuous, and they have not told you the real reason that they want the case before Judge Jernigan.[8] … ***It is because she formed negative views regarding certain members of the debtor's management that the committee and Acis hope will carry over to this case***.[9]

2.    Debtor further acknowledged that the Bankruptcy Court's predisposition against Mr. Dondero would render it incapable of being impartial and, thus, improperly impact the Highland Bankruptcy. In fact, Mr. Pomerantz specifically referred to the Bankruptcy Court's opinions of Mr. Dondero as "***baggage***."[10] Ultimately, the Delaware bankruptcy court transferred the case,[11]

---

[5] For efficiency, Appellants are jointly represented by a single counsel for purposes of the Motion and this appeal.
[6] 28 U.S.C. § 455 has been made applicable to bankruptcy judges under FED. R. BANKR. P. 5004.
[7] R. 2382, the December 3, 2019 Transcript - Motion to Transfer, at 78:21-23 (R. 2459).
[8] *Id*. at 77:18-22 (R. 2458).
[9] *Id.* at 78:3-8 (emphasis added) (R. 2459).
[10] *Id.* at 79:14-20 (emphasis added) (R. 2460).
[11] *Id.* at 90:15-24 (emphasis added) (R. 2471).

which was assigned to Judge Jernigan.

**B. The Bankruptcy Court has acknowledged it holds permanent negative views of Mr. Dondero.**

3.     Although the Order attempts to downplay the impact of the Acis Bankruptcy, the record contradicts that insinuation. For example, during a January 9, 2020 hearing on a compromise regarding the management of Debtor (the "Compromise"), the Bankruptcy Court acknowledged that it: (a) possessed opinions regarding Mr. Dondero; (b) was unable to extract those opinions from its brain; and (c) was relying on those opinions *as a basis* for requiring certain language about Mr. Dondero's involvement with Debtor be included in the Compromise order.[12]

4.     Notably, at this time, the Highland Bankruptcy had only been in the Bankruptcy Court for approximately a month. There was nothing in the Highland Bankruptcy record to justify the Bankruptcy Court's specific rulings and comments related to Mr. Dondero. Later, the Bankruptcy Court reiterated that it was relying on its knowledge from the Acis Bankruptcy to support its requirements regarding the contempt language directed at Mr. Dondero in the Compromise order:

> And *I'm sure most of you can read my mind why*, but I want it crystal clear that if [Mr. Dondero] violates these terms, he's violated a federal court order, and contempt will be one of the tools available to the Court.[13]

Importantly, the Bankruptcy Court made these references to the Acis Bankruptcy, despite refusing to admit an order from the Acis Bankruptcy as evidence during the same hearing because the order was prejudicial.[14] Thus, the information the Bankruptcy Court relied upon was not in evidence.

---

[12] R. 2519, the January 9, 2020 Transcript at 14:4-11 (R. 2532) and at 78:23-79:16 (R. 2596-2597) (emphasis added). Mr. Dondero, however, remained a portfolio manager and an unpaid employee of Debtor. *Id*.
[13] *Id*. at 80:3-6 (R. 2598).
[14] *Id.* at 57:1-59:17 (R. 2575-2577).

APP.3740

**C. Various events in the Highland Bankruptcy demonstrate that the Bankruptcy Court holds a perceptible, interfering bias against Mr. Dondero.**

### 1. The February 19, 2020 Application to Employ Hearing

5.        One of the ways the Bankruptcy Court's predisposition against Mr. Dondero manifested itself was through its rulings, including, for example, rulings dismissing the uncontroverted testimony of independent witnesses who testified in support of outcomes that could possibly benefit Mr. Dondero as testimony that was engineered by Mr. Dondero.

6.        For example, on February 19, 2020, the Court held a hearing on Debtor's application to retain a law firm to, among other things, appeal an order against Neutra Ltd. ("Neutra") (a company owned by Mr. Dondero). A successful appeal would: (a) defeat a $75 million claim against Debtor; and (b) result in Neutra owning Acis and Debtor being reinstated as the advisor to Neutra, which would generate fees and economic benefit for Debtor.[15] Debtor's independent board, which included former Bankruptcy Judge Russell Nelms, determined that engaging the firm to represent Neutra was in the Debtor's best interest.[16] Nevertheless, the Court concluded, without evidence, that Debtor's fully independent board was being unduly influenced by Mr. Dondero:

> … ***But I'm concerned that Dondero*** or certain in-house counsel has -- you know, they're smart, they're persuasive -- that -- what are the words I want to look for -- they have ***exercised their powers of persuasion*** or whatever to make the Board and the professionals think that there is some valid prospect of benefit to Highland with these appeals, ***when it's really all about Neutra, HCLOF, and Mr. Dondero. That's what I believe***.[17]

At the same hearing, the Bankruptcy Court indicated that it believed Mr. Dondero lacked credibility even though, at that point in time, Mr. Dondero had not yet testified.[18]

---

[15] *See* R. 2610, the February 19, 2020 Transcript at 38:22-39:17 (R. 2647-2648) (emphasis added).
[16] *Id.* at 62:6-17 (R. 2671) (emphasis added).
[17] *Id.* at 177:7-178:3 (R. 2786-2787).
[18] *Id.* at 174:22-175:1 (R. 2783-2784).

### 2. The December 2020 Restriction Motion

7.     A second instance involves a motion for injunctive relief that was filed by entities (not including Mr. Dondero) involving certain collateralized loan obligation investment vehicles ("CLOs") that Debtor manages pursuant to Portfolio Management Agreements (the "PMAs"). Generally, the PMAs impose a duty on Debtor, as portfolio manager, to maximize the value of the CLOs' assets for the benefit of the CLOs' noteholders and preference shareholders. The Retail Funds, which are governed by independent boards and owned primarily by third-party investors, collectively invested approximately $368 million in the CLOs.[19] Importantly, Debtor does not own an interest in the CLOs, and, thus, the CLOs are ***not assets of Debtor's estate***.

8.     In approximately October 2020, Debtor decided to assume the PMAs (*i.e.*, continue managing the assets), release all Debtor's employees, and simultaneously liquidate the CLOs' assets over a two-year period. The Retail Funds and the Advisors (on behalf of the Retail Funds and pursuant to their obligations under their respective advisory agreements)[20] believed this decision would: (a) fail to maximize the value of the investments for the investors to whom the Advisors and the Retail Funds owed a fiduciary duty; and (b) was incompatible with the CLOs' needs (which required an investment staff). Mr. Dondero, who was still a portfolio manager and unpaid employee of Debtor at that time, also disagreed with Debtor's decision to liquidate.

---

[19] Highland Income Fund ("HFRO"), NexPoint Strategic Opportunities Fund ("NHF"), and NexPoint Capital, Inc., publicly traded funds advised by the Advisors (defined below) are, at times referred to herein as the "Retail Funds."

[20] The "Advisors" are Highland Capital Management Fund Advisors, L.P. and NexPoint Advisors, L.P. Each Advisor is registered with the U.S. Securities and Exchange Commission ("SEC") as an investment advisor under the Investment Advisers Act of 1940, as amended. Each of the Advisors advises several funds, including the Retail Funds, which are primarily owned by third-party, "mom and pop" investors. Each of the Retail Funds is a registered investment company or business development company under the Investment Company Act of 1940 (as amended, the "1940 Act"). Each Retail Fund is overseen by a majority independent board of trustees subject to 1940 Act requirements. Those respective boards reviewed and approved, among other things, major contracts including the advisory agreement with the applicable Advisor for the respective Retail Fund. The Retail Funds do not have employees and rely on their respective Advisors, acting pursuant to an advisory agreement, to provide the services necessary for their operations.

9.      The Advisors and the Retail Funds raised these same issues with Mr. Seery (Debtor's interim CEO) and requested that Debtor not liquidate the CLOs until the confirmation of Debtor's Plan of Reorganization, as further modified (the "Plan")  (which was, at that time, scheduled for early January 2021). Debtor, as portfolio manager, declined and began attempting to leverage the Bankruptcy Court's increasingly perceptible bias against Mr. Dondero for Debtor's benefit. This manifested in a variety of ways.[21]

10.     On December 8, 2020, because the Plan violated its statutory and contractual obligation to maximize the value of the CLO assets, pursuant to 11 U.S.C. §§105, 363, and 1107, the Advisors and the Retail Funds (*i.e.*, _not_ Mr. Dondero) moved to maintain the status quo and prohibit Debtor from liquidating the CLOs for approximately 30 days  (the "Restriction Motion").[22]

11.     On December 16, 2020, despite the express statutory basis, the Bankruptcy Court denied the Restriction Motion,[23] stating that it was "dumbfounded" by the motion and declaring the motion as having no statutory or contractual basis and being "almost Rule 11 frivolous."[24] Moreover, while the only evidence demonstrated that the Advisors' and Retail Funds' senior management and independent counsel decided to bring the Restriction Motion, the Bankruptcy Court inscrutably blamed Mr. Dondero for the Restriction Motion.[25] The Bankruptcy Court disregarded the Retail Funds' (publicly-traded, highly-regulated entities) and the Advisors' ability to independently decide to pursue action they deem in their best interest.

---

[21] *See* R. 3892, the March 4, 2020 Transcript at 34:6-35:18 (R. 3925-3926); 50:14-52:15 (R. 3941-3942); 58:17-23 (R. 3949).
[22] R. 2798-2823, the Restriction Motion.
[23] *See* R. 2824, the December 16, 2020 Transcript at 63:5-13 (R. 2886).
[24] *Id.* at 64:1-7 (R. 2887). The statutory basis for the relief requested was section 363(c)(1) or 1108 of the Bankruptcy Code, which generally provides that a debtor-in-possession may engage in its ordinary course of business, "unless the court orders otherwise." That was all that was being asked.
[25] *Id.* at 63:14-25 (R. 2886).

6

### 3.     Debtor's Motion for Injunctive Relief

12.     The Bankruptcy Court, however, took a different view of motions filed by Debtor. In December of 2020, K&L Gates, as counsel for the Advisors and the Retail Funds, wrote Debtor to: (a) reiterate the Advisors' and the Retail Funds' objection to Debtor liquidating the CLOs; and (b) notify Debtor that the Retail Funds, ***subject to applicable bankruptcy law*** and the underlying agreements, intended to initiate the procedure to remove Debtor as fund manager of the CLOs (the "K&L Gates Letters").[26]

13.     On January 6, 2021, Debtor filed an adversary proceeding seeking to enjoin[27] the Advisors and the Retail Funds from, among other things, exercising any contractual rights that they may have had to remove Debtor as portfolio manager (a contract that Debtor assumed under its plan).

14.     On January 26, 2021, the Court commenced the preliminary injunction hearing on the matter (the "Injunction Hearing").[28] The issue at that hearing was whether the Advisors and the Retail Funds tortiously interfered with the PMAs by: (a) hindering Debtor's ability to sell certain CLO assets; (b) threatening to initiate the process for removing Debtor as the portfolio manager of the CLOs; and (c) otherwise attempting to influence and interfere with Debtor's decisions concerning the purchase or sale of any assets on behalf of the CLOs.[29]

15.     During the Injunction Hearing, it became clear that there was no basis for the claims or an injunction. In fact, Mr. Seery/Debtor admitted that:

> (a) none of the alleged actions caused Debtor to breach any contract with a third party;[30]
>
> (b) the Advisors and the Retail Funds had no contractual obligation to settle the trade (the basis of the alleged hinderance with Debtor's ability to sell CLO

---

[26] R. 4158-4172, the K&L Gates Letters.
[27] R. 2890-2908, *Highland Capital Mgmt. v. Highland Capital Management Fund Advisors, L.P., et al.* Adversary No. 21-03000-sgj.
[28] R. 2909, the January 26, 2021 Transcript.
[29] *See* R. 8069, Dkt. 1 in Adversary Proceeding No. 21-03000-sgj at ¶ 58 (R. 8082).
[30] *See* R. 2909, the January 26, 2021 Transcript, at 180:12-17 (R. 3088).

assets);[31]

(c) every trade that he attempted to initiate in December (the period in question) closed;[32]

(d) the Debtor's business activities were unaffected by the K&L Gates Letters;[33] and

(e) the K&L Gates Letters merely stated that the Advisors and the Retail Funds were "contemplating taking steps to terminate the CLO Agreements"[34] and no action was taken to remove Debtor as the portfolio manager.

16.     Debtor never disputed that the Advisors and the Retail Funds were third-party beneficiaries under the PMAs with a conditional right to terminate the Portfolio Manager.[35] In addition, one cannot generally tortiously interfere by exercising one's own contractual rights and the law does not recognize any claim for "contemplating" action that was never taken.[36] Consequently, Debtor's motion was objectively baseless.

17.     Nevertheless, at the hearing, rather than comment on the groundlessness of Debtor's motion, the Bankruptcy Court **focused on Mr. Dondero**, warning him that he was prohibited from terminating any agreement with Debtor[37] and stated that it was "leaning" toward finding **<u>Mr. Dondero</u>** in contempt and shifting the "whole bundle of attorney's fees" to Mr. Dondero as a result

---

[31] Notably, Debtor itself had numerous authorized traders, whose job was to settle Debtor's trades.

[32] *See* R. 2909, the January 26, 2021 Transcript, at 173:16-19 (R. 3081); 174:1-3 (R. 3082); 174:8-175:5 (R. 3082-3083).

[33] *Id.* at 178:14-24 (R. 3086).

[34] *Id.* at 103:21-23 (R. 3011).

[35] *See* R. 4747-4782 and 4783-4821, examples of Servicing Agreements at section 14 (R. 4762-4763); *see also* R. 4452, the February 2, 2021 Transcript of Hearing at 54:6-56:12 (R. 4505-4507); *see also* R. 5079-5080, a chart of holdings of preference shares in CLOs (showing Movants are preferred shareholders); *see also* R. 4822, February 3, 2021 Transcript of Hearing at 53:1-22 (R. 4874).

[36] *See, e.g., Wilkerson v. Univ. of N. Texas By & Through Bd. of Regents*, 878 F.3d 147, 161 (5th Cir. 2017) (To win, Wilkerson would have to prove that his employer interfered with his employment contract—a legal impossibility, as "one cannot tortiously interfere with one's own contract.").

[37] R. 3166, the January 8, 2021 Transcript, at 119:6-122:25 (R. 3284-3287). Notably, the Bankruptcy Court made the implied finding that Mr. Dondero caused the Retail Funds to send the K&L Gates Letters even though, in a hearing just a week earlier, it **sustained** Debtor's objections to Mr. Dondero testifying about the K&L Gates Letters because**: (a) Mr. Dondero lacked personal knowledge;** (b) any answer would be hearsay; and (c) the K&L Gates Letters (executed by K&L Gates, not Mr. Dondero) speak for themselves. Otherwise, Mr. Dondero should have been given the opportunity to answer the question, which the Court denied.

of this unwarranted motion filed by **_Debtor_**.[38]

### 4.     The February 2021 Confirmation Hearing

18.     On February 2 and 3, 2021, the Court held a hearing on the Plan. The Advisors and the Retail Funds objected to provisions in the Plan that eliminated or altered their legal and contractual claims against Debtor under the PMAs (the "Objections"). Additionally, Appellants objected to the Plan's release and exculpation provisions for the management of Debtor and the Plan's "gatekeeper" provision that prohibited lawsuits against any exculpated party without prior permission from the Bankruptcy Court.

19.     On February 8, 2021, the Court summarily rejected **_all_** of the Objections,[39] questioned the good faith basis for the Objections, and declared that it "**_ha[d] good reason to believe_** that [those] parties [were] not objecting to protect economic interests they have in the Debtor, but to be disruptors."[40] The Bankruptcy Court, again without basis, concluded that the other entities objecting to the Plan were "controlled by" Mr. Dondero:[41]

> …the Court has allowed all of these objectors to fully present arguments and evidence in opposition to confirmation, even though their economic interests in the Debtor appear to be extremely remote and the Court questions their good faith. Specifically on that latter point, **_the Court considers them all to be marching pursuant to the orders of Mr. Dondero_**.[42]

20.     In doing so, the Bankruptcy Court disregarded witness testimony on the sole ground that the witness had, in coordination with Debtor, recently transitioned from Debtor to one of the Advisors.

> …While the evidence presented was that [the Advisors and Retail Funds] have independent board members that run these companies, the Court was not convinced

---

[38] R. 2909, the January 26, 2021 Transcript, at 251:24-252:5 (R. 3159-3160).
[39] *See* R. 3371, February 8, 2021 Transcript at 15:15-16:5 (R. 3385-3386).
[40] *Id.* at 20:17-20 (R. 3390) (emphasis added).
[41] *Id.* at 20:13-15 (R. 3390).
[42] *Id.* at 22:12-21 (R. 3392).

APP.3746

of their independence from Mr. Dondero.[43]

The witness who testified on these Objectors' behalves at confirmation, Mr. Jason Post, their chief compliance officer, resigned from Highland after more than twelve years in October 2020, at the same time that Mr. Dondero resigned or was terminated by Highland. And a prior witness recently for these entities whose testimony was made part of the record at the confirmation hearing essentially testified that Mr. Dondero controlled these entities.[44]

21.      The Objections were made in good faith.[45] In fact, the U.S. Trustee, whose "good faith basis" was not questioned by the Bankruptcy Court, asserted some of the same objections.[46] Not even the Debtor alleged that the objections were filed bad faith.

22.      Going further, at that hearing, even though no party had requested the Bankruptcy Court "to declare Mr. Dondero and his affiliated entities as vexatious litigants *per se*,"[47] the Bankruptcy Court summarily decreed that Mr. Dondero and any entity the Bankruptcy Court deemed to be controlled by Mr. Dondero (collectively, the "Affected Entities")[48] were "vexatious litigants"[49] and held that the "gatekeeper" provision (which they objected to) "appears necessary and reasonable in light of the **litigiousness of Mr. Dondero** and his **controlled entities**."[50] However, the "litigiousness" the Bankruptcy Court listed to support this ruling consisted of the following:

(a) efforts taken by Mr. Dondero and other entities to defend against injunctions filed against them;

(b) legitimate objections or responses to certain provisions of the Plan and other motions, made to preserve rights on appeal; and/or

---

[43] *Id.* at 21:22-24 (R.3391-3392).
[44] Notably, Jason Post resigned from Debtor and was hired by NPA because NPA and Debtor had to separate compliance programs, which were previously jointly administered.  This decision was discussed with and approved by Thomas Surgent and Mr. Seery.
[45] R. 3371, the February 8, 2021 Transcript, at 23:8-11(R. 3393).
[46] *Id.*
[47] *Id.* at 46:20-22 (R. 3416).
[48] The definition of the "Affected Entities" includes, without limitation, the Advisors and the Retail Funds.
[49] R. 3371, the February 8, 2021 Transcript, at 46:20-25 (R. 3416).
[50] *Id.*at 45-47 (R. 3415-3417) (emphasis added).

APP.3747

(c) lawsuits in which the pre-petition Debtor **had been sued** and was defending itself.[51]

These actions do not meet the factors necessary to deem someone a "vexatious litigant."[52] In fact, Appellants were not parties to these lawsuits, the record reflected little, if any, litigation and motion practice initiated by Appellants,[53] and notice that the issue of vexatiousness was being alleged or tried was never provided.

### 5. Other Issues Demonstrating Bias

23. The Bankruptcy Court's inability to rule impartially because of its preconceived bias against Mr. Dondero and the other Appellants has also manifested itself in other ways.

24. **First**, the Bankruptcy Court relied upon extrajudicial information from an article that referenced "Mr. Dondero or Highland affiliates" receiving PPP loans and *sua sponte* directed Debtor's counsel to investigate the loans and report back.[54] However, the PPP loans had **nothing** to do with Debtor.[55] Additionally, according to the Order, the Bankruptcy Court's pre-existing negative views of Mr. Dondero had to come from somewhere other than the Acis Bankruptcy. The

---

[51] *See* ECF 891 (Acis Action, in which Debtor filed a 65-page objection that it described as having "numerous basis" and in which USB filed an objection); ECF 895 (UBS Action, in which Debtor filed an objection to the claim and stated that it had, "meritorious defenses to most, if not all, of the UBS Claim …", [ECF 928] and in which the Redeemer Committee of the Crusader Funds also objected); ECF 895 (Daugherty Action, in which Debtor asserted that the Daugherty Claim lacked merit); and Dkt. 1384 (HarbourVest Action, in which Debtor "vigorously defen[ded]" the HarbourVest Claims on numerous grounds).

[52] R. 3371, the February 8, 2021 Transcript, at 46:6-15 (R. 3416) (acknowledging the elements necessary to find a party vexatious are: (a) the party's history of litigation; in particular, whether **he has filed** vexatious, harassing, or duplicative lawsuits; (b) whether the party had a good faith basis for **pursuing the litigation**, or perhaps intended to harass; (c) the extent of the burden on the courts and other parties resulting from the party's filings; and (d) the adequacy of alternatives) (emphasis added).

[53] *See* R. 5081-5093 the Chart regarding this bankruptcy proceeding; *see also* R. 5094-5095, the Chart regarding the injunction proceeding.

[54] *See* R. 3422, the July 8, 2020 Transcript at 42:10-24 (R. 3463) ("THE COURT: Okay. All right. Two more questions. And this one has been a bit of a tough one for me to decide whether I should broach this topic or not. You know, *I read the newspapers, the financial papers, just like everyone else, and I saw a headline that I wished almost I wouldn't have seen, and it was a headline about Dondero or Highland affiliates getting three PPP loans. And, you know, I'm only supposed to consider evidence I hear in the courtroom, right, or things I hear in the courtroom, but I've got this extrajudicial knowledge right now thanks to just keeping up on current events. I decided I needed to ask about this.* What can you tell me about this, Mr. Pomerantz? I mean, I assumed, from less-than-clear reporting, that it wasn't Highland Capital Management, LP, but I'd like to hear anything you can report about this.").

[55] *See* R. 3758, the July 14, 2020 Transcript at 53:17-59:3 (R. 3810-3816).

Bankruptcy Court now downplays and dismisses recalling (or the impact of) any specific detail from the Acis Bankruptcy relating to Mr. Dondero.[56]

25.     **Second**, the bias against Mr. Dondero has resulted in rulings against Affected Entities that are not legally supported. For example, CLO Holdco is a wholly owned subsidiary of a charitable Doner Advised Fund ("DAF") established by Mr. Dondero. During the Highland Bankruptcy, CLO Holdco, through its independent trustee, moved to have $2.5 million of its funds released from the registry of the Bankruptcy Court. The Bankruptcy Court admitted that CLO Holdco's lawyer made "perfect arguments" and that continuing to hold a non-debtor's assets in the registry of the Court is "tantamount to a prejudgment remedy."[57] Nevertheless, the Bankruptcy Court, concluded that Mr. Dondero was behind the CLO Holdco filing and, therefore, questioned the "good faith" basis of the motion.[58] Even worse, the Bankruptcy Court acknowledged that it could not continue to hold the funds unless the objecting party obtained injunctive relief, which it has never sought, yet the funds have not been released (presumably because of the Bankruptcy Court's unsubstantiated belief that Mr. Dondero might somehow benefit).[59]

26.     **Third**, in a September 2020 hearing in the Acis Bankruptcy, the Bankruptcy Court learned that the DAF and other entities sued Acis (and other non-Acis or Debtor entities) in New York concerning a post-confirmation dispute. ***Without having seen the lawsuit, the Bankruptcy Court declared it vexatious and, again, blamed Mr. Dondero***:

> It's just ridiculous, for lack of a better term, that Dondero and his entities would be doing some of the things it sounds like they're doing: Suing Moody's, for crying out loud, for not downgrading the Acis CLOs. ***If Mr. Dondero doesn't think that is so transparently vexatious litigation, yeah, I'm going out there and saying that.***

---

[56] R. 31, the Order at pp. 8-9 (R. 38-39).
[57] *See* R. 3533, the June 30, 2020 Transcript at 85:17-22 (R. 3617).
[58] *Id.* at 82:3-11 (R. 3614); 85:4-16 (R. 3617).
[59] Needless to say, the Affected Entities and every entity that the Court believes has any affiliation with Mr. Dondero are gun-shy about filing any pleading out of fear of "sanctions" or accusations of "bad faith." Conversely, the UCC, which has not alleged any basis for the Bankruptcy Court retaining the $2.5 million, has not been chastised or otherwise threatened.

APP.3749

*I haven't seen it, but, come on.*[60]

It is the Bankruptcy Court's admission that, "I haven't seen it," paired with its finding that the suit was "transparently vexatious litigation" that clearly illustrates the need for recusal.[61]

27.    **Fourth**, the Advisors had a shared services agreement with Debtor in which the Advisors shared office space with Debtor, and each paid Debtor for resources and services. In February of 2021, Debtor terminated that agreement and baselessly moved for a mandatory injunction to force the Advisors and the Retail Funds to describe their plans to replace Debtor after the termination.[62]

28.    The Advisors and the Retails Funds did not contest the termination, which posed no harm to Debtor, and had no obligation to share their transition plan with Debtor following its termination of the shared services agreement. Nevertheless, the Bankruptcy Court held a seven-hour evidentiary hearing on the issue[63] and, while it ultimately held that the mandatory injunction was moot, it went beyond the pleadings and relief requested by Debtor ***to issue findings of fact adverse to Mr. Dondero,***[64] ***which were not even requested in the motion***. Moreover, rather than chastise Debtor's motions as being "almost Rule 11 frivolous," the Bankruptcy Court accused Mr. Dondero (***a non-movant***) of driving up legal fees.[65]

29.    **Fifth**, the Bankruptcy Court has permitted Debtor a different standard and set of rules than Appellants. In addition to the discrepancies in the Bankruptcy Court's views regarding the good

---

[60] *See* R. 3480, the September 23, 2020 Transcript at 51:10-16 (R. 3530).
[61] Notably, the claims against Moody's relating to its ratings concerning the CLOs were the same issues raised in various lawsuits against Moody's following the 2008 crash. The action asserting the claims was initiated by DAF, an independent charity originally funded by Highland Capital. As a primary investor in the ACIS Collateralized Loan Obligations (CLO), the DAF lost almost 80% of its investment in ACIS CLOs as Josh Terry and sub-advisor Bridge circumvented CLO indenture covenants and materially increased the risk in the portfolio. Recently, JP Morgan highlighted ACIS 3-6 as the worst performing 1094 deals outstanding in 2019 through 2020. This action sought relief from the trustee (US Bank) for failing to properly administer the indenture and from Moody's for failing to update or suspend ratings given the breaches described above.
[62] *See* R. 4173-4193, the Mandatory Injunction.
[63] *See* R. 4199-4437, the February 23, 2021 Transcript on Hearing for Mandatory Injunction.
[64] *See* R. 4194, the order on the Mandatory Injunction at pp. 3-5 (R. 4196-4198).
[65] *See* R. 4199, the February 23, 2021 Transcript on Hearing for Mandatory Injunction 232:3-234:19 (R. 4430-4432).

faith of Debtor's filings versus Appellants', the Bankruptcy Court also permits Debtor a wider latitude to, for example, make corrections and clarifications or present evidence. In particular, while the Bankruptcy Court denied Mr. Dondero's request to re-open evidence to provide the Court with exculpatory evidence in a contempt hearing,[66] it permitted Debtor to walk back a judicial admission regarding the amount of bond Debtor requested from Mr. Dondero and even granted Debtor an entire evidentiary hearing to prove a higher bond amount.[67]

**D.  Recusal is necessary for the pending and future Adversary Proceedings.**

30.     Importantly, there are numerous adversary proceedings currently pending before the Bankruptcy Court that involve Appellants (collectively, the "Adversary Proceedings").[68] The claims in the Adversary Proceedings include various tort claims, breach of contract claims, and claw-back claims, as well as *alter ego* claims seeking to hold Appellants and others liable for any recovery ordered as to other entities.[69] Each of the Adversary Proceedings will require Appellants to take legal positions and defend themselves, which the Bankruptcy Court is predisposed to considering vexatious and sanctionable (regardless of their validity).

## II.     SUMMARY OF THE ARGUMENT

31.     In March 2021, Appellants moved to recuse the Bankruptcy Court due to its undeniable animus against Mr. Dondero and the resulting prejudicial effect that animus has on the due process

---

[66] *See* R. 7716-7993 and 7994-8068, the transcript regarding the hearing held on Motion for Contempt on March 22 and March 24, 2021.
[67] *See* R. 6599-6680, the transcript regarding the hearing held on Motion to Stay Pending Appeal on March 19, 2021.
[68] The Adversary Proceedings include: *Highland Capital Management L.P. v. NexPoint Advisors, L.P. et. al.*, Adversary Proceeding No. 21-03000; *Highland Capital Management, L.P. v. Nexpoint Advisors, L.P.*, Adversary No. 21-03005,; *Highland Capital Management, L.P. v. Highland Capital Management Fund Advisors, L.P.*; Adversary No. 21-03004; *Highland Capital Management, L.P. v. Highland Capital Management Services, Inc.*; Adversary No. 21-03006, in the United States Bankruptcy Court for the Northern District of Texas; *Highland Capital Management, L.P. v. HCRE Partners, LLC (N/K/A Nexpoint Real Estate Partners, LLC*, Adversary No. 21-03007; *Highland Capital Management, L.P. v. HCRE Partners, LLC (N/K/A Nexpoint Real Estate Partners, LLC*, Adversary No. 21-03007; *Highland Capital Management, L.P. v. Highland Capital Management Fund Advisors, L.P., et al.*; Adversary No. 21-03010; *Highland Capital Management, L.P. v. James Dondero*; Adversary No. 21-03003;  and *Official Committee of Unsecured Creditors v. CLO HOLDCO, LTD, et al.*; Adversary No. 20-03195.
[69] *Id.*

APP.3751

rights of Mr. Dondero, the Trusts, and the Affected Entities.

32.     The Bankruptcy Court entered the Highland Bankruptcy with negative opinions of Mr. Dondero and subsequently the other Appellants by association. Over the course of the Highland Bankruptcy, the Bankruptcy Court's predisposition against Mr. Dondero manifested itself in actions that impaired Appellants' legal rights; favored Appellants' opponents; and created, at a minimum, the clear perception that the Bankruptcy Court was unwilling to act impartially where Mr. Dondero and the Affected Entities were concerned. Specifically, among other things, the record reflects that the Bankruptcy Court has:

> (a)     repeatedly made negative statements about Mr. Dondero and questioned Mr. Dondero's credibility before he ever testified;
>
> (b)     summarily disregarded the testimony of any witness favorable to Mr. Dondero (or any of the Appellants) as "under [Mr. Dondero's] control" and *per se* not credible;
>
> (c)     repeatedly concluded, without evidence, that any entity the Bankruptcy Court deemed associated with Mr. Dondero was essentially an agent and no more than a pawn of Mr. Dondero;[70]
>
> (d)     declared that Mr. Dondero and his "controlled entities" are vexatious litigants because: (i) they defended lawsuits and motions filed against them; and/or (ii) have asserted valid legal positions (including to preserve their and the Affected Entities' legal rights and rights on appeal);
>
> (e)     issued a *sua sponte* order demanding that so-called "Dondero-Affiliated Entities" disclose their ownership and control, including entities that have not appeared or filed anything in the Highland Bankruptcy; and
>
> (f)     applied more favorable standards and rules to Debtor than those it afforded to Appellants.

Notably, the Affected Entities' investment base includes public investors beyond Mr. Dondero.[71]

---

[70] Specifically, the evidentiary record does not reflect, *e.g.*, that: (a) the corporate formalities have been ignored for the entities; (b) their corporate property has not been kept separate and apart; or (c) Mr. Dondero uses the companies for personal purposes.

[71] For example, while deemed "Dondero controlled entities," HFRO and NHF are controlled by boards the majority of whom are independent in accordance with NYSE and SEC requirements; Mr. Dondero owns less than 13% of NHF

APP.3752

Appellants brought the Motion to safeguard the impartiality that they are entitled to receive as litigants, regardless of Mr. Dondero's history with the Bankruptcy Court.

33.     The Bankruptcy Court denied the Motion for the following three reasons:

  (a)     The Bankruptcy Court's finding the Motion was untimely;

  (b)     The Bankruptcy Court's subjective belief that it was not biased and that, generally, all of its orders, actions, and findings were proper; and

  (c)     Criticism of counsel (which was not a ground that Appellants asserted in the Motion) did not justify recusal.[72]

34.     The Bankruptcy Court abused its discretion when it denied the Motion.  ***First***, Appellants filed the Motion a reasonable time after the Bankruptcy Court's bias manifested itself and only sought relief on a prospective basis. ***Second***, Appellants did not seek recusal based upon "criticism of counsel" or routine docket management actions, and the Bankruptcy Court failed to address the Motion's actual and specific grounds.[73] ***Finally***, and most importantly, a judge's subjective belief that he or she is capable of impartiality[74] or whether the judge ***actually has*** a bias (or actually knows of grounds requiring recusal) is irrelevant.[75] Instead, "[t]he ***appearance*** of impartiality controls the § 455 analysis,"[76] and the test is whether the "'average person on the street who knows all the relevant facts of a case'" might ***reasonably question*** the judge's impartiality.[77]

35.     Appellants, like every litigant, are entitled to the opportunity to make their case in a fair and impartial forum.[78] The impartiality of judges is fundamental to the judiciary and the public's

---

and less than 1% of HFRO; and the remaining interests are owned by third-party, "mom and pop" investors.
[72] R. 31, the Order at pp. 7-10 (R. 37-40).
[73] *Id*.
[74] *Burke v. Regalado*, 935 F.3d 960, 1054 (10th Cir. 2019) (citations omitted).
[75] *Liljeberg v. Health Servs. Acquisition Corp*., 486 U.S. 847, 805 (1988).
[76] *Ferrera-Parra v. United Airlines, Inc.*, No. 4:19-CV-1053, 2021 WL 1795702, at *3 (S.D. Tex. Mar. 30, 2021) (citing *Haskett v. Orange Energy Corp.*, 161 F. Supp. 3d 471, 473 (S.D. Tex. 2015)).
[77] *In re Kansas Pub. Employees Retirement Sys*., 85 F.3d 1353, 1358 (8th Cir.1996).
[78] *Miller v. Sam Houston State Univ*., 986 F.3d 880, 893 (5th Cir. 2021).

16

confidence in the proceedings over which they preside.[79] Here, recusal of the Bankruptcy Court is the only way to ensure that the Appellants receive the requisite impartiality and fair trial.

### III.   ARGUMENTS & AUTHORITY

**A. Appellants' Motion was timely.**

36.    The Bankruptcy Court held that the Motion was untimely because it was filed: (a) "more than 15 months after the Highland Bankruptcy was transferred;" (b) "after many dozens of orders have been issued by the court, including a confirmation order that Movants have now appealed;" and (c) "on the eve of a contempt hearing."[80] The Bankruptcy Court abused its discretion in finding the Motion untimely.

37.    ***First,*** unlike 28 U.S.C. § 144, timeliness is not an express condition of a recusal motion under § 455, and the sole case cited by the Bankruptcy Court to the contrary, *Davies v. C.I.R.*, 68 F.3d 1129, 1130-31 (9th Cir. 1995), is factually distinguishable from the facts of this case. Cases finding that a recusal motion was untimely generally involve situations in which the complaining party obtained specific, definitive knowledge that the court had a disqualifying circumstance **and** either: (a) intentionally delayed raising the issue until a strategically advantageous time; or (b) raised the issue for the first time after a final judgment.[81] This includes *Davies*. In *Davies*, the judge notified the complaining party, taxpayers, that he had served as IRS Deputy Counsel and Acting Chief Counsel.[82] The taxpayers did not object at the time but, instead, almost a year later, moved to recuse the judge after he had ruled against them.[83] As such, *Davies* does not support the

---

[79] *Id.*

[80] *See* R. 31, the Order at p. 7 (R. 37).

[81] *See, e.g., United States v. Sanford*, 157 F.3d 987, 989 (5th Cir. 1998) (holding that motion to recuse was untimely because defendant's attorney had testified against judge in judicial council proceedings, but defendant made no motion before district court for recusal in two months before sentencing, or at sentencing itself, and thus, defendant both waited after knowing facts to challenge judge and raised issue for first time on appeal).

[82] *Davies v. C.I.R.*, 68 F.3d 1129, 1130-31 (9th Cir. 1995).

[83] *Id.*

APP.3754

Order.

38.      **Second**, the general amount of time that passed since the Highland Bankruptcy was
transferred from Delaware (*i.e.*, 15 months) is not relevant. The timeliness of a recusal motion is
determined from the point a judge's bias (or her appearance of bias) has manifested in the case
(*i.e.*, after the grounds for recusal, beyond speculation, are actually known).[84] A judge, suspected
of bias, cannot sit on that bias and then—after a certain amount of time passes—take action
confirming the bias (or appearance thereof) and claim it is too late to recuse and force a party to
be judged by a partial jurist.

39.      Here, the Bankruptcy Court's bias (or appearance thereof) did not immediately show itself
such that it would support a recusal motion. While Debtor acknowledged the Bankruptcy Court's
preexisting negative views of Mr. Dondero,[85] the presence of preexisting negative views *alone* is
not grounds to recuse. As described above, the Delaware bankruptcy court indicated that such
arguments (that the Bankruptcy Court's potential bias might negatively impact the case) were
premature because the Bankruptcy Court should enjoy a presumption that it would still follow the
rules in making findings:

> Yeah, I was going to say that's kind of an interesting argument, because actually it
> **assumes Judge Jernigan's going to ignore the rules of evidence** in making factual
> findings, **because you're limited to the record before you on a specific motion**.
> And what fact you may have learned with regard to something a person has done,
> maybe that goes into questions of credibility on cross-examination or direct
> testimony**, but to actually base your decision on a fact that's not in the record for
> the specific proceeding would be improper**.[86]

40.      Consequently, Appellants hoped the Delaware bankruptcy court was correct and were
willing to extend that prescribed presumption to the Bankruptcy Court.

---

[84] *Davies v. C.I.R.*, 68 F.3d 1129, 1130-31 (9th Cir. 1995) (citing *E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d
1280, 1295 (9th Cir.1992)).
[85] R. 2382, the December 2, 2019 Transcript, at 78:3-8 (emphasis added) (R. 2459).
[86] *Id.* at 90:15-24 (emphasis added) (R. 2471).

APP.3755

41.     Moreover, while the Bankruptcy Court's language in an earlier January 2020 order is an example of its bias, a single adverse ruling is not grounds for recusal, as it could be an isolated incident. In other words, while a part of the Bankruptcy Court's pattern of bias, a recusal motion based upon this single January 2020 order ruling *alone* would likewise be considered premature.

42.     Here, the Bankruptcy Court's inability to rule impartially in matters involving Mr. Dondero and the Affected Entities did not manifest itself until late 2020 and early 2021, after various comments, events, and rulings, exemplified above. It is *that* manifestation of bias (or appearance of bias) that is the relevant demarcation line as it relates to timeliness of the Motion, and Appellants indisputably filed the Motion a reasonable time thereafter (*i.e.*, March 18, 2021).

43.     *Third*, the Bankruptcy Court concludes that the Motion was untimely merely because "many dozens of orders have been issued by the court, including a confirmation order that Movants have now appealed."[87] However, the Bankruptcy Court does not identify any order that it claims should have resulted in the Motion being filed earlier. In fact, the sole referenced "Confirmation Order" was entered *just over a month before the Motion was filed*.

44.     *Fourth*, the fact that Debtor had filed a motion for contempt and a hearing on that motion was pending when Appellants filed the Motion is further irrelevant. Appellants moved to recuse the Bankruptcy Court from Adversary Proceedings—not from hearing any contempt issue.[88] Consequently, the Bankruptcy Court's finding that the Motion was not timely was an abuse of discretion.

**B.  The Bankruptcy erred in denying the Motion on the merits.**

45.     Next, with respect to the merits, the Bankruptcy Court denied the Motion because: (a) it subjectively believes that it is not biased ("[t]he Presiding Judge does not believe she harbors, or

---

[87] R. 31, the Order, at p. 7 (R. 37).
[88] R. 2338-2378, the Motion (including the Motion and Brief in Support).

APP.3756

has shown, any personal bias or prejudice against the Movants");[89] (b) criticism of counsel did not

justify recusal;[90] and (c) without addressing any of Appellants' allegations, the Bankruptcy Court's

deemed any statements, criticism and orders proper and concluded that the allegations did not

establish "doubt in the mind of a reasonable observer as to the judge's impartiality."[91]

### 1.  The Bankruptcy Court erred in relying on its subjective denials of actual bias.

46.     It is irrelevant if a judge subjectively believes he or she is capable of impartiality[92] or if the

judge actually has a bias (or actually knows of grounds requiring recusal).[93] Instead, "[t]he

appearance of impartiality controls the § 455 analysis,"[94] and the test is whether the "'average

person on the street who knows all the relevant facts of a case'" might ***reasonably question*** the

judge's impartiality.[95] As a result, the Bankruptcy Court abused its discretion in denying

Appellants' Motion based upon its subjective declarations and beliefs regarding its bias and the

propriety of its actions.

### 2.  Appellants do not seek recusal based upon "criticism of counsel" or routine docket management actions.

47.     While the Bankruptcy Court denied the Motion based on an assertion that criticism of

counsel did not justify recusal,[96] Appellants did not seek recusal on this ground.[97] Instead,

Appellants filed the Motion because the Bankruptcy Court's actions (including the non-exhaustive

examples described in the Motion and herein) began to reveal a deep-seated antagonism toward

Mr. Dondero and the Affected Entities that went well beyond "normal" admonishment—rendering

---

[89] R. 31, at Order at p. 10 (R. 40).
[90] *Id.*
[91] *Id*.
[92] *Burke v. Regalado*, 935 F.3d 960, 1054 (10th Cir. 2019) (citations omitted).
[93]  *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 805 (1988).
[94] *Ferrera-Parra v. United Airlines, Inc.*, No. 4:19-CV-1053, 2021 WL 1795702, at *3 (S.D. Tex. Mar. 30, 2021) (citing *Haskett v. Orange Energy Corp.*, 161 F. Supp. 3d 471, 473 (S.D. Tex. 2015).
[95] *In re Kansas Pub. Employees Retirement Sys.*, 85 F.3d 1353, 1358 (8th Cir.1996).
[96] R, 31 the Order at p. 10 (R. 40).
[97] R. 2341, the Motion at ¶ 70 (R. 2376).

APP.3757

the perception of fair judgment and impartiality toward Appellants impossible.[98]

48.     Moreover, the only evidence in the Motion that could arguably be considered "criticism of counsel" does not constitute regular admonishment or "criticism of counsel." As alleged in the Motion, the Bankruptcy Court has, among other things: (a) repeatedly threatened sanctions on and questioned Appellants' good-faith basis for: (i) asserting valid legal positions (including in defense of suits and motions filed against them); and/or (ii) preserving their rights (including in the exact same manner in which others are permitted to do so (*e.g.*, the U.S. Trustee's objections to the Plan)); (b) declared a lawsuit Appellants filed as "vexatious" despite admitting that it has never seen the lawsuit; and (c) recommended claims for opposing counsel to bring against Appellants to avoid a reference being withdrawn. This is well beyond ordinary "criticism" and justifies recusal.

### 3.     The Motion's actual and specific grounds, which the Bankruptcy Court failed to address, establish actual bias or an objective appearance of bias.

49.     "The review of a recusal order under § 455(a) is 'extremely fact intensive and fact bound,' thus a close recitation of the factual basis for the [party's] recusal motion is necessary."[99] Moreover, section 455(a), which is "designed to promote public confidence in the impartiality of the judicial process,"[100] requires recusal whenever a judge's partiality might reasonably be questioned, ***even if the judge does not have actual personal bias or prejudice***.[101] The judge's failure to recuse herself in such circumstances would constitute an abuse of discretion.[102]

50.     The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases.[103] As Congress recognized when enacting section 455, litigants "ought

---

[98] *Id.*
[99] *Republic of Panama v. Am. Tobacco Co.*, 217 F.3d 343, 346 (5th Cir. 2000).
[100] *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988) (quoting H.R.Rep. No. 1453, 93d Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 6351, 6354–55); *Liljeberg*, 486 U.S. at 859–60.
[101] *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 860 n. 8 (1988); *Andrade v. Chojnacki*, 338 F.3d 448, 454 (5th Cir. 2003).
[102] *United States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999).
[103] *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980); *see also Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 877

not have to face a judge where there is a reasonable question of impartiality."[104] This neutrality requirement helps guarantee that no person will be deprived of his interests in the absence of a proceeding in which the arbiter is not predisposed to find against him.[105] As a result, the Fifth Circuit has held that "***[i]f the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal.***"[106]

51.     ***First***, the Bankruptcy Court's Order ignored most of the grounds in the Motion, which itself further demonstrates the Bankruptcy Court's predisposition to rule against Appellants without objective analysis. The evidence in the Motion shows that the Bankruptcy Court's actions reveal such a high degree of antagonism toward Appellants (and favoritism toward any party adverse to Appellants) to make fair judgment impossible, including:

   (a)     repeated negative statements about Mr. Dondero;

   (b)     admission that its negative opinions about Mr. Dondero could not be excised from the Court's mind;

   (c)     repeated reference to proceedings in the Acis Bankruptcy to justify findings made in the Highland Bankruptcy that were not otherwise supported by the Highland record;

   (d)     indication that it was predisposed to disregard the presumption of corporate formalities and conclude, without supporting evidence, that any entity the Bankruptcy Court considered affiliated with Mr. Dondero (*i.e.*, including the highly regulated Affected Entities, which are governed by independent boards) was essentially Mr. Dondero's alter ego; [107] and

   (e)     repeatedly disregarding, without basis, of the testimony of any witness with a connection to Mr. Dondero as *per se* not credible, including testimony of attorneys and persons who owe fiduciary duties and ethical obligations.[108]

---

(2009) ("It is axiomatic that a fair trial in a fair tribunal is a basic requirement of due process."); see also *Johnson v. Mississippi*, 403 U.S. 212, 216 (1971) (per curiam) ("Trial before 'an unbiased judge' is essential to due process.") (quoting *Bloom v. Illinois*, 391 U.S. 194, 205 (1968)).
[104] H. Rep. No. 1453, 93d Cong., 2d Sess. 1 (1974), reprinted in 1974 U.S. Code Cong. & Admin. News 6351, 6355.
[105] *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980) (internal citations omitted).
[106] *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997) (emphasis added).
[107] R. 3371, the February 8, 2021 Transcript at 13:17-24 (R. 3383); 20:18-20 (R. 3390); 21:18-22:3  (R. 3391-3392).
[108] *See, e.g.*, ECF 1943 at p. 19 ("At the Confirmation Hearing, Mr. Post testified on behalf of the Highland Advisors and Funds that the Funds have independent board members that run the Funds, but the Bankruptcy Court was not

The failure to address any of these grounds in the Order is further evidence of the root issue.

52.     ***Second***, the Bankruptcy Court, in the Order, appears to be distancing itself from its prior admissions regarding the Acis Bankruptcy, which raises an issue regarding the source of the "extrajudicial knowledge" supporting the Bankruptcy Court's bias against Mr. Dondero. In its Order, the Bankruptcy Court contends that: (a) it does not recall any specific ruling from the *Acis* case relating to Mr. Dondero;[109] (b) it only recalls Mr. Dondero testifying once in court during the *Acis* case;[110] and (c) it has vague recollection that deposition testimony may have been presented another time.[111] Nevertheless, on February 19, 2020, approximately two months after the Highland Bankruptcy was transferred ***and before Mr. Dondero had ever testified in the Highland Bankruptcy***, the Bankruptcy Court prefaced a statement in a hearing with the phrase, ***"[i]f you can trust Mr. Dondero… ."***[112]

53.     If the Court does not recall anything from the Acis Bankruptcy, then this statement could only be based on extrajudicial knowledge. As a result, the Bankruptcy Court's statements in the Order have created a fact issue over the source of its knowledge to support its expressed doubt as to anyone's ability to "trust" Mr. Dondero.

54.     ***Third***, even a lack of extrajudicial knowledge is not fatal because Appellants are entitled to a full and fair opportunity to make their case in an impartial forum—regardless of their history

---

convinced of their independence from Mr. Dondero because none of the so-called independent board members have ever testified before the Bankruptcy Court and all have been engaged with the Highland complex for many years. Notably, the Court questions Mr. Post's credibility because, after more than 12 years of service, he abruptly resigned from the Debtor in October 2020 at the exact same time that Mr. Dondero resigned at the Board of Directors' request, and he is currently employed by Mr. Dondero."); *see also*, R. 3166, **t**he January 8, 2021 Transcript, at 175:8-176:25 (R. 3340-3341).

[109] R. 31, Order at p. 8 (R. 38).
[110] *Id.* at p. 9 (R. 39).
[111] *Id.*
[112] R. 2610, the February 19, 2020 Transcript, at 174:22-175:1 (emphasis added) (R. 2783-2784).

APP.3760

with that forum.[113] The Supreme Court has recognized that predispositions developed during the course of a trial can create a valid basis for a bias or partiality motion.[114] While the presence of an extrajudicial source is *a* factor in favor of finding recusal under section 455,[115] it is **not necessary** for recusal.[116] Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, will support recusal under section 455(a) "***if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible***."[117]

55.     As stated above, the Bankruptcy Court has admitted a predisposition against Mr. Dondero and made repeated statements and took actions (including doubting the credibility of any witness connected to Mr. Dondero; ignoring evidence in the record, *e.g.*, evidence of corporate formalities; and disregarding the required presumption that Mr. Dondero's filings by his counsel are made in good-faith) demonstrating that the Bankruptcy Court is not capable of ruling impartially where Mr. Dondero is concerned. Additionally, as described herein (e.g., paragraphs 11, 16-17 and 27-28 above), the Bankruptcy Court has two different standards for Appellants and anyone adverse to Appellants, showing a high degree of favoritism.

56.     Importantly, even after the Bankruptcy Court denied the Motion, the Bankruptcy Court's antagonism toward Appellants and favoritism toward any party adverse to Appellants continued.[118] For example, at a hearing on June 10, 2021 after Appellants moved to withdraw the reference, the Bankruptcy Court *sue sponte* recommended Debtor file fraudulent transfer claims

---

[113] *Miller v. Sam Houston State University,* 986 F.3d 880, 893 (5th Cir. 2021) (citing *United States v. Jordan,* 49 F.3d 152, 155 (5th Cir. 1995)).

[114] *Liteky v. United States*, 510 U.S. 540, 554 (1994) (emphasis added).

[115] *Bell v. Johnson*, 404 F.3d 997, 1004 (6th Cir. 2005) (citations omitted).

[116] *Liteky v. United States*, 510 U.S. 540, 554-55 (1994).

[117] *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citation omitted) (emphasis added).

[118] Appellants have moved to supplement the record, which is unopposed and pending before the court. The supplemental documents will demonstrate ongoing bias.

(suggesting that those might affect the reference from being withdrawn).[119]

57.     At that same hearing, the Bankruptcy Court refused to grant Dugaboy's motion to compel Debtor to file the "periodic financial reports of the value, operations, and profitability of each entity that is not a publicly traded corporation or debtor . . . in which the estate holds a substantial or controlling interest" as required by Fed. R. Bankr. P. 2015.3(a).[120] The Court raised concerns that the statutorily required information might be used to "cobble together a new adversary alleging mismanagement" against the Debtor[121] and did not grant the motion because, among other things, it would be unduly burdensome.[122]

58.     Then, just seven days later, on June 17, 2021, the Bankruptcy Court entered a *sua sponte* order claiming to question Appellants' standing to as creditors to object to various settlements and the handling of the estate (the "June 17 Order").[123] The June 17 Order requires Appellants (and other entities with ties to Mr. Dondero) to "file a Notice in this case disclosing: (1) who owns the entity (showing percentages); (2) whether Mr. Dondero or the Trusts have either a direct or indirect ownership interest in the entity and, if so, what percentage; (3) who are the officers, directors, managers and/or trustees of the Non-Debtor Dondero-Related Entity; and (4) whether the entity is a creditor of the Debtor (explaining in reasonable detail the amount and substance of its claims)."[124] Importantly, the June 17 Order actually establishes Appellants' standing and

---

[119] June 10, 2021 Transcript at 81:5-16 (App. 81); 83:1-12 (App. 83), a true and correct copy of which is attached to Appellants' Appendix as Tab 1 (App. 1-91).
[120] *Id*. at 49:12-14 (App. 49).
[121] *Id*. at 46:11-13 (App. 46).
[122] *Id.* at 49:12-51:3 (App. 49).
[123] *See* June 17 Order at p. 1 (App. 92), a true and copy of which is attached to Appellants' Appendix as Tab 2 (App. 92-104) ("This Order is issued by the court sua sponte pursuant to Section 105 of the Bankruptcy Code and the court's inherent ability to efficiently monitor its docket and evaluate the standing of parties who ask for relief in the above-referenced case. More specifically, the Order is directed at clarifying the party-in-interest status or standing of numerous parties who are regularly filing pleadings in the above-referenced 20-month-old Chapter 11 bankruptcy case.").
[124] *Id* at p. 12-13 (App. 103-104).

APP.3762

unjustifiably requires action that have nothing to do with standing.

## C.  Recusal was and remains proper.

59.     Here, the Bankruptcy Court seeks to sit as both judge and jury in various pending and future Adversary Proceedings and contested matters and has demonstrated a willingness to retain jurisdiction whenever possible.[125] To do so, the Bankruptcy Court must, but appears unable to, set aside any prejudice or bias against Appellants in those proceedings. A reasonable person, knowing the facts, would doubt the Bankruptcy Court's impartiality regarding Appellants. At a minimum, that is the perception that has been created.[126] The Bankruptcy Court cannot escape this reality by subjectively concluding, without analysis, that it does not believe the allegations in the Motion to be true. As a result, the Bankruptcy Court abused its discretion in denying the Motion.

## IV.     CONCLUSION AND PRAYER

FOR THE FOREGOING REASONS, Appellants respectfully request that the Court reverse the Bankruptcy Court's order denying Appellants' Motion to Recuse; order that the Bankruptcy Court is recused from the Adversary Proceedings and any future contested matters involving Appellants or any entity connected to Mr. Dondero; and grant Appellants all other further relief, at law or equity, to which they are justly entitled.

---

[125] *See, e.g.,* R. 3480, the September 23, 2020 Transcript, at 50:4-52:7 (R. 3529-3530).
[126] *Liteky v. United States*, 510 U.S. 540, 551 (1994).

APP.3763

## CERTIFICATE OF COMPLIANCE

In compliance with Rules 8014 and 8015, I hereby certify that:

(a) This document complies with the type-volume limit of FED. R. BANKR. P. 8015(a)(7)(B) because, excluding the parts of the document exempted by FED. R. BANKR. P. 8015(g), this document contains 9,285 words.

(b) This document complies with the typeface requirements of FED. R. BANKR. P. 8015(a)(5) and the type-style requirements of FED. R. BANKR. P. 8015(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft word, version 2008, in size 12, Times New Roman.

Dated: June 28, 2021

By: */s/ Michael J. Lang*
Michael J. Lang
Texas State Bar No. 24036944
mlang@cwl.law
CRAWFORD, WISHNEW & LANG PLLC
1700 Pacific Ave, Suite 2390
Dallas, Texas 75201
Telephone: (214) 817-4500
***Counsel for Appellants***

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 28, 2021, a true and correct copy of the above and foregoing document was served on all parties of record via the Court's e-filing system.

*/s/ Michael J. Lang*
Michael J. Lang

APP.3764