**Case No. 3:23-cv-00726-S**

---

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

---

*In re James D. Dondero et al.,*
*Petitioners*

---

# HIGHLAND CAPITAL MANAGEMENT, L.P.'S RESPONSE TO
# PETITION FOR WRIT OF MANDAMUS

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*

Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

STATEMENT REGARDING ORAL ARGUMENT....................................................................1

ISSUE PRESENTED.................................................................................................................2

SUMMARY OF THE ARGUMENT .........................................................................................3

STATEMENT OF THE CASE...................................................................................................4

      A.      Background to the Bankruptcy Case................................................................4

      B.      Background to the Petition...............................................................................8

            1.      Petitioners File Their First Recusal Motion......................................8

            2.      Petitioners' First Appeal and Writ of Mandamus .....................................9

            3.      Petitioners File Their Second Recusal Motion .................................10

            4.      Petitioners File Their Third Recusal Motion ..............................................11

            5.      Petitioners' Second and Third Writs of Mandamus..................................13

      C.      Highland's Substantive Objection to the Third Motion........................................14

ARGUMENT ............................................................................................................................14

      D.      Standard of Review........................................................................................14

      E.      A Writ of Mandamus Is Not Warranted ........................................................16

CONCLUSION.........................................................................................................................21

## **TABLE OF AUTHORITIES**

**Page**

### **CASES**

*Cheney v. U.S. Dist. Court*,
    542 U.S. 367 (2004) .......................................................................................... 15

*Dondero v. Jernigan (In re Highland Cap. Mgmt., L.P.)*,
    2022 U.S. Dist. LEXIS 23454 (N.D. Tex. Feb. 8, 2022) .................................. 10

*Dugaboy Inv. Trust v. Highland Cap. Mgmt. L.P.*,
    2022 U.S. Dist. 172351 (N.D. Tex. Sept. 22, 2022) .......................................... 7

*Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
    57 F.4th 494 (5th Cir. 2023) ............................................................................... 8

*Highland Cap. Mgmt., L.P. v. Dondero (In re Highland Cap. Mgmt., L.P.)*,
    2021 Bankr. LEXIS 1533 (Bankr. N.D. Tex. Jun. 7, 2021), *aff'd* 3:21-cv-01590-N, Docket No. 42 (N.D. Tex. Aug. 17, 2022) ...................................................... 7

*Highland Cap. Mgmt., L.P. v. Dondero*,
    Adv. Pro. No. 20-03190-sgj, Docket No. 10 (Bankr. N.D. Tex. Dec. 10, 2020) ............... 7

*In re Chesson*,
    897 F.2d 156 (5th Cir. 1990) ............................................................................ 15

*In re Corrugated Container Antitrust Litig.*,
    614 F.2d 958 (5th Cir. 1980) ................................................................. 15, 16, 19

*In re Depuy Orthopaedics, Inc.*,
    870 F.3d 345 (5th Cir. 2017) ................................................................. 14, 16, 18

*In re Houston*,
    745 F.2d 925 (5th Cir. 1984) ............................................................................ 15

*In re LeBlanc*,
    559 F. Appx. 389 (5th Cir. 2014) ..................................................................... 15

*In re Mahadevan*,
    2023 U.S. App. LEXIS 28801 (5th Cir. Oct. 27, 2023) .................................... 19

*In re Occidental Petroleum Corp.*,
    217 F.3d 293 (5th Cir. 2000) ....................................................................... 17, 18

*Kinnear-Weed Corp. v. Humble Oil & Refining Co.*,
    324 F. Supp. 1371 (S.D.Tex.1969) ................................................................... 16

*NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*,
    48 F.4th 419 (5th Cir. 2022) ........................................................................ 6, 7

*Nichols v. Alley*,
    71 F.3d 347 (10th Cir. 1995) ............................................................................ 19

*Overton v. Austin*,
    748 F.2d 941 (5th Cir. 1984) ....................................................................... 18, 19

*Plekowski v. Ralston-Purina Co.*,
    557 F.2d 1218 (5th Cir. 1977) ..................................................................... 14, 18

*United States v. Comeaux*,
    954 F.2d 255 (5th Cir. 1992) ...................................................................... 16, 18

*United States v. U.S. Dist. Court, S. Dist. of Tex.*,
    506 F.2d 383 (5th Cir. 1974) ............................................................................ 14

## **STATUTES**

28 U.S.C. § 158(a)(3) .................................................................................................. 18

28 U.S.C. § 455 ........................................................................................................... 8

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Respondent respectfully submits that, for the reasons that follow, the petition lacks any merit and oral argument is therefore unlikely to aid the Court in resolving the questions presented.

## **ISSUE PRESENTED**[1]

Whether Petitioners have met their burden of proving that the Bankruptcy Court clearly and indisputably abused its discretion in denying their Third Motion to recuse Chief Judge Stacey G.C Jernigan from presiding over Highland's Bankruptcy Case, including with respect to any matters concerning Petitioners.

---

[1] Capitalized terms used but not defined in this section have the meanings given to them below.

## SUMMARY OF THE ARGUMENT[2]

This is Petitioners'[3] third attempt to obtain a writ of mandamus to remove Judge Jernigan from presiding over Highland's Bankruptcy Case on grounds of alleged bias. Like their earlier attempts, Petitioners have not met their heavy burden of proving (a) a "clear and indisputable right to the writ," (b) they have "no other adequate means" to obtain the relief they seek, and (c) that the writ is appropriate under the circumstances.  Consequently, the "drastic and extraordinary remedy" of mandamus remains unwarranted here.

Although Petitioners are plainly unhappy with some of Judge Jernigan's rulings, that does not remotely justify mandamus relief.[4] Indeed, the Third Order and Highland's Objection firmly establish that Petitioners' Third Motion (upon which the Petition is based) was ill-founded, premised on material omissions and blatant mischaracterizations of the record, and was untimely. Under the circumstances, and based on a fair reading of the record, the Bankruptcy Court did not clearly and indisputably abuse its discretion by rejecting Petitioners' falsehoods and denying the Third Motion.

---

[2] Highland files this Response to comply with this Court's *Order* entered on December 15, 2023 at Docket No. 7.

[3] "Petitioners" refers to, collectively, Mr. Dondero, Highland Capital Management Fund Advisors, L.P., The Dugaboy Investment Trust, Get Good Trust, and NexPoint Real Estate Partners, LLC f/k/a HCRE Partners, LLC.

[4] Tellingly, Petitioners appealed only a handful of the rulings they complain about and nearly all of those rulings were affirmed or dismissed on appeal for lack of standing.

Further, Petitioners—presumably recognizing that an order denying recusal is interlocutory and that leave to appeal would likely be denied—effectively seek a backdoor appeal through a writ of mandamus. But mandamus is not a substitute for appeal, and Petitioners have an "adequate means" to obtain relief through the appellate process.

For these reasons and those set forth below, the Petition should be dismissed with prejudice.

## STATEMENT OF THE CASE

### A.    Background to the Bankruptcy Case

On October 16, 2019, James Dondero ("Mr. Dondero") caused Highland Capital Management, L.P. ("Highland") to file a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Delaware Court"), Case No. 19-12239 (CSS) (the "Bankruptcy Case").

The Bankruptcy Case was filed, among other reasons, to stay the enforcement of a $180 million arbitration award rendered against Dondero-controlled Highland based upon an arbitration panel's determinations [Docket Nos. 3596-13, 3596-14][5] that Highland breached its fiduciary duties and contractual obligations, converted

---

[5] Unless otherwise indicated, docket numbers refer to the docket maintained by the Bankruptcy Court in Case No. 19-34054-sgj (Bankr. N.D. Tex.).

approximately $30 million in investor funds, and used proxies to surreptitiously acquire equity in an investment vehicle in violation of a Bermudian court order.[6]

Following its appointment, the Official Committee of Unsecured Creditors (the "Committee") immediately moved to transfer venue to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") because, among other reasons, the "Bankruptcy Court [was] already intimately familiar with the Debtor's principals and complex organizational structure," having presided over the still-pending bankruptcy case of *In re Acis Capital Management, L.P.*, Case No. 18-30264-sgj (Bank. N.D. Tex.) (the "Acis Case").[7] Following a hearing, the Delaware Court transferred the Bankruptcy Case to the Bankruptcy Court. [Docket No. 186]

After the Committee and the U.S. Trustee raised concerns about Mr. Dondero's ability to serve as an estate fiduciary because of his history of self-dealing, creditor-avoidance asset transfers, and other breaches of fiduciary duty, Highland, the Committee, and Mr. Dondero entered into a settlement intended to avoid the appointment of a chapter 11 trustee.

---

[6] A hearing in the Delaware Chancery Court to have the award confirmed was about to begin when Mr. Dondero caused Highland to file for bankruptcy protection for the purpose of gaining the protections of the automatic stay.

[7] The Acis Case was an involuntary bankruptcy case commenced against the then-Dondero controlled Acis entities after Mr. Dondero and others acting at his direction caused the Acis entities to fraudulently transfer their assets leaving them "judgment proof" and unable to satisfy an arbitration award entered against them. *See* Docket No. 85 ¶¶ 8-13 (providing an overview of the Acis Case).

Judge Jernigan approved the settlement on January 9, 2020 [Docket No. 339] (the "January Order"), pursuant to which Mr. Dondero voluntarily surrendered his control positions at Highland[8] and an independent board of directors (the "Independent Board") was appointed to oversee the Bankruptcy Case.[9]

In September 2020, after Mr. Dondero began taking actions adverse to the estate and its creditors, the Independent Board demanded that Mr. Dondero resign from *all* positions at Highland. In October 2020, as required by the January Order, Mr. Dondero resigned.

Around the same time, the Committee rejected Mr. Dondero's settlement offers as inadequate thereby blocking his efforts to regain control of Highland. In response, Mr. Dondero vowed to "burn down the place." *NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 48 F.4th 419, 426 (5th Cir. 2022). Thereafter, directly and through his controlled entities, including Petitioners, Mr. Dondero began interfering with the Independent Board's management of the estate, threatening Highland employees, challenging actions taken to further reorganization, commencing frivolous litigation against Highland and its management both inside and outside of the Bankruptcy Court, violating

---

[8] Pursuant to the January Order, Mr. Dondero remained an unpaid portfolio manager at Highland.

[9] Despite entry of the January Order, the U.S. Trustee continued to press its motion for the appointment of a chapter 11 trustee [Docket No. 271], but that motion was denied precisely because Mr. Dondero had ceded control of Highland to the Independent Board.

Bankruptcy Court orders, and appealing numerous orders.[10] Mr. Dondero's actions led Judge Jernigan to issue a temporary restraining order (the "TRO") against him,[11] which he promptly violated.[12]

On February 22, 2021, with the support of 99.8% of creditors in amount and over the objections of Mr. Dondero and his controlled affiliates, including Petitioners, the Bankruptcy Court entered the *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943] (the "Confirmation Order"), which confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Docket No. 1943-1] (the "Plan"). The Plan became effective on August 11, 2021 [Docket No. 2700].

In the Confirmation Order, the Bankruptcy Court made detailed factual findings about Mr. Dondero and the Petitioners, including that Mr. Dondero controlled each Petitioner, among other entities, and was using litigation (directly

---

[10] With a few narrow exceptions, these appeals have been rejected and reviewing courts have bluntly characterized certain of Mr. Dondero's positions. For example, Judge Starr expressed his belief that Mr. Dondero's arguments in one appeal were intended to "bamboozle" the court (*Dugaboy Inv. Trust v. Highland Cap. Mgmt. L.P.*, 2022 U.S. Dist. 172351, at *12 (N.D. Tex. Sept. 22, 2022)), and the Fifth Circuit described the Dondero entities' collective objections to confirmation as "blunderbuss" (*NexPoint*, 48 F.4th at 432).

[11] *Highland Cap. Mgmt., L.P. v. Dondero*, Adv. Pro. No. 20-03190-sgj, Docket No. 10 (Bankr. N.D. Tex. Dec. 10, 2020).

[12] Mr. Dondero was held in contempt for violating the TRO. *Highland Cap. Mgmt., L.P. v. Dondero (In re Highland Cap. Mgmt., L.P.)*, 2021 Bankr. LEXIS 1533 (Bankr. N.D. Tex. Jun. 7, 2021), *aff'd* 3:21-cv-01590-N, Docket No. 42 (N.D. Tex. Aug. 17, 2022).

and by proxy) to harass Highland, its management, and its estate. *See, e.g.,* Confirmation Order, ¶¶ 76-79. The Confirmation Order's factual findings were either not challenged or affirmed on appeal. *See NexPoint Advisors*, 48 F.4th at 427-28, 434-35 ("One factual finding is in dispute, but we see no clear error"); *Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 57 F.4th 494, 498 (5th Cir. 2023) ("The confirmation order roundly criticized Dondero's behavior before and during the bankruptcy proceedings and deduced that Dondero was a serial litigator whose objections to the Plan were not made in good faith ....")

**B.**     **Background to the Petition**

    **1.**     **Petitioners File Their First Recusal Motion**

On March 18, 2021, more than 15 months after the Delaware Court transferred the Bankruptcy Case to the Bankruptcy Court, and more than a month after confirmation, Petitioners filed their first motion to recuse Judge Jernigan pursuant to 28 U.S.C. § 455 (the "First Motion"). J.Ex. 1, J.Appx. 3589-92.[13] The First Motion alleged, among other things, that (a) Judge Jernigan was biased against the Petitioners and (b) her bias had been evident since before the Bankruptcy Case was transferred to the Bankruptcy Court in December 2019.

---

[13] Citations to "J.Ex. __, J.Appx. __" are to the *Joint Supplemental Appendix* filed in this Case at docket number 8.

On March 22, 2021, the Bankruptcy Court denied the First Motion (the "First Order"), finding, among other things, that Petitioners' allegations did not support a finding of bias and that the First Motion was untimely. J.Ex. 2, J.Appx. 3593-3603.

### 2.      Petitioners' First Appeal and Writ of Mandamus

Petitioners appealed the First Order to this Court. Case No. 3:21-cv-00879-K (N.D. Tex.). On June 10, 2021, Judge Kinkeade granted Highland's motion to intervene over Petitioners' objection. J.Ex. 7, J.Appx. 3729-31.

After the parties briefed the appeal,[14] Judge Kinkeade, *sua sponte*, issued an order questioning whether the Recusal Order was final and directing supplemental briefing. J.Ex. 13, J.Appx. 4663-67. On December 15, 2021, Petitioners filed their supplemental brief in which they acknowledged that the First Order was interlocutory but argued they could appeal the First Order under the "collateral order doctrine." J.Ex. 14, J.Appx. 5755-64. Petitioners also requested leave to appeal the First Order as an interlocutory order and to have their appeal treated as a writ of mandamus.

On February 9, 2022, Judge Kinkeade found that the First Order was interlocutory and not subject to the collateral order doctrine. *Dondero v. Jernigan (In re Highland Cap. Mgmt., L.P.)*, 2022 U.S. Dist. LEXIS 23454, at *8-12 (N.D.

---

[14] *See* Exs. 8, 9, 12, Appx. 3732-3870, 5734-50 (Petitioners' pleadings in support of their appeal of the First Order); Exs. 10-11, Appx. 3871-5733 (Highland's pleadings in opposition to the appeal of the First Order).

Tex. Feb. 8, 2022) (the "February Order"). Judge Kinkeade also denied Petitioners leave to appeal and rejected Petitioners' request for mandamus, finding Petitioners "fail[ed] to make the required showing" of "exceptional circumstances" and a "clear and indisputable right" to a writ of mandamus. *Id.* at *13.

Petitioners did not appeal the February Order nor did they seek rehearing.

### 3.   Petitioners File Their Second Recusal Motion

On July 20, 2022, more than five months after entry of the February Order, Petitioners filed their "supplemental" motion to recuse Judge Jernigan (the "Second Motion") (J.Exs. 18-20, J.Appx. 5793-6684). In the Second Motion, Petitioners asked the Bankruptcy Court to enter a final, appealable version of the First Order so that they could appeal it to this Court (implying the Bankruptcy Court had the authority to determine this Court's jurisdiction). J.Ex. 20, Appx. 6530.

Highland objected [Docket No. 3444] arguing that the Bankruptcy Court lacked the authority to determine whether the First Order was final and that the Second Motion was procedurally improper. Highland also included an extensive annotated chart [Docket No. 3444-1] proving that Petitioners' "examples" of bias were insufficient to warrant recusal because they (a) were premised on material distortions or omissions of fact, court orders and findings, and/or statements on the record and (b) viewed fairly, were not the product of bias, prejudice, or lack of impartiality.

In reply, Petitioners sought to have their Second Motion treated as a motion to supplement and reiterated their improper request that the Bankruptcy Court "amend the [First Order] to make it final." (J.Ex. 23, J.Appx. 14604-08).

On September 1, 2022, the Bankruptcy Court denied the Second Motion as "procedurally improper" but allowed Petitioners to file "(1) a simple motion … seeking only a revised and amended Recusal Order that removes" the reservation of rights or "(2) a new motion to recuse … based on any alleged new evidence or grounds for recusal that were not considered … at the time of [this Court's] consideration of the" First Order. (the "Second Order") (J.Ex. 28, J.Appx. 14656-58).

### 4.    Petitioners File Their Third Recusal Motion

On September 27, 2022, Petitioners "renewed" the First Motion [Docket Nos. 3541, 3542] and subsequently amended it (Ex. 4, Appx. 2799-2828)[15] (the "Third Motion"). In the Third Motion, Petitioners ignored the Bankruptcy Court's directions in the Second Order, incorporated the entirety of the First Motion by reference (Ex. 4, Appx. 2806, n. 11), and demanded that Judge Jernigan recuse herself. In the alternative, Petitioners again reiterated their improper request that the

---

[15] Citations to "Ex. __, Appx. __" are to the *Appendix to Petition for Writ of Mandamus* filed in this Case at docket number 1-1.

Bankruptcy Court "make clear that any order denying recusal is final so that Movants may appeal ...." *Id.*, Appx. 2827.

On October 31, 2022, Highland objected to the Third Motion [Docket Nos. 3595, 3596] (the "Objection"). In its Objection, Highland again provided a detailed factual rebuttal of Petitioners' allegations of bias proving that Petitioners' allegations were premised on material misstatements and omissions of fact. Highland also noted that most of Petitioners' allegations related to Bankruptcy Court orders that were either never appealed or were affirmed on appeal.

On March 5, 2023, the Bankruptcy Court issued a detailed ruling denying Petitioners' Third Motion to recuse (Ex. 1, Appx. 1-37) (the "Third Order"). In the Third Order, the Bankruptcy Court found that the Third Motion, like the previous motions, was untimely, ill-founded, and premised on "several misstatements or partial descriptions of events during the case ... that create misimpressions." *Id.*, Appx. 19.

Judge Jernigan also addressed her two novels—*He Watches All My Paths* and *Hedging Death*—and rejected the notion that they were based on Mr. Dondero or that they evinced any bias or animosity towards him. "The Presiding Judge's novels—again entirely fiction—are not about Mr. Dondero or the hedge fund industry in general ... there are no characters or entities in her books that have been

inspired by or modeled after [Mr. Dondero and his controlled affiliates]." *Id.*, Appx. 33-37.

### 5.    Petitioners' Second and Third Writs of Mandamus

On April 4, 2023, Petitioners attempted to bypass the appellate process by filing a petition for writ of mandamus with Judge Kinkeade in which they again sought to have Judge Jernigan recused from the Bankruptcy Case. Case No. 3:21-cv-00879-K, Docket No. 41 (N.D. Tex. Apr. 4, 2023) (the "Second Mandamus Petition"). The next day, Judge Kinkeade found the Second Mandamus Petition to be procedurally improper because the case was closed following entry of the February Order and ordered that the Second Mandamus Petition be "unfile[d]." J.Ex.17, J.Appx. 5791-92.

Undeterred, Petitioners immediately filed their *Petition for Writ of Mandamus* [D. Ct. Docket No. 1] (the "Petition") seeking the extraordinary relief of mandamus—again attempting to bypass the appellate process. The Petition largely regurgitates the discredited bases for recusal set forth in Petitioners' serial motions to recuse and alleges that Judge Jernigan's two novels (published in January 2019 and March 2022, respectively) are somehow additional evidence of her bias.

C.      **Highland's Substantive Objection to the Third Motion**

As discussed above, Highland's Objection included an exhaustive factual and legal rebuttal to the misleading (and oftentimes false) allegations contained in the Third Motion and is incorporated by reference as if fully set forth herein.

In general, Highland addressed each allegation of bias asserted in the Third Motion and established that each such allegation was meritless. Objection, ¶¶33-104, 112-121.[16] Highland also established that the Third Motion was untimely (*id.* ¶¶ 105-111), and that the Bankruptcy Court lacked authority to grant Petitioners' alternative form of requested relief (*i.e.*, a "final order" resolving the Third Motion) (*id.* ¶¶122-123).

## ARGUMENT

D.      **Standard of Review**

A writ of mandamus is "a drastic and extraordinary remedy reserved for really extraordinary cases." *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 350 (5th Cir. 2017) (internal quotations omitted). Thus, "[t]he power to issue the writ is discretionary and is sparingly exercised." *United States v. U.S. Dist. Court, S. Dist. of Tex.*, 506 F.2d 383, 384 (5th Cir. 1974). "It is not to be used as a substitute for an appeal, or to control the decision of the trial court in discretionary matters." *Plekowski v. Ralston-Purina Co.*, 557 F.2d 1218, 1220 (5th Cir. 1977); *see also In*

---

[16] Highland also established that Judge Jernigan is not the first or only judge or arbitration panel to rule against Mr. Dondero and his affiliated entities. *Id.* ¶¶26-29.

*re Chesson*, 897 F.2d 156, 159 (5th Cir. 1990) (noting that mandamus relief "is charily used and is not a substitute for an appeal.").

"As the writ is one of the most potent weapons in the judicial arsenal, three conditions must be satisfied before it may issue." *In re LeBlanc*, 559 F. Appx. 389, 392 (5th Cir. 2014) (internal quotations omitted). First, the petitioner must demonstrate a "clear and indisputable right to the writ." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004). Second, the petitioner must have "no other adequate means" to attain the relief they desire. *Id.*; *see also In re Corrugated Container Antitrust Litig.*, 614 F.2d 958, 962 (5th Cir. 1980) (same). "Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *LeBlanc*, 559 Fed. Appx. at 381; *see also Corrugated Container*, 614 F.2d at 962 ("Moreover, '[t]he Supreme Court has repeatedly stated … that issuance of a writ of mandamus lies in large part within the discretion of the court.'") (citations omitted).

Although "[t]he question of disqualification is reviewable on a petition for writ of mandamus … a writ will not lie in the absence of exceptional circumstances. … 'The determination of the judge concerned should be accorded great weight, and should not be disturbed unless clearly erroneous.'". *In re Houston*, 745 F.2d 925, 927 (5th Cir. 1984) (citing *Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 324

F. Supp. 1371, 1385 (S.D.Tex.1969), *aff'd*, 441 F.2d 631 (5th Cir.), *cert. denied*, 404 U.S. 941, 92 S. Ct. 285, 30 L. Ed. 2d 255 (1971).

The party seeking the writ bears the burden of proving that their right to issuance of the writ is "clear and indisputable." *See, e.g., Corrugated Container*, 614 F.2d at 962.

### E.    A Writ of Mandamus Is Not Warranted

Petitioners fail to prove that the extraordinary remedy of a writ of mandamus is warranted here. Petitioners cannot demonstrate that they have a "clear and indisputable" right to mandamus. Satisfying this condition "require[s] more than showing that the district court misinterpreted the law, misapplied it to the facts, or otherwise engaged in an abuse of discretion." *Deputy*, 870 F.3d at 350 (internal quotations omitted). A petitioner must demonstrate a "clear abuse[ ] of discretion that produce[s] patently erroneous results" or that "there has been a usurpation of judicial power." *Id*.; *see also United States v. Comeaux*, 954 F.2d 255, 261 (5th Cir. 1992) (mandamus relief is not appropriate when "the most that could be claimed is that the district courts have erred in ruling on matters within their jurisdiction" and that "[s]uch use of the writ would 'thwart the congressional policy against piecemeal appeal'") (internal citations omitted). In other words, Petitioners "must show not only that the district court erred, but that it *clearly and indisputably erred*." *In re*

*Occidental Petroleum Corp.*, 217 F.3d 293, 295 (5th Cir. 2000) (emphasis in original).

The Bankruptcy Court did not clearly and indisputably abuse its discretion in denying the Third Motion or usurp judicial authority. As set forth at great length in the Third Order and Highland's Objection, the Third Motion was ill-founded, premised substantially on material omissions and misstatements of fact, and was untimely. The Petition, which largely regurgitates the Third Motion, fails for the same reasons.[17] In rejecting Petitioners' falsehoods and denying the Third Motion, the Bankruptcy Court did not clearly and indisputably err.

Nor is this an appropriate case for the extraordinary remedy of mandamus. As discussed, "supervisory control of the district courts through mandamus is not warranted when the petitioner simply claims the district court has ruled incorrectly

---

[17] Petitioners allege that Judge Jernigan's two novels illustrate her bias. Petition at 5, 10-11. A fair reading of the novels confirms Judge Jernigan's statements in the Third Order that the books "are not about Mr. Dondero or the hedge fund industry in general," that she "made clear that everything in the two books should be viewed as fiction," and that "there are no characters or entities in her books that have been inspired by or modeled after" Petitioners. Ex. 1, Appx. 33-37.  *He Watches All My Paths* was about two brothers who sought revenge on the protagonist, Judge Avery Lassiter, and the bankruptcy system generally. The brothers' mother was killed by a drunk driver, and Judge Lassiter, prior to her judicial appointment, successfully represented the defendants in the wrongful death suit brought by her estate. Without money or family, the boys were placed in an orphanage where they were sexually abused and then had their claims discharged in the orphanage's bankruptcy. In the sequel, *Hedging Death*, the antagonist, Cade Graham, was a Texas native who managed a hedge fund. To Highland's knowledge, the story of Mr. Graham bears no relationship to Mr. Dondero. Mr Graham invested in a biomedical company that turned out to be a Ponzi scheme resulting in investor and SEC litigation and leading Mr. Graham to fake his own death and accept money from a Mexican drug cartel which he invested in a cartel-sponsored assisted living home that killed its residents to realize on their life insurance policies. Judge Jernigan certainly created a compelling crime story, but it remains a work of fiction.

on a matter within its discretion." *Comeaux*, 954 F.2d at 261; *see also Plekowski*, 557 F.2d at 1220 ("[W]e apprehend no reason why the legal errors, if they be errors, raised by plaintiff cannot be considered on appellate review in the usual course of litigation" noting that while "plaintiff has been frustrated by the proceedings thus far in the prosecution of his case," there is nothing "extraordinary" warranting mandamus). As established in Highland's Objection, Judge Jernigan has joined a long list of fact finders, judges, and arbitrators who have ruled against Mr. Dondero and his affiliates, and none of the acts of alleged "bias" withstand scrutiny or warrant the exceptional remedy of mandamus.

Finally, Petitioners fail to demonstrate that they have "no other adequate means" to obtain relief. To satisfy this element, Petitioner must show that a "clear and indisputable" error is "*irremediable on ordinary appeal*, thereby justifying the emergency relief in the form of mandamus." *Occidental*, 217 F.3d at 295 (emphasis in original). "That is a high bar: The appeals process provides an adequate remedy in almost all cases, even where defendants face the prospect of an expensive trial." *Depuy.*, 870 F.3d at 352; *see also Overton v. Austin*, 748 F.2d 941, 957 (5th Cir. 1984) ("If review is available by appeal, mandamus will not lie.") Although the Third Order is interlocutory, Petitioners can still seek leave to appeal under 28 U.S.C. § 158(a)(3). The fact that leave may be denied—like it was in the appeal of the First Order—does not mean Petitioners are deprived of their appellate rights;

they can also appeal upon issuance of a final order. *See Corrugated Container*, 614 F.2d at 962 (finding that a writ of mandamus was not available when "full review [of the request to recuse] awaits these defendants upon appeal from final judgment."); *In re Mahadevan*, 2023 U.S. App. LEXIS 28801, at *4-5 (5th Cir. Oct. 27, 2023) ("Mandamus is not a substitute for appeal. ... 'Where an interest can be vindicated through direct appeal after a final judgment, this court will ordinarily not grant a writ of mandamus.") (citations omitted).[18]

In sum, for the reasons set forth in the Third Order and Highland's Objection, the Bankruptcy Court's denial of Petitioner's Third Motion to recuse Judge Jernigan was a matter squarely within its discretion, and any errors complained of (and there were no errors) do not warrant the extraordinary remedy of mandamus. *See Overton*,

---

[18] None of Petitioners' cases (Petition n.49-52) justify mandamus here. They stand for the unremarkable proposition that recusal is reviewable by mandamus but still hold that: (i)"[m]andamus is available only upon a showing of a clear and indisputable right to relief"; (ii) "a clear abuse of discretion or conduct by the district court amounting to a usurpation of judicial authority ....."; and (iii) "'lack [of] adequate alternative means to obtain the relief ....'" *Nichols v. Alley*, 71 F.3d 347, 350 (10th Cir. 1995). Indeed, in only one case cited by Petitioners—*Nichols*—was a writ granted to remove a sitting judge, and that case arose from extraordinary and tragic circumstances: the bombing of the Alfred P. Murrah Federal Building in Oklahoma City by Timothy McVeigh and Terry Nichols. "Judge Alley's courtroom and chambers were one block away from the epicenter of a massive explosion [caused by defendant Nichols] that literally rocked downtown Oklahoma City, heavily damaged the Murrah building, killed 169 people, and injured many others. The blast crushed the courthouse's glass doors, shattered numerous windows, ripped plaster from ceilings, dislodged light fixtures, showered floors with glass, damaged Judge Alley's courtroom and chambers, and injured a member of his staff, as well as other court personnel and their families." *Id.* at 352. The Tenth Circuit found those extraordinary and tragic circumstances warranted mandamus and recusal of Judge Alley from Nichols' case. To state the obvious, *Nichols* is factually distinguishable and is helpful only in highlighting how rare and extraordinary the use of the writ is to remove a sitting judge.

748 F.2d at 956 (mandamus not appropriate where district court's decision was within its sound discretion, and any legal and or practical problems or inconvenience caused to petitioner, is not alone a sufficient reason to invoke mandamus to control interlocutory rulings of trial court).

*[Remainder of Page Intentionally Blank]*

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that this Court deny Petitioners' Petition for Writ of Mandamus.

Dated: January 8, 2024

Respectfully submitted,

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:jpomerantz@pszjlaw.com
        jmorris@pszjlaw.com
        gdemo@pszjlaw.com
        hwinograd@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 21(d)(1) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 4,440 words.

This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size and Roman type-style.

*/s/ Zachery Z. Annable*
Zachery Z. Annable

## CERTIFICATE OF SERVICE

I hereby certify that, on January 8, 2024, the foregoing document was served electronically via the Court's CM/ECF system on those parties registered to receive such service.

*/s/ Zachery Z. Annable*
Zachery Z. Annable