No. 3:23-cv-00726-S

In The

United States District Court

For The Northern District Of Texas

*In re James D. Dondero et al.,*

*Petitioners.*

On Petition For Writ Of Mandamus To The

United States District Court For The Northern District Of Texas

(Bankruptcy Case No. 19-34054-sgj11)

**Reply In Support Of Petition For Writ Of Mandamus**

Michael J. Lang
CRAWFORD WISHNEW & LANG, PLLC
1700 Pacific Ave., Suite 2390
Dallas, Texas 75201

(214) 817-4500 telephone

Attorneys For Petitioners

**I.      INTRODUCTION**

Although mandamus is an extraordinary remedy, this is an extraordinary case. The bankruptcy of Highland Capital Management, L.P. ("HCMLP") has spawned nearly four years of acrimonious litigation, largely fueled by a presiding judge who chose sides early in the case and has at every step reinforced that choice, regardless of the facts, the law, or basic fairness. Petitioners have borne the brunt of the Court's ire, which has and continues to negatively impact Petitioners' rights. That is a problem with no immediate solution, making mandamus relief imperative. The Court should grant the Petition.

**II.     FACTUAL BACKGROUND[1]**

**A.      HCMLP Mischaracterizes the Factual Record**

As has become the norm in this case, HCMLP devotes much of its Response to accusing Dondero of various supposed wrongs, none of which are relevant to the question of whether Chief Judge Stacey G.C. Jernigan is (or at the very least, appears to be) hopelessly biased such that recusal is appropriate. Nonetheless, for the sake of clarifying the record, Petitioners will address HCMLP's material distortions.

HCMLP argues that Petitioner James D. Dondero ("Dondero") is a bad actor who repeatedly took actions adverse to the estate and its creditors. That is false. Indeed, for a period of *over one year* after HCMLP filed its bankruptcy petition, Dondero did not take *any* action in the bankruptcy, other than voluntarily resigning his position as CEO in favor of the appointment of an independent board.[2] And when Dondero finally did participate in the bankruptcy proceedings, he

---

[1] Unless otherwise specified, all references to "Dkt." are to the docket in the bankruptcy proceedings of HCMLP, Case No. 19-34054 (Bankr. N.D. Tex.), *available at* https://kccllc.net/hcmlp.

[2] In the first year after the bankruptcy filing, Dondero filed only four pleadings: a limited response to a motion by creditor Acis for relief from the automatic stay, in which Dondero merely asked that the Court decide the motion before permitting litigation to go forward (Dkt. 617); an objection to Acis's proof of claim and joinder in HCMLP's similar objection (Dkt. 827; *see also* Dkt. 771); a response to the Unsecured Creditor Committee's motion to compel production by HCMLP, in which Dondero notified the Court that certain materials to be produced might be protected

1

did so to protect the estate's assets. For example, when Dondero learned that HCMLP's Chief Executive and Chief Restructuring Officer, James P. Seery ("Seery"), was divesting sizeable assets in non-ordinary course transactions without engaging in a competitive bidding process or even notifying the Court or creditors, he filed a motion seeking to require notice and a hearing prior to future non-ordinary course transactions. Dkt. 1439. Petitioners Dondero and The Dugaboy Investment Trust ("Dugaboy") also sought the appointment of an independent examiner prior to confirmation of HCMLP's Fifth Amended Plan of Reorganization ("Plan") to ensure that creditors and other stakeholders had adequate access to financial information to meaningfully participate in the plan confirmation process. Dkts. 1745, 1756. Like virtually every other motion filed by Dondero or entities affiliated with him in HCMLP's lengthy bankruptcy proceedings, Judge Jernigan rejected that motion (and refused to even hear it prior to Plan confirmation, ensuring it would become moot). Dkt. 1960, ¶¶ 4-6, 9.

Judge Jernigan's bias has allowed HCMLP to run roughshod over the bankruptcy process, leading to countless problems. Although HCMLP came into bankruptcy a solvent entity (with approximately $550 million in assets and seeking to restructure approximately $110 million in claims), under the leadership of Seery, HCMLP awarded creditors (whose claims it initially vigorously objected to) inflated allowed claims of approximately $390 million, sold the majority of those claims to buyers with close, personal ties to Seery for $160 million, caused a litigation trustee to launch expensive litigation against Petitioners and others while knowing the estate was solvent, and ultimately liquidated (for approximately $750 million) what should have been a viable, reorganized enterprise at the close of Chapter 11 proceedings. *See, e.g.*, Dkt. 3699 (detailing

---

by the attorney-client privilege; and a response to HCMLP's motion seeking approval of its settlement with Acis, in which Dondero merely asked the Court to independently review the fairness of the settlement in view of HCMLP's prior vehement objection to Acis's proof of claim (Dkt. 1121).

2

problems with claims trades in bankruptcy); Dkt. 3778 (detailing problems with financial disclosures in bankruptcy, claims inflation, and other bankruptcy mismanagement). Facing a Court that disregards everything they say, Petitioners have never been able to rectify these wrongs.

Now, many years later, Petitioners and others aligned with them face a much different problem: Judge Jernigan appears content to allow HCMLP and its professionals to run up costs while retaining hundreds of millions of dollars to fulfill speculative, future "indemnity" obligations to the very people charged with efficiently administering the bankruptcy and paying creditors in full. *See* Dkt. 4000 (describing the problem in detail). All the while, Judge Jernigan has adopted HCMLP's anti-Dondero narrative, even embracing negative language used by HCMLP and its professionals and repeating that language to justify the Court's actions. *See, e.g.*, Dkt. 3571 (recounting in detail various attacks on Dondero, his perceived affiliates, and his counsel).

### B. Petitioners' Persistence in Seeking Recusal (and the Various Roadblocks Imposed on that Effort) Only Demonstrate That Petitioners Need Emergency Mandamus Relief[3]

HCMLP also spends pages of its Response recounting the efforts by Petitioners to recuse Judge Jernigan. But those efforts only underscore the point: notwithstanding Judge Jernigan's appearance of bias and the mandatory language of the statute governing recusal, the Judge continues to preside over the HCMLP bankruptcy proceedings and continues to exhibit blatant animus toward Petitioners.

It is true that Petitioners have been forced to file multiple pleadings in an effort to obtain serious judicial consideration of the myriad instances of bias against them infecting the bankruptcy proceedings. Judge Jernigan denied the first motion without objective consideration of the

---

[3] Petitioners incorporate as if fully stated herein their Memorandum of Law in Support of Renewed Motion to Recuse, Dkt. 3542; Reply in Support of Amended Renewed Motion to Recuse, Dkt. 3623; Amended Reply in Support of Amended Renewed Motion to Recuse, Dkt. 3648; and Supplemental Memorandum of Law in Support of Amended Renewed Motion to Recuse, Dkt. 3676.

evidence of bias presented (as was required); she merely concluded that, *in her subjective opinion*, she was not biased. *See* Dkt. 2083 at 10. When Petitioners attempted to obtain appellate review of Judge Jernigan's decision, Judge Kinkeade concluded that recusal order was not final and refused to reach the merits of the appeal. *See Dondero v. Jernigan*, No. 3:21-cv-00879-K, Dkt. 39. By the time Judge Kinkeade dismissed Petitioners' appeal, there were many new examples of bias supporting recusal. As a result, Petitioners renewed their effort to recuse Judge Jernigan and sought to supplement the record supporting recusal. Dkt. 3470. After chastising Petitioners' counsel at length for "carpet bombing" the Court with paper, Judge Jernigan rejected Petitioners' effort and directed Petitioners to file yet another pleading if they wanted an appellate court to consider supplemental evidence. Dkt. 3479 at 3; *see also* Dkt. 3571 at 2 & Ex. U. Petitioners did as instructed. *See* Dkts. 3541, 3571. In response to this third effort, Judge Jernigan issued a lengthy order denying the motion. In that order, Judge Jernigan denied Petitioners' allegations of bias, again **based on her subjective belief that she is not biased**, deemed the motion untimely (although it was the culmination of years of effort to obtain the requested relief), and yet failed to directly address most of the examples of bias raised by Petitioners. Dkt. 3676; *see also* Petition at 15-23.[4] In short, notwithstanding Petitioners' lengthy effort to obtain recusal, no judge other than the one being accused of bias has yet considered Petitioners' arguments on the merits.

II. **ARGUMENT**

    A. **Mandamus Is the Appropriate Remedy**

        1. **Dondero established a clear right to relief and a duty to recuse.**

Section 455(a) requires that any judge "*shall* disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455(b)(1) provides that the judge "*shall*

---

[4] Dkt. 3676 at 15.

also disqualify himself ... [w]here he has a personal bias or prejudice concerning a party...." 28 U.S.C. § 455 (emphases added). There is more than enough evidence to mandate Judge Jernigan's recusal under these standards.

Indeed, HCMLP does not even address the very serious allegations of bias raised in Petitioners' mandamus petition and recounted in their prior motions to recuse (which are too voluminous to recount). To summarize:

- Judge Jernigan *admitted* that she formed early negative opinions about Dondero based on her experience in the prior bankruptcy proceedings of HCMLP creditor Acis. Petition at 3-4.

- Judge Jernigan has repeatedly accused Petitioners and their counsel of acting in "bad faith" and has repeatedly threatened Petitioners and their counsel with sanctions (or awarded sanctions when HCMLP asked the Court to do so), leading HCMLP to use the threat of sanctions as a sword against Petitioners. *Id.* at 5-8.

- Judge Jernigan has repeatedly labeled Dondero "vexatious," notwithstanding that he played an extraordinarily limited role in the bankruptcy proceedings prior to Plan confirmation and has largely been in the position of defending himself and his affiliates. *Id.* at 8-9.

- Judge Jernigan has *sua sponte* recommended that HCMLP take actions adverse to Petitioners in a manner seemingly designed to curtail their access to the courts. *Id.* at 9.

Finally, during the bankruptcy proceedings, Judge Jernigan authored two novels featuring a villainous hedge fund manager fitting the description of Dondero, in which she sharply criticizes the hedge fund industry (and specifically hedge fund managers like Dondero) and also criticizes the very financial products managed by HCMLP.

Numerous news outlets have written about Petitioners' effort to recuse Judge Jernigan, illustrating that objective observers "question Judge Jernigan's impartiality in presiding over bankruptcy cases involving Dondero's hedge funds." *See, e.g.*, Erin Mulvaney, *Judge's Fictional Thriller Sparks Real-Life Courtroom Drama*, WALL STREET JOURNAL (July 29, 2023) (quoting law professor Steve Leben, who opined that Judge Jernigan should be recused); *Renegade Texas Judge*

5

*Who Faced Calls for Recusal Now Entangled in Insider Trading Allegations*, RADAR ONLINE (Sept. 9, 2023) (same); *Bench Report Newsletter: Should This Judge Recuse?/Long-Pending Appellate Nominee Confirmed*, LAW.COM (July 21, 2023) (quoting Indiana law professor Charles Geyh as saying that Judge Jernigan should be disqualified because "a reasonable person could conclude that she holds Dondero and the hedge fund industry in low regard"); Kevin Eckhardt, *Court Opinion Review: Delaware VC Knocks Out Spurious (Nonbankruptcy) Releases, Vertical Gifting Via 363 Sales, Mid-Market Madness in Houston and Judge Jernigan's Novel Dilemma*, REORG (July 28, 2023) (commenting on Judge Jernigan's novels and concluding: "Remember all of our warnings about the tenuous legitimacy of the bankruptcy courts? This . . . doesn't help."). Petitioners request the Court to take judicial notice of these articles, true and correct copies of which are attached as Exs. 1-4 (App. 1-13). *See Esquivel v. Fudge*, No. 3:22-CV-0556-L, 2023 WL 5658338, at *7 (N.D. Tex. Aug. 31, 2023) (Lindsay, J.) ("A court has the power to take judicial notice of the coverage and existence of newspaper and magazine articles, as well as the fact that the market is aware of information contained in news articles.").

At a minimum, Petitioners have demonstrated that an objective observer might reasonably question Judge Jernigan's impartiality and Judge Jernigan had a clear duty to recuse herself.

### 2. Dondero also lacks any other adequate remedy.

HCMLP argues that mandamus is improper because Petitioners should seek redress through an ordinary appeal. Resp. at 14. That makes no sense. A party seeking review of an order denying recusal has no adequate remedy available other than mandamus because "ordinary appellate review following a final judgment is insufficient to cure the existence of actual or apparent bias." *In re Mohammad*, 866 F.3d 473, 475 (D.C. Cir. 2017). As Wright & Miller explain, "[t]here are obvious difficulties . . . with the remedy of appeal after final judgment." CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3553 (3d ed.).

6

Appellate review is an inadequate remedy because "[i]t comes after the trial and if prejudice exists it has worked its evil and a judgment of it in a reviewing tribunal is precarious." *Id*. (quoting *Berger v. U.S.*, 255 U.S. 22, 36 (1921)). Rather, mandamus is the proper means to review a "judge's refusal to recuse from a case pursuant to 28 U.S.C. § 455(a), where the judge's impartiality might reasonably be questioned." *In re Kensington Int'l Ltd.*, 353 F.3d 211, 219 (3d Cir. 2003); *see also In re Faulkner*, 856 F.2d 716, 721 (5th Cir. 1988) (granting petition for writ of mandamus directing trial court judge to recuse himself).

Courts across the country recognize mandamus as the appropriate means to avoid the appearance of partiality. *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 163 (3d Cir. 1993) ("Virtually every court of appeals has recognized the necessity and propriety of interlocutory review of disqualification issues on petitions for mandamus to ensure that judges do not adjudicate cases that they have no statutory power to hear."). Mandamus makes sense: though appellate "review after final judgment can (at a cost) cure the harm to a litigant, it cannot cure the additional, separable harm to public confidence that section 455 is designed to prevent." *Id*. (without determining actual bias by trial judge, ordering reassignment of case where record sufficed to show judge's "impartiality may reasonably be questioned").

Though HCMLP complains that a writ of mandamus is an extraordinary, unwarranted remedy, there is no other adequate remedy available to Petitioners. And the bankruptcy proceedings are *still ongoing*, with numerous issues of importance being raised and fought by Petitioners to this day. Waiting until the Bankruptcy Court closes the bankruptcy and all assets and claims are disposed of and all disputes resolved would not suffice to cure the existence of actual or apparent bias and, to the contrary, would presumably render Petitioners' request for recusal moot. Because Section 455 requires disqualification and prohibits a judge from presiding over a

7

case where their impartiality might reasonably be questioned, mandamus is the appropriate means by which to prevent a judge from adjudicating a case that they have no statutory power to hear. Thus, a petition for writ of mandamus is the only appropriate remedy available to Petitioners.

### B. Judge Jernigan's Role as the Trier of Fact Only Heightens the Need to Recuse to Avoid the Appearance of Impartiality

HCMLP also argues that Judge Jernigan's self-serving determination that she is unbiased should be accorded "great weight." Resp. at 15. However, the test under § 455(a) is not whether Judge Jernigan believes she is capable of impartiality, but rather whether a reasonable person might question the judge's impartiality. *Burke v. Regalado*, 935 F.3d 960, 1054 (10th Cir. 2019). Judge Jernigan's declaration that she is not biased is irrelevant and deserves no weight.

Moreover, HCMLP ignores that Judge Jernigan is the sole fact-finder in the ongoing bankruptcy case, which only heightens the need to avoid the appearance of partiality. For example, Judge Jernigan is set to rule upon: (1) Dugaboy's Complaint to (I) Compel Disclosures About the Assets of the Highland Claimant Trust and (II) Determine (A) Relative Value of Those Assets, and (B) Nature of Plaintiffs' Interest in the Claimant Trust (Dkt. 3778); (2) HCMLP's Motion for (A) "Bad Faith" Finding and (B) Attorneys' Fees Against NexPoint Real Estate Partners LLC (f/k/a HCRE Partners, LLC), in Connection with Proof of Claim 146 (Dkt. 3851); (3) Hunter Mountain Investment Trust's Motion for Leave to File Delaware Complaint against Seery (Dkt. ; and (4) Dugaboy's Motion to Preserve Evidence and Compel Forensic Imaging of James P. Seery, Jr.'s iPhone (Dkt. 3802).[5] The Judge's role as the fact-finder in these matters increases the risk that a reasonable person would doubt her impartiality and indulge suspicions about the Court's integrity.

---

[5] Although NexPoint Real Estate Partners LLC ("NPRE") and Hunter Mountain Investment Trust ("HMIT") are not Petitioners, Judge Jernigan has concluded that those entities are marching to his orders or are controlled by him. *See, e.g.,* Dkt. 1943 at ¶ 16(d) (concluding NPRE is controlled by Dondero); Dkt. 3904 (devoting three pages of an order to the question: "*Is HMIT Really Dondero by Another Name*?" and concluding it is). These conclusions (however ill-founded or lacking in evidentiary support) make it much more likely that motions filed by NPRE and HMIT will be decided against them, lending further to Judge Jernigan's appearance of bias.

As set forth in the Petition, recusal is mandatory where a judge's "impartiality might reasonably be questioned." Petition at 12. Recusal is required even if the judge is not actually biased because the purpose of section § 455 "is to avoid not only partiality but also the appearance of partiality." *Ligon*, 736 F.3d at 123; *see also In re Kensington*, 353 F.3d at 220 ("the polestar is impartiality and *the appearance of impartiality*").

Thus, the "view of the average, reasonable person is the standard for analysis as to whether a judge shall disqualify himself or herself." *In re Faulkner*, 856 F.2d at 720; *see also Matter of Cont'l Airlines*, 981 F.2d 1450, 1462 (5th Cir. 1993) (holding bankruptcy judge's failure to recuse himself was reversible error). It does not matter if the judge at issue may have presided over the case at issue for years; the standard remains the same. *Alexander*, 10 F.3d at 166 ("It is obviously difficult to filter ... a judge's conduct of a case through the prism of partiality when the proceedings over which he has presided have been in progress for more than four years and have been strenuously contested every step of the way by each of the parties…. Despite these considerations, we are of the definite impression that the flavor imported to the record by the combination of the factors we have discussed in this opinion requires reassignment of this case to another judge.").

The Fifth Circuit has held that even though the test "may not always be fair or even accurate, it is still the standard that must be applied." *In re Faulkner*, 856 F.2d at 721. The appellate court reasoned that judges must "avoid[] even the appearance of impropriety whenever possible" because "[p]eople who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges." *Id*. (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988)).

It follows, then, that "**concerns of judicial impartiality are heightened in the context of bench trials**." *I F G Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402,

9

418 (5th Cir. 2023) (emphasis added). "When the judge is the actual trier of fact, the need to preserve the appearance of impartiality is especially pronounced." *Id.* (quoting *Alexander*, 10 F.3d at 166). Moreover, where "the question of whether § 455(a) requires disqualification is a close one the balance tips in favor of recusal." *Republic of Panama v. Am. Tobacco Co. Inc.*, 217 F.3d 343, 347 (5th Cir. 2000).

The Petition and Petitioners' underlying motions describe a litany of actions by Judge Jernigan that would cause any reasonable person to doubt her impartiality. Indeed, Judge Jernigan's novels vilifying hedge funds and hedge fund managers while presiding over cases involving Dondero, alone has created objective doubts about her impartiality.[6] But the bigger problem is that Judge Jernigan's appearance of bias continues to affect ongoing proceedings to the prejudice of not just Petitioners but those entities that Judge Jernigan perceives to be connected to Dondero. There is more than sufficient reason to believe that Judge Jernigan's continuing role as the trier of fact will cause objective observers to doubt her impartiality and, by extension, doubt the integrity of the courts. Even were recusal a close call—which it is not—the balance tips in favor of recusal.

## III. CONCLUSION

Judge Jernigan has been permitted to preside over these bankruptcy proceedings for far too long, and to date, no unbiased judge has had the opportunity to consider the merits of Petitioners' very serious allegations. As set forth in the Petition, courts have ordered judges recused in far less egregious circumstances than those presented in this case. There can be no question that there is at least the appearance of partiality, mandating recusal. Petitioners respectfully request that the Court issue the mandamus relief requested and order the recusal of Judge Jernigan.

---

[6] Judge Jernigan's failure to disclose the publication of those novels is another reason recusal is warranted. *See I F G Port Holdings*, 82 F.4th at 418 (even where potential conflict itself did not require disqualification of judge, "it does not follow that *nondisclosure* of that [conflict] is constitutionally permissible").

10

Dated: January 22, 2024                                  Respectfully submitted,

                                  CRAWFORD, WISHNEW & LANG PLLC

                                  By: */s/ Michael J. Lang*
                                  Michael J. Lang
                                  Texas State Bar No. 24036944
                                  mlang@cwl.law
                                  1700 Pacific Ave, Suite 2390
                                  Dallas, Texas 75201
                                  Telephone: (214) 817-4500

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 22, 2024, a true and correct copy of the above and foregoing document was served on all parties of record via the Court's e-filing system.

                                  /s/ *Michael J. Lang*
                                  Michael J. Lang