# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
April 16, 2025
Lyle W. Cayce
Clerk

No. 24-10287

JAMES DONDERO; HIGHLAND CAPITAL MANAGEMENT FUND
ADVISORS, L.P.; THE DUGABOY INVESTMENT TRUST;
NEXPOINT REAL ESTATE PARTNERS, L.L.C.; GET GOOD TRUST,

*Plaintiffs—Appellants,*

versus

STACEY G. JERNIGAN; HIGHLAND CAPITAL MANAGEMENT,
L.P.,

*Defendants—Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:23-CV-726

_____

ON PETITION FOR REHEARING

Before WIENER, WILLETT, and DUNCAN, *Circuit Judges.*

PER CURIAM:[*]

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-10287

The petition for rehearing is GRANTED. We withdraw our prior opinion, *Dondero v. Jernigan*, No. 24-10287, 2024 WL 4678879 (5th Cir. Nov. 5, 2024), and substitute the following.

Appellants James Dondero and affiliated entities Highland Capital Management Fund Advisors, L.P., The Dugaboy Investment Trust, NexPoint Real Estate Parnters, L.L.C., and Get Good Trust ("the Dondero Parties") are parties to a bankruptcy proceeding in the Northern District of Texas. They appeal a district court order denying their petition for mandamus that sought the recusal of the presiding bankruptcy judge.

The order of the district court is AFFIRMED.[1]

I

Highland Capital Management, L.P. was a Dallas-based investment firm that managed billion-dollar, publicly traded investment portfolios for nearly three decades. *Matter of Highland Capital Mgmt., L.P. (Highland I)*, 48 F.4th 419, 424 (5th Cir. 2022). James Dondero was Highland's CEO. In 2019, after facing a $180 million adverse judgment in an arbitration, Highland voluntarily filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware. Shortly after, the Creditors Committee for Highland moved to transfer the bankruptcy case to the United States Bankruptcy Court for the Northern District of Texas on the basis that Chief Judge Jernigan was "already intimately familiar with the Debtor's principals and complex organizational structure," having presided over involuntary bankruptcy cases commenced against Acis Capital Management, L.P. and Acis Captial Management GP, L.L.C.—entities where Dondero had also

---

[1] Also before us is a motion by the Dondero Parties requesting we take judicial notice of certain documents. We affirm the order of the district court without referring to these documents. Accordingly, the motion is DENIED AS MOOT.

Case: 24-10287   Document: 148-1   Page: 3   Date Filed: 04/17/2025
Case 3:23-cv-00726-S   Document 27   Filed 04/17/25   Page 3 of 16   PageID 18899

No. 24-10287

served as an executive. The motion was granted, and the case was assigned to Chief Judge Jernigan.

In January 2020, Chief Judge Jernigan held the first hearing in the Highland case, regarding approval of a settlement between Highland and the Creditors Committee under which Dondero would surrender his control positions at Highland and be replaced by an Independent Board. *Highland I*, 48 F.4th at 425. Chief Judge Jernigan approved the agreed order, and Dondero stepped down as officer and director of Highland. *Id.* He remained an employee of Highland as a portfolio manager until October 2020, when the Independent Board demanded he step down.

Throughout 2020, Dondero proposed several reorganization plans, which the Committee and Independent Board opposed. *Id.* at 426. The Committee and Board instead formed their own plan. *Id.* Meanwhile, Dondero made various filings objecting to settlements, appealing orders, and seeking writs of mandamus. *Id.* He and other creditors filed over a dozen objections to the Independent Board's plan. *Id.* Chief Judge Jernigan confirmed the plan over objections at a hearing in February 2021, and it took effect on August 11, 2021. *Id.* The confirmation order included findings that Dondero was a "serial litigator," that he did not have a "good faith basis to lob objections to the Plan," and that the other board members were "marching pursuant to the orders of Mr. Dondero." *Id.* at 428.

Dondero appealed the confirmation order directly to this court, "objecting to the Plan's legality and some of the bankruptcy court's factual findings." *Id.* We affirmed the reorganization plan and confirmation order in full, with the exception of finding that the bankruptcy court exceeded its statutory authority in exculpating non-debtors in anticipation of "Dondero's continued litigiousness." *Id.* at 427, 432, 439. Though we vacated the exculpatory order as to non-debtors, we clarified that "[n]othing in [our]

No. 24-10287

opinion should be construed to hinder the bankruptcy court's power to enjoin and impose sanctions on Dondero and other entities by following the procedures to designate them vexatious litigants." *Id.* at 439 n.19.

Since then, we have dealt with multiple appeals in this matter. *See, e.g.*, *Matter of Highland Capital Mgmt., L.P.*, 57 F.4th 494 (5th Cir. 2023); *Matter of Highland Capital Mgmt., L.P.*, 98 F.4th 170 (5th Cir. 2024); *Matter of Highland Capital Mgmt., L.P.*, 105 F.4th 830 (5th Cir. 2024).

The instant appeal focuses on a series of recusal motions filed by the Dondero Parties beginning in March 2021—after the reorganization plan had been confirmed but before it took effect. The motions argued that Chief Judge Jernigan had developed an animus against the Dondero Parties that caused her impartiality to be reasonably questioned and thus required recusal under 28 U.S.C. § 455.

The Dondero Parties filed the first recusal motion on March 18, 2021. Chief Judge Jernigan denied the motion and reasoned that it was untimely, having been filed 15 months after the case was transferred to the Northern District of Texas and on the eve of Dondero's contempt hearing. She nevertheless analyzed the recusal motion on the merits and determined that recusal wasn't warranted. She reasoned that her presiding over the prior *Acis* case did not create bias because during that proceeding she only learned generalities about the industry and Highland's business structure, and it is appropriate for a bankruptcy court to preside over cases of affiliated business entities of a party. She also stated, citing *Lieb v. Tillman*, 112 B.R. 830, 835–36 (Bankr. W.D. Tex. 1990), that she did not believe that "she harbors, or has shown, any personal bias or prejudice" against Dondero and that the Dondero Parties' assertions did not "rise to 'the threshold standard of raising a doubt in the mind of a reasonable observer' as to the judge's

No. 24-10287

impartiality." The Dondero Parties appealed to the district court, which concluded that the order was interlocutory and not immediately appealable.

Five months later, the Dondero Parties filed a second recusal motion asking Chief Judge Jernigan to issue a final appealable order and supplementing the first recusal motion with additional evidence of alleged bias. Chief Judge Jernigan denied the motion without prejudice on procedural grounds. She noted that the Dondero Parties could file another "simple motion" asking the court to revise the first recusal order to make it final and appealable but without including the supplemental evidence. Alternatively, they could file a new recusal motion based on any alleged new evidence.

The Dondero parties chose to file a third, renewed recusal motion. Chief Judge Jernigan again denied the motion, determining that it was untimely and failed on the merits for the same reasons as the previous recusal motions. Additionally, she catalogued several instances in the motion where the Dondero Parties misstated or mischaracterized events of alleged bias. Chief Judge Jernigan also addressed the Dondero Parties' new accusations regarding her two published novels, which the Dondero Parties contended were patterned after Dondero and expressed exceedingly negative views about his industry. Chief Judge Jernigan stated that her novels "are not about Mr. Dondero or the hedge fund industry in general" and declined to recuse on that basis.

The Dondero Parties filed a petition for writ of mandamus in the district court seeking an order directing Chief Judge Jernigan to recuse herself.[2] The district court denied the petition, finding that the Dondero

---

[2] The Dondero Parties initially filed the mandamus petition in the same case as their previous appeal of Chief Judge Jernigan's recusal order. The district court unfiled it and directed the Dondero Parties to file a new action for mandamus relief. The new action is the relevant petition in this appeal.

5

No. 24-10287

Parties had "not proved 'exceptional circumstances' sufficient to justify the extraordinary remedy of a writ of mandamus.'" The Dondero Parties timely appealed.

## II

Mandamus relief is a "drastic and extraordinary" remedy "reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (internal quotation marks omitted); *see also U.S. v. U.S. Dist. Ct. for S. Dist. of Tex.*, 506 F.2d 383, 384 (5th Cir. 1974). Three conditions must be satisfied before the writ may issue:

> First, the party seeking issuance of the writ must have no other adequate means to attain the relief he desires . . . . Second, the petitioner must satisfy the burden of showing that his right to issuance of the writ is clear and indisputable. . . . Third, even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*In re LeBlanc*, 559 F. App'x 389, 392 (5th Cir. 2014) (per curiam) (citing *Cheney*, 542 U.S. at 380–81).

We review the denial of mandamus for abuse of discretion. *United States v. White*, 67 F. App'x 253, at *1 (5th Cir. 2003) (per curiam) (citing *United States v. Denson*, 603 F.2d 1143, 1146 (5th Cir. 1979) (en banc)); *see also Cheney*, 542 U.S. at 380.

## III

### A

As to the first requirement for mandamus relief, the Dondero Parties must show that they have no "other adequate means to attain the relief." *Cheney*, 542 U.S. at 380–81. In other words, they must show that any error by Chief Judge Jernigan is "irremediable on ordinary appeal." *In re Occidental*

6

*Petroleum Corp.*, 217 F.3d 293, 295 (5th Cir. 2000) (emphasis removed). The Dondero Parties' petition easily meets this condition.

We have held that "a petition for mandamus is the appropriate legal vehicle for challenging denial of a disqualification motion." *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997); *see also United States v. Gregory*, 656 F.2d 1132, 1136 (5th Cir. 1981); *In re Placid Oil Co.*, 802 F.2d 783, 786 (5th Cir. 1986); *In re Cameron Int'l Corp.*, 393 F. App'x 133, 134–35 (5th Cir. 2010). That is because "remedy by appeal is inadequate" in instances of apparent bias. *Berger v. United States*, 255 U.S. 22, 36 (1921). If a party could not challenge bias until appealable final judgment has issued, prejudice will have already "worked its evil." *Id.* As the Second Circuit has held, "[a] claim of personal bias and prejudice strikes at the integrity of the judicial process, and it would be intolerable to hold that the disclaimer of prejudice by the very jurist who is accused of harboring it should itself terminate the inquiry until an ultimate appeal on the merits." *In re Int'l Bus. Mach. Corp.*, 618 F.2d 923, 926–27 (2d Cir. 1980); *see also* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3553 (3d ed.).

Claims of judicial bias cannot wait for the ordinary appeals process to run its course. Mandamus is thus the appropriate means for relief here.

B

As to the second requirement for mandamus relief, the Dondero Parties must show that their right to the writ is "clear and indisputable." *Cheney*, 542 U.S. at 380–81. That is, it must be clear and indisputable that Chief Judge Jernigan is required to recuse.

Recusal decisions are reviewed for abuse of discretion, and in general, "if a matter is within the district court's discretion, the litigant's right to a particular result cannot be 'clear and indisputable.'" *Kmart Corp. v. Aronds*, 123 F.3d 297, 300–01 (5th Cir. 1997); *Chevron*, 121 F.3d at 165. The Dondero

No. 24-10287

Parties fail to meet this high burden. *See Chevron*, 121 F.3d at 165 (explaining that mandamus relief of disqualification is "granted only in exceptional circumstances").

Federal law requires a judge to recuse "in any proceeding in which [her] impartiality might reasonably be questioned" or "[w]here [she] has a personal bias or prejudice concerning a party . . . ." 28 U.S.C. § 455(a), (b)(1). The bar for recusal under § 455 is a high one. "[J]udicial rulings and comments standing alone rarely will suffice to disqualify a judge." *Chevron*, 121 F.3d at 165 (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Even comments "that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* (quoting *Liteky*, 510 U.S. at 555). Recusal is not required when the judge's comments about a particular party are based on proceedings in open court or information learned in earlier proceedings. *See Liteky*, 510 U.S. at 551. Bias requiring recusal must be *personal* rather than *judicial*. *United States v. Scroggins*, 485 F.3d 824, 829–830 (5th Cir. 2007). Judicial bias in the form of adverse rulings and comments on the record ordinarily does not constitute grounds for recusal, unless it "reveal[s] an opinion based on an extrajudicial source or demonstrate[s] such a high degree of antagonism as to make fair judgment impossible." *United States v. Brocato*, 4 F.4th 296, 302 (5th Cir. 2021) (quoting *Scroggins*, 485 F.3d at 830); *see also* Wright & Miller, at § 3542.

The Dondero Parties cite various instances throughout the case that they contend show Chief Judge Jernigan "harbors an actual and enduring bias and animus" against them "that is 'personal rather than judicial in nature.'" Placed in their proper context, none of these instances suffice to show that Chief Judge Jernigan's impartiality might be reasonably questioned or that she had a personal bias against the Dondero Parties requiring recusal under § 455.

8

No. 24-10287

The Dondero Parties first take issue with Chief Judge Jernigan's statements expressing negative opinions about Dondero based on information she learned while presiding over the *Acis* case. They cite specifically Chief Judge Jernigan's statement at the January 2020 settlement hearing:

> I can't extract what I learned during the *Acis* case, it's in my brain, and we did have many moments during the *Acis* case where the Chapter 11 trustee came in and credibly testified that, whether it was Mr. Dondero personally or others at Highland, they were surreptitiously liquidating funds, they were changing agreements, assigning agreements to others. They were doing things behind the scenes that were impacting the value of the Debtor in a bad way.

Based on those concerns, Chief Judge Jernigan ordered that the settlement contain language reading, "Mr. Dondero shall not cause any related entity to terminate any agreements with the Debtor" and that "his role as an employee of the Debtor will be subject at all times to the supervision, direction, and authority of the Debtors." She noted from the bench (though did not order it be included in the settlement language) that if Dondero "violates these terms, he's violated a federal court order, and contempt will be one of the tools available to the Court."

Chief Judge Jernigan's comments regarding the *Acis* case and resulting orders are insufficient to show bias. Her statements about Dondero's role and reliability were judicial, rather than personal, in nature and relevant to her determination that the settlement was proper. And they were based not on any extrajudicial personal bias against Dondero, but on arguments raised by the Creditors Committee and U.S. Trustee about the *Acis* case and on credible testimony from the *Acis* case itself. Chief Judge Jernigan's comments about potentially holding Dondero in contempt of court did nothing but emphasize the law—that failure to follow a court order

Case: 24-10287      Document: 148-1      Page: 10      Date Filed: 04/17/2025
Case 3:23-cv-00726-S    Document 27    Filed 04/17/25    Page 10 of 16    PageID 18906

No. 24-10287

constitutes contempt. None of this was improper. *See Liteky*, 510 U.S. at 551 (holding that recusal is not required when the judge's comments are based on proceedings in open court); *see also Tejero v. Portfolio Recovery Assocs., L.L.C.*, 955 F.3d 453, 463–64 (5th Cir. 2020) (holding that a judge's knowledge of a party gained from previous cases involving that party does not qualify as extrajudicial knowledge); WRIGHT & MILLER, at § 3542 ("Nor is the judge disqualified because [s]he has presided over some other case involving the same party or closely-related facts.").

Next, the Dondero Parties take issue with Chief Judge Jernigan's *sua sponte* questioning of the parties about a headline she saw about Dondero or Highland affiliates receiving Paycheck Protection Program loans. At that hearing, Chief Judge Jernigan acknowledged that she is "only supposed to consider evidence [she] hear[s] in the courtroom," but since she inadvertently came upon the headline while reading the news she "needed to ask about this," including about the potential that Dondero was implicated. However, as she later noted in her order denying the third recusal motion, "Neither Mr. Dondero nor any of his affiliated entities were directed to provide any information, no action was taken against them, and the issue was never raised again by the bankruptcy court." A newspaper article is certainly an "extrajudicial" source. *See Brocato*, 4 F.4th at 302. But Chief Judge Jernigan never expressed an opinion on it or took any prejudicial action against Dondero based on it. Her brief comments about the article would not lead a reasonable person to question her impartiality toward Dondero and certainly do not show bias so clear and indisputable as to warrant mandamus.

The Dondero Parties also take issue with Chief Judge Jernigan's various comments characterizing Dondero as "transparently vexatious" and litigious. However, comments disapproving of or hostile to a party aren't sufficient to support a partiality challenge, especially not when they are based on information learned in the judicial process. *See Liteky*, 510 U.S. at 551, 555.

No. 24-10287

And there is ample evidence in the record to support these comments. Such evidence, as laid out in Chief Judge Jernigan's order denying the third recusal motion, includes testimony from one of the Highland independent directors and from Highland's new CEO, Dondero's filing 50 proofs of claim (which were later withdrawn), and "the many dozens of motions; the many dozens of objections; and the many dozens of appeals" Dondero pursued throughout the bankruptcy case. Chief Judge Jernigan's comments, though certainly critical of Dondero, were based on this record evidence and not on any improper extrajudicial information and as such can't constitute grounds for recusal. *See Brocato*, 4 F.4th at 302.

The Dondero Parties also accuse Chief Judge Jernigan of bias because she often speculated that Dondero was behind motions filed by other parties in the case. For example, Chief Judge Jernigan stated at one hearing that she "agree[d] with part of the theme . . . asserted by the Debtor here today that this is Mr. Dondero, through different entities, through a different motion." And at another hearing on a motion to release funds of a non-debtor party, Chief Judge Jernigan speculated that "likely Mr. Dondero . . . had some involvement" in the decision to bring the motion, which she ultimately denied. Such speculation doesn't constitute grounds for recusal. *See Blanche Road Corp. v. Bensalem Tp.*, 57 F.3d 253, 266 (3d Cir. 1995) (explaining that the court's "suggestion that plaintiffs' counsel had somehow 'maneuvered' to ensure [someone's] appearance as a witness" and its general skepticism of plaintiffs' witnesses weren't grounds for recusal).

The Dondero Parties cite various other instances where Chief Judge Jernigan made rulings or comments adverse to them as evidence of her bias. But in each case, the Dondero Parties largely mischaracterize the context of Chief Judge Jernigan's comments, and there is at least some evidence in the record to support her judgments.

11

No. 24-10287

For example, the Dondero Parties cite the following rulings and comments as evidence of bias, none of which are supported by the record:

- The Dondero Parties argue that Cheif Judge Jernigan was biased in making certain findings adverse to Dondero after a February 2021 hearing. But Chief Judge Jernigan's order explicitly stated that her findings were based on "all of the proceedings had before this Court, the legal and factual bases set forth in the Debtor's Papers, and the evidence submitted at the Hearing."

- The Dondero Parties argue that Chief Judge Jernigan appeared biased when she expressed concern that Dondero improperly exercised "powers of persuasion" on the Highland board. But, notwithstanding that comment, Chief Judge Jernigan stated that her adverse ruling was because she just "[did]n't think the evidence has been there to convince [her]" on the merits of the motion.

- The Dondero Parties argue that Chief Judge Jernigan showed bias when she threatened to hold Dondero in contempt at a preliminary injunction hearing. But the record shows Chief Judge Jernigan contemplated holding him in contempt based on evidence including he and his entities doing "things like . . . filing a motion for an examiner 15 months into the case."

- The Dondero Parties argue that Chief Judge Jernigan showed bias when she criticized the Dondero-controlled entities' decision to each retain separate counsel. But Chief Judge Jernigan stated a valid basis for her criticism—concern for judicial economy because the Dondero-controlled entities were each filing the same types of motions or objections when perhaps their resources could have been consolidated.

- The Dondero Parties argue an appearance of bias in what they characterize as "punitive" orders requiring Dondero and certain Dondero-affiliated entities to appear personally at all

Case: 24-10287   Document: 148-1   Page: 13   Date Filed: 04/17/2025
Case 3:23-cv-00726-S   Document 27   Filed 04/17/25   Page 13 of 16   PageID 18909

No. 24-10287

hearings. But Chief Judge Jernigan explained in her order denying the third recusal motion that she ordered Dondero to attend hearings only after he failed to attend a hearing on or even read a temporary restraining order entered against him.

- The Dondero Parties argue that Chief Judge Jernigan's *sua sponte* order requiring the Dondero-affiliated entities to make disclosures to establish their standing shows bias. But further review of the order shows Chief Judge Jernigan required these disclosures "in the interests of judicial economy" and in the interest of "reducing administrative expenses of the estate" because the entities "frequently file lengthy and contentious pleadings."

The Dondero Parties haven't shown that Chief Judge Jernigan based any of the above rulings on any extrajudicial information or pursued them for any personal, rather than judicial, reasons. As a district court judge, Chief Judge Jernigan is entitled to make credibility judgments based on the evidence before her, and it is not our duty to second guess those judgments. *See Ayers v. United States*, 750 F.2d 449, 456 (5th Cir. 1985). Indeed, most of Chief Judge Jernigan's rulings have been upheld on appeal to the district court and our court.[3] *See Regions Bank v. Legal Outsource PA*, 800 F. App'x 799, 800 (11th Cir. 2020) (per curiam) (finding judicial ruling didn't constitute bias where appellate court had affirmed the ruling). Though the Dondero Parties may disagree with her decisions, that is not evidence of bias, or even the appearance of bias. *See Crummey v. Comm'r of Internal Revenue*, 684 F. App'x 416, 422–23 (5th Cir. 2017) (per curiam). Chief Judge Jernigan's adverse rulings alone—or even paired with negative comments

---

[3] For example, the Dondero Parties argue that bias is apparent in one of Chief Judge Jernigan's orders holding him in contempt of court. But we have already affirmed Chief Judge Jernigan's finding of civil contempt. *In re Highland Capital Mgmt., L.P.*, 98 F.4th 170, 172–75 (5th Cir. 2024).

Case: 24-10287      Document: 148-1      Page: 14      Date Filed: 04/17/2025
Case 3:23-cv-00726-S      Document 27      Filed 04/17/25      Page 14 of 16      PageID 18910

No. 24-10287

about Dondero—are not sufficient to warrant recusal. *See Litecky*, 510 U.S. at 555.

Finally, the Dondero Parties argue that Chief Judge Jernigan was required to recuse under § 455 because she published two novels which they argue espouse negative views of Dondero and the financial industry in which he operates. The Dondero Parties cite three parallels between the books and their case which they find problematic. First, Chief Judge Jernigan's novel *Hedging Death* involves a Dallas-based investment fund that manages the same mix of investments as Highland. Her novel *He Watches All My Paths* is also about the financial industry. Second, *Hedging Death* describes certain international tax structures used by Highland and Dondero as "byzantine," a word that Chief Judge Jernigan used several times on the record to describe Highland and Dondero's tax activities. Third, *Hedging Death* describes the life settlement industry as "creepy," and Highland and Dondero invested in the life settlement industry.

The texts of the novels are not in the record before us. But we find the three parallels cited by the Dondero Parties on their own are insufficient to show that they are *clearly and indisputably* entitled to mandamus relief in the form of a recusal order. As the district court emphasized, the novels are fiction. And Chief Judge Jernigan explains in her order denying the third recusal motion that the books are largely about other topics. *He Watches All My Paths* is about a federal judge who receives death threats from a young, former tort victim. *Hedging Death*, though it involves a bankruptcy case and a firm that received funding from a hedge fund manager, is largely about the protagonist bankruptcy court judge. The hedge fund manager character who the Dondero Parties believe is patterned on Dondero is an individual who fakes his own suicide after linking up with Mexican drug cartels—far from the real-life James Dondero.

No. 24-10287

From the information we have in the record before us, whether a reasonable reader and observer of these proceedings could question Chief Judge Jernigan's impartiality in this case is debatable. Due to the similarities between the characters in Chief Judge Jernigan's novel and the litigants currently before her court, a strong argument could be made that she had a duty to recuse. But, while some similarities between the books and the cases before Chief Judge Jernigan may raise cause for concern, the similarities are not close enough to find that the district court abused its discretion denying the petition.

To our knowledge, no court—apart from the district court that initially denied mandamus in this case—has ever analyzed § 455(a) on facts like these. Even assuming that the Dondero Parties have shown possible error in the district court's denial of a writ of mandamus, it is not certain that the district court has "*clearly and indisputably* erred." *In re Avantel, S.A.*, 343 F.3d 311, 317 (5th Cir. 2003) (emphasis added). Under § 455(a), judges have a duty to recuse. But we will not issue a writ of mandamus "to correct a duty that is to any degree debatable." *In re Corrugated Container Antitrust Litig.*, 614 F.2d 958, 962 (5th Cir. 1980). The district court thus didn't abuse its discretion in finding that the Dondero Parties lack a clear and indisputable right to mandamus relief.

C

As to the third requirement for mandamus relief, having found that the Dondero Parties lack a clear and indisputable right to mandamus, we also find that mandamus is not "appropriate under the circumstances." *Cheney*, 542 U.S. at 380–81.

No. 24-10287

## IV

Because the Dondero Parties failed to show they have a clear and indisputable right to mandamus relief, the order of the district court denying the petition for writ of mandamus is AFFIRMED.